# Exhibit B

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

------------------------------------------------------ X

|  |  |  |
|---|---|---|
| BEBI ALLI, ERIC KEHOU, PATRICIA FERNANDEZ, individually and on behalf of all others similarly situated, | ) ) ) | **Civil Action No. 3:10-cv-00004-JCH** |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| -v.- | ) |  |
|  | ) |  |
| BOSTON MARKET CORP., | ) |  |
|  | ) | November ___, 2011 |
| Defendant. | ) |  |
|  | ) |  |

------------------------------------------------------ X

## GLOBAL SETTLEMENT AGREEMENT

THIS GLOBAL SETTLEMENT AGREEMENT, including all exhibits hereto (collectively, with the Global Settlement Agreement, the "Agreement"), is made and entered into, on the one hand, by Defendant Boston Market Corporation ("Boston Market" or "Defendant") and, on the other hand, by Plaintiffs Eric Kehou, Patricia Fernandez, Sherrie Ward, and Rahiem Taylor, as well as former Plaintiff Bebi Alli ("Named Plaintiffs"), on behalf of individuals who have opted in to the Fair Labor Standards Act Collective Action, including Opt-In Plaintiffs BeLinda Rehn, Brendan Walters, and Victor Espada (the "Litigation Opt-Ins"), as well those who will opt-in pursuant to this Agreement, and the putative members of the proposed New York and Connecticut state-law classes ("State Law Class Members") (collectively "Class Members"), and by Justin M. Swartz and Jennifer Liu of Outten & Golden LLP, Seth R. Lesser and Fran L. Rudich of Klafter Olsen & Lesser LLP, and Richard E. Hayber of Hayber Law Firm, LLC (collectively "Class Counsel").

WHEREAS, on January 4, 2010, in a case styled *Bebi Alli v. Boston Market Corp.*, Case No 3:10-cv-00004-JCH (the "Litigation"), Bebi Alli ("Alli") sued Defendant in the United States District Court for the District of Connecticut ("Court"). Alli's putative collective action/class action complaint ("Complaint") included allegations under the Fair Labor Standards Act ("FLSA") and Connecticut Law;

WHEREAS, Plaintiff filed amended complaints on January 28, 2010, May 7, 2010, March 8, 2011, and June 27, 2011. In the January 28, 2010 amended complaint, Alli added Kehou as a Named Plaintiff and added class action claims under the New York Labor Law. The March 8, 2011 amended complaint added Fernandez as a Named Plaintiff. The June 27, 2011 amended complaint added Ward and Taylor as Named Plaintiffs;

WHEREAS, on September 7, 2011, the Court granted Boston Market's Motion to Dismiss Alli from the Litigation;

WHEREAS, the Court has granted the Named Plaintiffs' motion for conditional certification of their FLSA claims but such notice has not yet been distributed. The Court has not granted final certification of the Named Plaintiffs' FLSA claim, nor has it considered whether the New York and Connecticut claims may proceed as class actions under Fed.R.Civ.P. 23;

WHEREAS, Defendant denies all of the allegations against it and denies that it is liable for damages to anyone with respect to the causes of action asserted in the Litigation;

WHEREAS, the parties to the Litigation ("Parties") have engaged in two private mediations and in arms-length negotiations and reached a settlement;

WHEREAS, the Parties do not abandon their respective positions on the merits of the Litigation. Nonetheless, the Parties recognize that continued litigation, including any appeals, would be protracted, expensive, uncertain, and contrary to their respective best interests. Accordingly the Parties believe that this Agreement is the most efficient and beneficial method to resolve the claims actually asserted and those that could have been asserted therein;

WHEREAS, this Agreement is intended to, and does, effectuate the full, final, and complete resolution of all allegations and claims that were asserted, or could have been asserted, in the Litigation, including any appeals, by Named Plaintiffs, Litigation Opt-Ins, and the various class members that Named Plaintiffs seek to represent.

NOW, THEREFORE, in consideration of the premises and mutual promises herein contained and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

## 1. DEFINITIONS

In addition to various terms defined elsewhere, the terms listed in this Section shall have the meanings ascribed to them for purposes of this Agreement.

1.1 **Claims Administrator.** "Claims Administrator" means the entity jointly selected by the Parties to provide notice to the FLSA Class, the New York Class and the Connecticut Class (as those terms are defined below) and administer payments under the terms of this Agreement.

1.2 **Defendant's Counsel.** "Defendant's Counsel" refers to Jones Day. For purposes of providing any notices required under this Agreement, Defendant's Counsel shall refer to Michael Gray, 77 West Wacker, Suite 3500, Chicago, Illinois 60601.

1.3 **Plaintiffs' Counsel.** "Plaintiffs' Counsel" refers to Outten & Golden LLP, Klafter Olsen & Lesser LLP, and Hayber Law Firm. For purposes of providing any notices required under this Agreement, Plaintiffs' Counsel shall refer to Justin M. Swartz, 3 Park

- 2 -

Avenue, 29th Floor, New York, NY 10016; Seth R. Lesser, Two International Drive, Suite 350, Rye Brook, NY 10573; and Richard E. Hayber, 221 Main Street, Suite 502, Hartford, CT 06106.

      1.4    **Effective Date**.  "Effective Date" shall be the date that all of the following have occurred:

          (A)    The Court has entered judgment, in the form attached as Exhibit A, and ruled on the motions for awards of service payments pursuant to Section 4.3 and for attorneys' fees and reasonable costs pursuant to Section 4.2; and

          (B)    The judgment and the rulings on such motions have become Final. "Final" means the later of:

             (1)    The governing time periods for seeking rehearing, reconsideration, appellate review and/or an extension of time for seeking appellate review have expired and there have been no such actions; or

             (2)    If rehearing, reconsideration, appellate review, and/or an extension of time for seeking appellate review is sought, 30 calendar days after any and all avenues of rehearing, reconsideration, appellate review and/or extension of time have been exhausted and no further rehearing, reconsideration, appellate review, and/or extension of time is permitted, and the time for seeking such things has expired, and the judgment has not been modified, amended, or reversed in any way.

      1.5    **Fairness Hearing.**  "Fairness Hearing" shall mean the hearing in the Litigation on a motion for judgment and final approval of this Agreement.  The Parties will jointly file such a motion under the terms of this Agreement.

      1.6    **Final Approval.**  "Final Approval" shall mean the Court's entry of an order and a judgment granting final approval to this Agreement and dismissing the Litigation with prejudice.

      1.7    **FLSA Class; FLSA Class Member.** "FLSA Class" shall mean all individuals who are or were employed by Boston Market as an Assistant General Manager, Culinary Manager, or Hospitality Manager in states other than California, New York, or Connecticut between January 4, 2007 and the date of the order granting Preliminary Approval or in Connecticut between January 4, 2007 and January 3, 2008 ("FLSA Class Period").  A member of the FLSA Class is an "FLSA Class Member."  The FLSA Class is an opt-in class under 29 U.S.C. § 216(b).  An "Opt-In" is an individual who opts in to this Litigation pursuant to 29 U.S.C. § 216(b) and the terms of this Settlement Agreement.  The Litigation Opt-Ins are Opt-Ins.

      1.8    **New York Class; New York Class Member.**  "New York Class" shall mean all individuals who are or were employed by Boston Market as an Assistant General Manager, Culinary Manager, or Hospitality Manager within the State of New York between January 4, 2004 and the date of the order granting Preliminary Approval ("New York Class Period").  A member of the New York Class is a "New York Class Member."

      1.9    **New York Class Claims.**  "New York Class Claims" shall mean the New York law claims in the Complaint.

1.10    **Connecticut Class; Connecticut Class Member.**  "Connecticut Class" shall mean all individuals who are or were employed by Boston Market as an Assistant General Manager, Culinary Manager, or Hospitality Manager within the State of Connecticut between January 4, 2008 and the date of the order granting Preliminary Approval ("Connecticut Class Period").  A member of the Connecticut Class is a "Connecticut Class Member."

1.11    **Connecticut Class Claims.**  "Connecticut Class Claims" shall mean the Connecticut law claims in the Complaint.

1.12    **Preliminary Approval.**  "Preliminary Approval" shall mean the Court's entry of an order, in the form attached as Exhibit B, conditionally certifying the FLSA Class (as defined herein), provisionally certifying the New York Class and the Connecticut Class, and preliminarily approving this Agreement.

## 2.    INDIVIDUAL RELEASES BY NAMED PLAINTIFFS

As a condition precedent to this Agreement, and prior to its execution, the Named Plaintiffs shall timely and fully execute and return to Defendant's Counsel a Confidential Agreement and Individual Release in the form attached as Exhibit C.

## 3.    APPROVAL OF SETTLEMENT

3.1    **Retention of Claims Administrator.**

(A)    Within 7 calendar days of the execution of this Agreement, the Parties shall retain a Claims Administrator, who shall be responsible for claims administration and various other duties described in this Agreement.  The duties of the Claims Administrator shall be limited to those described in this Agreement, and the Claims Administrator shall have no discretion beyond that granted by this Agreement.  The Claims Administrator shall be required to agree in writing to treat information it receives or generates as part of the claims administration process as confidential and to use such information solely for purposes of claims administration. Defendant's Counsel and Plaintiffs' Counsel will have equal access to the Claims Administrator, as well as all information in possession of the Claims Administrator related to the administration of the settlement, except that the Claims Administrator shall not provide Plaintiffs' Counsel with access to any social security numbers provided to or obtained by the Claims Administrator in connection with its duties under the terms of this Agreement.  Neither party shall have the authority or ability to expand the duties, responsibilities or authority of the Claims Administrator beyond those described in this Agreement.

(B)    All fees and expenses of the Claims Administrator shall be paid out of the Total Settlement Amount, as defined in Section 4.1.  The Claims Administrator shall be required to agree to a reasonable cap for fees and expenses for claims administration work, and such cap shall provide the basis for the reserve described in Section 4.1.  Any fees and expenses in excess of the cap shall not be paid to the Claims Administrator unless the Claims Administrator files a declaration with the Court explaining the basis for the additional fees and costs and receives approval by the Court for such payments.  In no event shall the Claims Administrator seek additional fees and expenses after the Fairness Hearing.

3.2     **Preliminary Approval of Settlement.**  Following execution of this Agreement, Named Plaintiffs will file a motion seeking:  (1) conditional certification of the FLSA Class (as defined herein); (2) provisional certification of the New York Class and the Connecticut Class; (3) approval of notice materials to all classes; and (4) preliminary approval of this Agreement, the settlement of the claims of the FLSA Class, the New York Class, and the Connecticut Class, and the form of all releases that are part of the settlement of the Litigation.  This motion will be in the form attached as Exhibit D.  As part of the filing, Plaintiffs shall submit to the Court: (1) this Agreement; (2) the Individual Releases executed by Named Plaintiffs; (3) proposed Notices to the New York Class and Connecticut Class of Proposed Settlement of Class Action Lawsuit and Fairness Hearing (in the form attached as Exhibit E); (4) a proposed Opt-Out Statement for members of the New York Class and Connecticut Class (in the form attached as Exhibit F); (5) a proposed Notice to the FLSA Class of Proposed Settlement of Class Action Lawsuit and Fairness Hearing (in the form attached as Exhibit G); (6) a proposed Opt-In Form and Individual Release for the FLSA Class (in the form attached as Exhibit H); (7) a proposed Individual Release for the Litigation Opt-Ins (in the form attached as Exhibit I); and (8) a proposed order granting preliminary approval to the settlement (in the form attached as Exhibit B).

3.3     **Preliminary Approval.**  If the Court does not grant Preliminary Approval, and enter an order in the form attached as Exhibit B, the Parties agree to negotiate in good faith over an alternative settlement, and to seek reconsideration or Court approval of a renegotiated settlement.

3.4     **Notice to the FLSA Class.**

(A)     Within 15 calendar days following the entry of an order granting Preliminary Approval, Defendant will provide the Claims Administrator and Class Counsel with a list, in electronic form, of the names and last known addresses, and phone numbers of all FLSA Class Members.

(B)     In addition, within 15 calendar days following the entry of an order granting Preliminary Approval, Defendant will provide the Claims Administrator and Class Counsel with a list, in electronic form, of:

(1)     The dates, between January 4, 2004 and the date of entry of the order granting Preliminary Approval that each of the New York Class Members (including any New York Class Members who are also Named Plaintiffs or Litigation Opt-Ins), worked for Boston Market in New York in the Assistant General Manager, Hospitality Manager, or Culinary Manager positions;

(2)     The dates, between January 4, 2007 and the date of entry of the order granting Preliminary Approval that each Named Plaintiff, Litigation Opt-In, Connecticut Class Member, and FLSA Class Member worked for Boston Market in any state (other than California or New York) in the Assistant General Manager, Hospitality Manager, or Culinary Manager positions;

- 5 -

(3)     The data provided by Defendant to the Claims Administrator pursuant to this Agreement (other than address information) shall be conclusively presumed to be accurate.

(C)     Promptly following the Court's entry of an order granting Preliminary Approval, in the form attached as Exhibit B, the Claims Administrator shall prepare final versions of the following documents, incorporating into the document the relevant dates and deadlines set forth in the Court's order:  (1) a Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing in the form attached as Exhibit G, and (2) an Opt-In Form and Individual Release in the form attached as Exhibit H (the "FLSA Documents").  The Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing shall include an estimated settlement award for each FLSA Class Member to be calculated by the Claims Administrator.  In addition, Boston Market shall issue a letter or electronic communication to FLSA Class Members alerting them to the settlement and urging them to consider it.  Boston Market shall retain discretion over the content of the communication, but Plaintiffs' Counsel may review and comment on the communication before it issues.

(D)     Within 15 calendar days after the Defendant's delivery of the information referenced in Section 3.4(A) (the "Initial Mailing Deadline"), the Claims Administrator shall mail, <u>via</u> First Class United States mail, postage prepaid, the final versions of the FLSA Documents to each FLSA Class Member (except that such notice shall <u>not</u> issue to any FLSA Class Member who is also a Named Plaintiff, Litigation Opt-In, New York Class Member, or Connecticut Class Member).

(E)     The Claims Administrator shall take reasonable steps to obtain the correct address of any FLSA Class Members for whom the FLSA Documents are returned by the post office as undeliverable.  Where correct addresses are obtained, the Claims Administrator shall attempt to remail the Documents.  The Claims Administrator shall notify Class Counsel and Defendant's Counsel of any Documents returned by the post office as undeliverable.

(F)     The Claims Administrator shall also periodically inform both Class Counsel and Defendant as to opt-in consent forms received.  Class Counsel shall be permitted to contact FLSA Class Members to encourage them to submit opt-in consent forms pursuant to this Agreement.

3.5     **Notice to the New York Class and the Connecticut Class.**

(A)     Within 15 calendar days following the entry of an order granting Preliminary Approval, Defendant will provide the Claims Administrator with a list, in electronic form, of the names and last known addresses of all New York Class Members and all Connecticut Class Members.

(B)     Promptly following the Court's entry of an order granting Preliminary Approval, in the form attached as Exhibit B, the Claims Administrator shall prepare final versions of the following documents, incorporating into the document the relevant dates and deadlines set forth in the Court's order:  (1) a Notice of Proposed Settlement of Class Action

- 6 -

Lawsuit and Fairness Hearing in the form attached as Exhibit E, and (2) an Opt-Out Statement in the form attached as Exhibit F (the "New York & Connecticut Documents").

(C)    Within 15 calendar days after Defendant's delivery of the information referenced in Section 3.5(A) (the "Initial Mailing Deadline"), the Claims Administrator shall mail, via First Class United States mail, postage prepaid, the final versions of the New York & Connecticut Documents to each New York Class Member and each Connecticut Class Member.

(D)    The Claims Administrator shall take all reasonable steps to obtain the correct address of any New York Class Member for Connecticut Class Member for whom the New York & Connecticut Documents are returned by the post office as undeliverable. Where correct addresses are obtained, the Claims Administrator shall attempt to remail the New York & Connecticut Documents. The Claims Administrator shall notify Class Counsel and Defendant's Counsel of any Documents returned by the post office as undeliverable.

3.6    **New York Class Member and Connecticut Class Member Opt-Out.**

(A)    Any New York Class Member or Connecticut Class Member may request exclusion by "opting out." To do so, a New York Class Member or Connecticut Class Member must submit a written and signed request for exclusion to the Claims Administrator, in the form of the Opt-Out Statement attached as Exhibit F.

(B)    To be effective, a New York or Connecticut Class Member's Opt-Out Statement must be postmarked no later than a date to be specified on the Notice of Proposed Class Action Lawsuit and Fairness Hearing, in the form of Exhibit E. This date will be 60 calendar days after the Initial Mailing Deadline, and the period of time between the Initial Mailing Deadline and this date shall be referred to as the "Opt-Out Period."

(C)    The Claims Administrator shall stamp the postmark date on the original of each Opt-Out Statement that it receives. Within 3 business days of its receipt thereof, the Claims Administrator shall send to Class Counsel and Defendant's Counsel copies of each such Opt-Out Statement. This obligation shall be on-going, regardless of whether the Opt-Out Statement is timely or not.

(D)    Within 10 calendar days after the end of the Opt-Out Period, the Claims Administrator shall file with the Clerk of Court copies of any timely submitted Opt-Out Statements. The filed copies shall be stamped as described in Section 3.6(C), and all address information and social security numbers shall be redacted from them. Additionally, within 10 calendar days after the end of the Opt-Out Period, the Claims Administrator shall send to Class Counsel and Defendant's counsel a final list of all persons who timely submitted Opt-Out Statements. The Claims Administrator shall retain the originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(E)    Any State Law Class Member who does not timely opt out will be bound by the release set forth in Section 5.

3.7    **Eligibility for Payment Under This Agreement.**

(A)    Named Plaintiffs shall be eligible for payment under this Agreement if they comply with the obligations described in Section 2.

(B)    Litigation Opt-Ins shall be eligible for payment under this Agreement if they fully execute and return to Plaintiffs' Counsel the Individual Release (in accordance with the instructions thereon), in the form attached as Exhibit I, no later than 60 days after the Initial Mailing Deadline.

(C)    New York Class Members and Connecticut Class Members (who are not also Named Plaintiffs or Litigation Opt-Ins) shall be eligible for payment under this Agreement if they do <u>not</u> opt out pursuant to Section 3.6.

(D)    FLSA Class Members (who are not also Named Plaintiffs, Litigation Opt-Ins, New York Class Members, and/or Connecticut Class Members) shall be eligible for payment under this Agreement if they timely and fully execute and return to the Claims Administrator the Opt-In Form and Individual Release (in accordance with the instructions thereon), in the form attached as Exhibit H.

(E)    As described in Section 3.4(B), an Opt-In Form and Individual Release (in the form attached as Exhibit H) will be attached to the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing (in the form attached as Exhibit G) sent to each FLSA Class Member who is not also a Named Plaintiff, Litigation Opt-In, New York Class Member, or Connecticut Class Member.  The Opt-In Form and Individual Release will include: (1) an acknowledgment that, by signing the Opt-In Form and Individual Release, the signatory is an FLSA Class Member; and (2) a release of claims consistent with that set forth in Section 5 of this Agreement.

(F)    To be effective, an Opt-In Form and Individual Release must be sent to the Claims Administrator via First Class United States Mail, postage prepaid, and be postmarked no later than 60 calendar days after the Initial Mailing Deadline.

3.8    **Objections To Settlement.**

(A)    New York Class Members and Connecticut Class Members (other than those who have opted out pursuant to Section 3.6) may present objections to the proposed settlement at the Fairness Hearing.  To do so, an objector must first present his or her objections to the Claims Administrator in writing.  To be considered, such objections must be sent to the Claims Administrator via First-Class United States mail, postage prepaid; they must be postmarked no later than 60 calendar days after the Initial Mailing Deadline; and they must be received by the Claims Administrator no later than 7 calendar days after the end of the Opt-Out Period.  The Claims Administrator shall stamp the postmark date and the date received on the original of any such objection.  Additionally, the Claims Administrator shall send copies of each objection to the Parties by facsimile and overnight delivery not later than 2 business days after receipt thereof.  The Claims Administrator shall also file the date-stamped originals of any and all objections with the Clerk of Court within 10 calendar days after the end of the Opt-In Period.

COI-1466187v6

(B)     An objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the objector.  An objector who wishes to appear at the Fairness Hearing must state his or her intention to do so at the time he/she submits his/her written objections to the Claims Administrator.  Any objector may withdraw his/her objections at any time.  No State Law Class Member may appear at the Fairness Hearing unless he or she has filed a timely objection that complies with the procedures provided in Section 3.8(A).

(C)     The Parties may file with the Court written responses to any filed objections together with their motion for final approval of the settlement prior to the Fairness Hearing.

3.9     **Motion for Judgment and Final Approval.**  Not later than 45 calendar days after the end of the Opt-Out Period, the Parties will file a Motion for Judgment and Final Approval requesting:  (1) an order (in the form of the order attached as Exhibit J) granting final certification of the New York Class and of the Connecticut Class, final certification of the FLSA Class, and final approval of this Agreement, including a ruling that the Agreement is final, fair, reasonable, adequate and binding on all Named Plaintiffs and Opt-Ins, and on all State Law Class Members who have not timely opted out pursuant to Section 3.6; (2) the entry of judgment (in the form attached as Exhibit A) in accordance with this Agreement; and (3) dismissal of the Litigation with prejudice.  The Parties' Motion for Judgment and Final Approval will be considered separate and apart from the Court's consideration of any applications for attorneys' fees and costs and/or service payments, and the Court's ruling on any such separate applications will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval.

3.10    **Effect of Failure to Grant Judgment and Final Approval.**  In the event the Court fails to enter an order and a judgment in the form attached as Exhibit J, or that judgment does not become Final, the Parties jointly agree to:  (1) seek reconsideration or appellate review of the decision denying entry of judgment, and (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.  In the event that reconsideration and/or appellate review is denied, and a mutually agreed settlement is not approved, the Litigation will resume and:

(A)     The Litigation will proceed as if no settlement has been attempted.  In that event, the FLSA Class, the New York Class, and the Connecticut Class, which were certified for purposes of settlement, shall be decertified, and Defendant retains the right to contest whether this Litigation should be maintained as a class action or collective action and to contest the merits of the claims being asserted in this action.

(B)     The Court will provide notice to all Class Members that the Agreement did not receive final approval and that, as a result, no payments will be made to any person under the Agreement.  Such notice shall be mailed by the Claims Administrator via First Class United States Mail, postage prepaid, to the addresses used by the Claims Administrator in mailing the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing. The Parties will share in equal parts the fees and expenses of the Claims Administrator.

(C)     Any funds transferred into a Qualified Settlement Fund pursuant to Section 4.5 shall be returned to Boston Market.

## 4.     CONSIDERATION

4.1     **Total Settlement Amount.**  Defendant agrees to pay a maximum of $3,000,000.00 ("Total Settlement Amount"), which shall cover, resolve, and fully satisfy any and all amounts due under this Agreement, including:  (1) all payments to be made to the Named Plaintiffs, FLSA Class Members and State Law Class Members pursuant to this Agreement; (2) all attorneys' fees and costs approved by the Court; (3) all court-approved service payments to certain individuals; and (4) the reserve set aside for reasonable costs of settlement administration. Under no circumstances will Defendant be required to pay more than $3,000,000.00, other than amounts due to cover Boston Market's share of payroll taxes as described in Section 4.7.  In the event that this Agreement is cancelled, rescinded, terminated, voided or nullified, however that may occur, or the Agreement is barred by operation of law, invalidated, or ordered not to be carried out by a court of competent jurisdiction, Defendant shall have no obligation to pay any of the Settlement Amount.

4.2     **Attorneys' Fees and Costs.**  At the Fairness Hearing, Class Counsel shall petition the Court for no more than 33.33% of the Total Settlement Amount as an award of attorneys' fees and no more than $60,000 as reimbursement of reasonable litigation costs and expenses.  Defendant will not oppose such a fee and cost application.  All fees and costs approved by the Court shall be paid from the Settlement Amount.  Class Counsel understand and agree that such payment shall be Boston Market's full, final, and complete payment of all attorneys' fees and costs associated with Class Counsel's representation of individuals in connection with the Litigation, and that the fee and cost award by the Court shall supersede and extinguish, as of the Effective Date, any prior agreement between Class Counsel and any Named Plaintiff (and/or, as the case may be, any other Class Member) concerning attorneys fees and costs associated with the Litigation.  Defendant shall have no additional liability for any fees and costs associated with the Litigation.

4.3     **Service Payments.**

(A)     At the Fairness Hearing, Named Plaintiffs, through counsel, will apply for the following service payments from the Total Settlement Amount:

(1)     For Eric Kehou and Patricia Fernandez, $15,000.00 each.

(2)     For Sherrie Ward and Rahiem Taylor, $10,000.00 each.

(B)     Defendant will not oppose any such application by Named Plaintiffs.  Any service payments approved by the Court shall be paid from the Total Settlement Amount.

4.4     **Settlement Payments.**

(A)     The Claims Administrator shall calculate "Settlement Payments" due to Named Plaintiffs, the Opt-Ins, and State Law Class Members.  All Settlement Payments shall be

- 10 -

paid from the Total Settlement Amount.  The Settlement Payments shall be calculated as follows:

(1)     The Claims Administrator shall determine a "Net Settlement Amount," which shall equal the Total Settlement Amount minus the reserve set aside for reasonable costs of settlement administration (as described in Section 4.1(A)), the amount of attorneys' fees and reimbursement for costs approved by the Court (as described in Section 4.2(A)), and the amount of service payments approved by the Court (as described in Section 4.3).

(2)     The Claims Administrator shall determine an "Individual Numerator" for each Named Plaintiff, each FLSA Class Member, and each State Law Class Member.  For each such person, his or her Individual Numerator shall equal:

(a)     The number of weeks that the individual worked for Boston Market in New York in the Assistant General Manager, Hospitality Manager, or Culinary Manager positions between January 4, 2004 and the date of the entry of an order granting Preliminary Approval, plus,

(b)     The number of weeks that the individual worked for Boston Market in any other state (except California) in the Assistant General Manager, Hospitality Manager, or Culinary Manager positions between January 4, 2007, and the date of the entry of an order granting Preliminary Approval.

(3)     The Claims Administrator shall determine a "Total Denominator" by adding together the Named Plaintiffs', each of the State Law Class Members', and each of the FLSA Class Members' Individual Numerator.

(4)     The Claims Administrator shall determine a "Distribution Percentage" for Named Plaintiffs, each of the State Law Class Members, and each of the FLSA Class Members by dividing each such person's Individual Numerator by the Total Denominator.

(5)     The Claims Administrator shall determine a Settlement Payment for Named Plaintiffs, each of the State Law Class Members, and each of the Opt-Ins by multiplying each such person's Distribution Percentage by the Net Settlement Amount.

(B)     The Claims Administrator shall determine an FLSA Reverter Amount by (i) multiplying the Distribution Percentage of each FLSA Class Member who is not a Named Plaintiff, New York Class Member, Connecticut Class Member, or Opt-In by the Net Settlement Amount, and (ii) adding together the total of each such calculation.  In other words, the FLSA Reverter Amount is the portion of the settlement allocated to FLSA Class Members who do not opt-in (if any), and this FLSA Reverter Amount will revert to Defendant.

4.5     **Schedule for Transfer of Funds**

(A)     Defendant will transfer funds associated with the Total Settlement Amount as follows:

(1)    On November 30, 2011, the Defendant will transfer $325,000 into a Qualified Settlement Fund (the "QSF"), within the meaning of Treasury Regulation § 1.468B-1, *et seq*.

(2)    On March 15, 2012, Defendant will transfer, into the QSF, an amount that is 25% of the amount that is the Total Settlement Amount less $325,000.

(3)    On November 15, 2012, Defendant will transfer, into the QSF, an amount that is 25% of the amount that is Total Settlement Amount less $325,000.

(4)    On March 15, 2013, Defendant will transfer, into the QSF, an amount that is 50% of the amount that is the Total Settlement Amount less $325,000, <u>minus</u> the FLSA Reverter Amount.

(B)    Notwithstanding the foregoing, Defendant shall not be obligated to make any of the transfers described in Section 4.5(A) unless and until the Court has granted Preliminary Approval to the Settlement.  In the event that the Court has not granted Preliminary Approval as of a date listed in Section 4.5(A), the transfer that otherwise would have been due on that date will be due within 7 calendar days after the Court grants Preliminary Approval to the Settlement.  The total amount of the transfers described in Section 4.5(A) shall not exceed the Total Settlement Amount minus the FLSA Reverter Amount.

4.6    **Acceleration.**  Subject to the provisions of Section 4.5(B), in the event that Defendant fails to timely make a transfer of funds required by Section 4.5(A), the Total Settlement Amount, less the FLSA Reverter Amount, will become due 45 calendar days from the date of the missed payment.  Provided, however, that either Plaintiff's Counsel or the Claims Administrator must provide written notice of the missed transfer to Defendant and Defendant's Counsel, and Defendant shall have 14 calendar days from receipt of the written notice to make the missed transfer without penalty.

4.7    **Taxability of Payments.**

(A)    For tax purposes, 50% of the respective Settlement Payments made to the respective payees (collectively, "Employees") pursuant to Section 4.4. shall be treated as back wages, and 50% of such payments shall be treated as liquidated damages and interest.  The Claims Administrator, as administrator of the QSF making such payments, shall report that portion of the respective Settlement Payments treated as wages to the respective Employees and to the United States Internal Revenue Service and to other appropriate taxing authorities ("Taxing Authority" or "Taxing Authorities") on Forms W-2.  Such portions of the Settlement Payments treated as wages shall be subject to applicable employment taxes and withholding taxes, as determined by the Claims Administrator as administrator of the QSF making such payments.  Boston Market shall bear the cost of the employer's share of taxes for such payments, which share of taxes will not come out of the Total Settlement Amount.  In the event that it is subsequently determined by any Taxing Authority that any Employee owes any additional taxes with respect to any money distributed under this Agreement, it is expressly agreed that liability for such taxes rests exclusively with that Employee and that Defendant will not be responsible for the payment of such taxes, including any interest and penalties.  The Claims Administrator,

- 12 -

as administrator of the QSF, shall report that portion of the Settlement Payments treated as liquidated damages and interest pursuant to this Section to the respective employees and Taxing Authorities, to the extent required by law, under the employees' names and federal taxpayer identification numbers on Forms 1099, and such payments shall be paid without deductions for taxes and withholdings, except as required by law, as determined by the Claims Administrator as administrator of the QSF making such payments.

(B)     The Claims Administrator, as administrator of the QSF, shall report to the respective payees and to the Taxing Authorities on a Form 1099 any service payments made pursuant to Section 4.3, and such payments shall be paid without deductions for taxes and withholdings, except as required by law, as determined by the Claims Administrator as administrator of the QSF making such payments.

(C)     The Claims Administrator, as administrator of the QSF, shall report the fees and costs paid to Class Counsel pursuant to Section 4.2:  (i) to Class Counsel (and to the Taxing Authorities) on a Form 1099, under Class Counsel's federal taxpayer identification number; and (ii) to each Named Plaintiff and Opt-In (and to the Taxing Authorities) on a Form 1099, under such Named Plaintiff's or Opt-In's federal taxpayer identification number, in an amount equal to such Named Plaintiff's or Opt-In's proportional share of such payments. Payment of such fees and costs to Class Counsel shall be made without deductions for taxes and withholdings, except as required by law, as determined by the Claims Administrator as administrator of the QSF making such payments.

(D)     The Defendant shall have no liability or responsibility whatsoever for taxes of the QSF, any Class Member, Class Counsel, or any other person or the filing of any tax returns, information reports or other documents with the Internal Revenue Service or any other taxing authority with respect thereto.  Employees will be solely responsible for all taxes, interest and penalties owed by the Employees with respect to any payment receive pursuant to this Agreement.  Employees will indemnify, defend, and hold Defendant and the Claims Administrator harmless from and against any and all taxes and interest as a result of an Employee's failure to timely pay such taxes.  Named Plaintiffs, on behalf of the FLSA Class, the New York Class, and the Connecticut Class, acknowledges and agrees that Defendant has provided no advice as to the taxability of the payments received pursuant to this Agreement.

(E)     For tax purposes:

(1)     The Defendant shall be the "transferor" within the meaning of Treasury Regulation § 1.468B-1(d)(1) to the QSF with respect to the amounts transferred;

(2)     The Claims Administrator shall be the "administrator" of the QSF within the meaning of Treasury Regulation § 1.468B-2(k)(3), responsible for causing the filing of all tax returns required to be filed by or with respect to the QSF, paying from the QSF any taxes owed by or with respect to the QSF, and complying with any applicable information reporting or tax withholding requirements imposed by Treasury Regulation § 1.468B-2(1)(2) or any other applicable law on or with respect to the QSF, and in accordance with Section 4.7(B) of this Agreement; and

(3)     The Defendant and the Claims Administrator shall reasonably cooperate in providing any statements or making any elections or filings necessary or required by applicable law for satisfying the requirements for qualification as a QSF, including any relation-back election within the meaning of Treasury Regulation § 1.468B-1(j).

## 5.     RELEASE

5.1     **Release of Claims.**  By operation of the entry of the Court Order, and except as to such rights or claims as may be created by this Agreement, Named Plaintiffs, the Opt-Ins, each individual New York Class Member who does not timely opt out pursuant to Section 3.6, and each individual Connecticut Class Member who does not timely opt out pursuant to Section 3.6 forever and fully release Defendant, its owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parent companies, divisions, subsidiaries, affiliates, benefit plans, plan fiduciaries and/or administrators, and all persons acting by, through, under or in concert with any of them, including any party that was or could have been named as a defendant in the Litigation (collectively, the "Releasees") from any and all past and present matters, claims, demands, causes of action, and appeals of any kind, whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, local, or other applicable law, which any such individual has or might have, known or unknown, of any kind whatsoever, that are based upon an alleged failure to pay overtime or other compensation, or otherwise arise out of or relate to the facts, acts, transactions, occurrences, events or omissions alleged in the Litigation, and that arose during any time that such individual worked for Defendant up until the date of the entry of the order granting Final Approval ("Released Claims").  The Released Claims include without limitation claims asserted in the Litigation and any other claims based on state or federal law wage and hour law governing overtime pay, exempt status, payment of wages, denial of meal periods and rest breaks, denial of spread of hours pay, failure to pay wages upon termination, failure to provide itemized wage statements, unfair competition, failure to make payments due had such individual been classified as nonexempt, failure to provide benefits or benefit credits, failure to keep records of hours worked or compensation due, and penalties for any of the foregoing, including without limitation claims under the Fair Labor Standards Act ("FLSA"), the New York Minimum Wage Act, New York Labor Law §§ 650 *et seq.*, New York Wage Payment Act, New York Labor Law § 190 *et seq.*, the New York State Department of Labor Regulations, 12 N.Y.C.R.R. part 142, the Connecticut Minimum Wage Act, Conn. Gen. Stat. §§ 31-58 *et seq.*, and the statutes and regulations of all other states relating to the foregoing.

5.2     **Release of Fees and Costs.**  Class Counsel and Named Plaintiffs, on behalf of the FLSA Class, the New York Class, the Connecticut Class, and each individual member of each respective class, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendant for attorneys' fees or costs associated with the Litigation and Class Counsel's representation of any and all individuals in the Litigation.  Class Counsel further understand and agree that any fee payments approved by the Court will be Defendant's full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation of these individuals.  Defendant shall have no additional liability for any fees and costs associated with the Litigation.

5.3     **No Assignment.**  Class Counsel and Named Plaintiffs, on behalf of the FLSA Class, the New York Class, the Connecticut Class, and each individual member of each respective class, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

5.4     **Non-Admission of Liability.**  By entering into this Agreement, Defendant in no way admits any violation of law or any liability whatsoever to Named Plaintiffs, members of the FLSA Class, members of the New York Class, members of the Connecticut Class, or any other individual, individually or collectively, all such liability being expressly denied.  Likewise, by entering into this Agreement, Defendant in no way admits to the suitability of this case for class or collective action litigation other than for purposes of settlement.  Rather, Defendant enters into this agreement to avoid further protracted litigation and to resolve and settle all disputes.  Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement:  (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on part of the Defendant or of the truth of any of the factual allegations asserted in the Litigation; (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendant in any civil, criminal, administrative or arbitral proceeding; and (c) are not, shall not deemed to be, and may not be used as an admission or evidence of the appropriateness of these or similar claims for class certification or administration or collective action treatment other than for purposes of administering this Agreement.  The Parties understand and agree that this Agreement and all exhibits hereto are settlement documents and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

## 6.     PLAN OF DISTRIBUTION

(A)     Within 14 calendar days after the Final Approval, the Claims Administrator shall provide to Class Counsel and Defendant's Counsel a proposed plan of distribution of the Total Settlement Amount, containing the names of and proposed distribution to Named Plaintiffs, the Opt-Ins, each New York Class Member and each Connecticut Class Member ("Plan of Distribution").  At the same time, the Claims Administrator shall also provide an itemized list of its costs and expenses and all other amounts to be deducted from the Total Settlement Amount, and the Claims Administrator shall also specify the amount of payroll taxes due with respect to the Settlement Payments to Class Members.  Each Party shall have 7 calendar days from receipt of the Plan of Distribution to serve the other Party and the Claims Administrator with any corrections to the Plan of Distribution, or to comment on the administrative costs and expenses or other deductions.  The Claims Administrator shall make any changes to the Plan of Distribution mutually agreed upon by the Parties in writing and then serve the final Plan of Distribution within 7 calendar days of receiving the last of such corrections.  If the Parties disagree over the Plan of Distribution, they will submit any disagreement to the Court for resolution.  Any dispute over administrative costs and expenses shall also be submitted to the Court.

(B)    Within 21 days of (a) the Effective Date of this Agreement, or (b) April 5, 2012, whichever is later, the Claims Administrator will distribute the funds in the QSF as of such date ("QSF Balance") by making the following payments:

(1)    Reimbursing Class Counsel for all costs and expenses approved by the Court as described in Section 4.2;

(2)    Paying Class Counsel their "Pro Rata Share" of the QSF Balance as Court-approved attorneys' fees as described in Section 4.2.  Class Counsel's Pro Rata Share is the Court-approved percentage of the settlement fund to be paid as attorneys' fees;

(3)    Paying Plaintiffs the Court-approved Service Payments as described in Section 4.3; and

(4)    Paying each Named Plaintiff, each FLSA Class Member, and each State Law Class Member an "Initial Installment" of his or her Settlement Payment as described in Section 4.4(A).  For each such person, his or her Initial Installment shall equal their Distribution Percentage as described in Section 4.4(A)(4) multiplied by the funds remaining in the QSF Balance after the payments in Subsections (1)-(3) above have been made.

(C)    Within 21 days after (a) the Effective Date of this Agreement, or (b) April 5, 2013, whichever is later, the Claims Administrator will distribute the remaining funds in the QSF ("QSF Remainder") by making the following payments:

(1)    Paying Class Counsel their Pro Rata Share of the QSF Remainder as Court-approved attorneys' fees as described in Section 4.2; and

(2)    Paying Class Members the remaining portion of their Settlement Payments as described in Section 4.4(A).

(D)    In connection with the foregoing, the Claims Administrator will also timely mail all associated tax forms described in Section 4.7.  The Claims Administrator shall use reasonable efforts to make a second mailing to New York Class Members, Connecticut Class Members, or Opt-Ins whose checks are returned because of incorrect addresses.  Such efforts shall include using social security numbers to obtain better address information and attempting to call such individuals.  Any additional efforts undertaken shall be in the sole discretion of the Claims Administrator.  All efforts of the Claims Administrator to send checks to New York Class Members and Connecticut Class Members shall cease no later than 2 months after the Claims Administrator makes the initial mailing of the checks.  Any check not cashed by the payee within 120 days after the Claims Administrator makes the initial mailing of the check shall be void.  Payment may be stopped on such check, and the amount thereof shall revert to Defendant.

## 7.    PUBLIC STATEMENTS; CLASS MEMBER INQUIRIES; NO SOLICITATION

Class Counsel shall:  (1) make no public statement regarding the terms of this Agreement, except as required to obtain Court approval of the settlement; (2) issue no press release regarding the settlement of the Litigation; and (3) not mention or describe the Litigation

- 16 -

or the settlement in any internet website or any other marketing materials, whether in paper form, electronic, or in any other type of media, or as part of any marketing efforts, whether written or oral.

## 8.    MISCELLANEOUS.

8.1    **Cooperation Between The Parties; Further Acts.**  The Parties shall cooperate fully with each other and shall use reasonable efforts to obtain the Court's approval of this Agreement and all of its terms.  Each of the Parties, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

8.2    **Entire Agreement.**  Other than executed Individual Releases, and the Claim Forms and Individual Releases executed by Opt-Ins, this Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein.  All prior and contemporaneous negotiations and understandings between the Parties (other than executed Individual Releases and Claim Forms and Individual Releases executed by Opt-Ins) shall be deemed merged into this Agreement.

8.3    **Binding Effect.**  This Agreement shall be binding upon the Parties and, with respect to Named Plaintiffs and Opt-Ins, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

8.4    **Arms' Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering this Agreement.

8.5    **Captions.**  The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

8.6    **Construction.**  This Agreement shall be construed in accordance with the laws of the State of Connecticut.  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement; therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

8.7    **Force and Effect.**  Following the Effective Date, if any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful, or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

8.8    **Continuing Jurisdiction.**  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated hereby.  The Court shall not have jurisdiction to modify the terms of the Agreement or to increase Defendant's payment obligations hereunder.

      8.9    **Waivers, etc. to be in Writing.**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

      8.10   **Counterparts.**  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if the Parties had signed the same instrument.

      8.11   **Facsimile & Email Signatures.**  Any signature made and transmitted by facsimile or email for the purposes of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

      8.12   **Signature by Class Counsel.**  By their signatures below, Class Counsel execute this Agreement as to Sections 4.2, 5.2, 5.3, and 7 only.

DATED:      November ___, 2011      BOSTON MARKET CORPORATION

      By:_____

      Its: _____

DATED:      November ___, 2011      ERIC KEHOU

      _____

DATED:      November ___, 2011      PATRICIA FERNANDEZ

      _____

DATED:        November ___, 2011          SHERRIE WARD

_____

DATED:        November ___, 2011          RAHIEM TAYLOR

_____

DATED:        November ___, 2011          OUTTEN & GOLDEN, LLP

By:_____
    Justin M. Swartz

DATED:        November ___, 2011          KLAFTER OLSEN & LESSER LLP

By:_____
    Seth R. Lesser

DATED:        November ___, 2011          HAYBER LAW FIRM, LLC

By:_____
    Richard E. Hayber

COI-1466187v6

8.9    **Waivers, etc. to be in Writing.**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

8.10    **Counterparts.**  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if the Parties had signed the same instrument.

8.11    **Facsimile & Email Signatures.**  Any signature made and transmitted by facsimile or email for the purposes of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

8.12    **Signature by Class Counsel.**  By their signatures below, Class Counsel execute this Agreement as to Sections 4.2, 5.2, 5.3, and 7 only.

DATED:        November 21, 2011          BOSTON MARKET CORPORATION

By: _____
Its:  _CHIEF ADMINISTRATIVE OFFICER_

DATED:        November ___, 2011          ERIC KEHOU

_____

DATED:        November ___, 2011          PATRICIA FERNANDEZ

_____

- 18 -

COI-1466187v6

8.9    **Waivers, etc. to be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not he deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

8.10    **Counterparts.** The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if the Parties had signed the same instrument.

8.11    **Facsimile & Email Signatures.** Any signature made and transmitted by facsimile or email for the purposes of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

8.12    **Signature by Class Counsel.** By their signatures below, Class Counsel execute this Agreement as to Sections 4.2, 5.2, 5.3, and 7 only.


DATED:        November ___, 2011              BOSTON MARKET CORPORATION


                                             By: _____
                                             Its: _____



DATED:        November 21, 2011              ERIC KEHOU

                                             _____



DATED:        November ___, 2011             PATRICIA FERNANDEZ

                                             _____

COI-1466187v6

8.9     Waivers, etc. to be in Writing. No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

8.10     Counterparts. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if the Parties had signed the same instrument.

8.11     Facsimile & Email Signatures. Any signature made and transmitted by facsimile or email for the purposes of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

8.12     Signature by Class Counsel. By their signatures below, Class Counsel execute this Agreement as to Sections 4.2, 5.2, 5.3, and 7 only.


DATED:      November ___, 2011          BOSTON MARKET CORPORATION


                                        By:_____
                                        Its: _____


DATED:      November ___, 2011          ERIC KEHOU

                                        _____


DATED:      November 21, 2011           PATRICIA FERNANDEZ

                                        _Patricia Fernandez_

- 18 -

DATED:    November 20, 2011          SHERRIE WARD


DATED:    November ___, 2011          RAHIEM TAYLOR

_____


DATED:    November ___, 2011          OUTTEN & GOLDEN, LLP


                                      By:_____
                                           Justin M. Swartz


DATED:    November ___, 2011          KLAFTER OLSEN & LESSER LLP


                                      By:_____
                                           Seth R. Lesser


DATED:    November ___, 2011          HAYBER LAW FIRM, LLC


                                      By:_____
                                           Richard E. Hayber


- 19 -

DATED:        November ____, 2011          SHERRIE WARD


DATED:        November 20, 2011            RAHIEM TAYLOR


DATED:        November ____, 2011          OUTTEN & GOLDEN, LLP


                                           By:_____
                                               Justin M. Swartz


DATED:        November ____, 2011          KLAFTER OLSEN & LESSER LLP


                                           By:_____
                                               Seth R. Lesser


DATED:        November ____, 2011          HAYBER LAW FIRM, LLC


                                           By:_____
                                               Richard E. Hayber

COI-1466187v6

DATED:      November ___, 2011            SHERRIE WARD

_____

DATED:      November ___, 2011            RAHIEM TAYLOR

_____

DATED:      November 2l, 2011             OUTTEN & GOLDEN, LLP

By:_____
        Justin M. Swartz

DATED:      November ___, 2011            KLAFTER OLSEN & LESSER LLP

By:_____
        Seth R. Lesser

DATED:      November ___, 2011            HAYBER LAW FIRM, LLC

By:_____
        Richard E. Hayber

- 19 -

**EXHIBIT A**

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

-------------------------------------------------- X

BEBI ALLI, ERIK KEHOU, PATRICIA          )
FERNANDEZ, individually and on behalf of  )
all others similarly situated,            )
                                          )
           Plaintiffs,          )
                                          )
           -v.-               )
                                          )
BOSTON MARKET CORP.,                      )
                                          )
           Defendant.           )
                                          )

**Civil Action No. 3:10-cv-00004-JCH**

-------------------------------------------------- X

## FINAL JUDGMENT

WHEREAS, on [DATE], this Court granted preliminary approval to a settlement of this

action, embodied in the Parties' Global Settlement Agreement ("Settlement Agreement"), and

described the Rule 23 classes and the FLSA collective action that have been asserted in this case;

WHEREAS, on [DATE], the Court entered its Order Confirming Certification of

Class/Collective Action and Granting Final Approval to Settlement ("Final Approval Order"),

granting final approval to the settlement.  In the Final Approval Order, the Court found that the

settlement is fair, reasonable, and adequate as to the Class Members (as defined in the Settlement

Agreement) and Section I of this Court's [DATE] Order (the "Preliminary Approval Order"));

WHEREAS, the Court has found that the notice sent to the FLSA Class Members and the

State Law Class Members (as defined in the Settlement Agreement) fairly and adequately

informed them of the terms of the settlement, was consistent with Federal Rule of Civil

Procedure 23 and due process, and was given in the manner prescribed by the Settlement

Agreement and the Court's Preliminary Approval Order:

This Court hereby enters final judgment in this case.  As to Plaintiffs, members of the FLSA Class who opted in, and all State Law Class Members (as defined in the Settlement Agreement) who did not timely opt out, the Court dismisses the matter with prejudice, in accordance with the terms of the Settlement Agreement, the Final Approval Order, and the Preliminary Approval Order.

The Court hereby permanently enjoins and restrains Plaintiffs, members of the FLSA Class who opted in, and all State Law Class Members who did not timely opt out from asserting any and all claims that were released pursuant to the Settlement Agreement, the FLSA Opt-In Form and Release, and the Final Approval Order.  [*This Final Judgment shall not bind the persons listed in Exhibit A, who have timely opted out of the State Law Classes.*]

Without affecting the finality of this Final Judgment in any way, the Court reserves exclusive and continuing jurisdiction over this action, Plaintiffs, members of the FLSA class who opted in, and State Law Class Members who did not timely opt out, and the Defendant for the purposes of supervising the implementation, enforcement, construction and interpretation of the Settlement Agreement, the Preliminary Approval Order, the Final Approval Order, and this Final Judgment.

DATED:_____

_____
Hon. Janet C. Hall
United States District Judge

**EXHIBIT B**

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

-------------------------------------------------- X

BEBI ALLI, ERIK KEHOU, PATRICIA          )          **Civil Action No. 3:10-cv-00004-JCH**
FERNANDEZ, individually and on behalf of )
all others similarly situated,                        )
                                                              )
              Plaintiffs,                            )
                                                              )
              -v.-                                  )
                                                              )
BOSTON MARKET CORP.,                          )
                                                              )
              Defendant.                           )
                                                              )

-------------------------------------------------- X

## ORDER PROVISIONALLY CERTIFYING CLASS ACTION, CONDITIONALLY CERTIFYING FLSA COLLECTIVE ACTION, APPROVING NOTICE, PRELIMINARILY APPROVING SETTLEMENT, AND SETTING FAIRNESS HEARING

Eric Kehou, Patricia Fernandez, Sherrie Ward, and Rahiem Taylor ("Plaintiffs") are former employees of Boston Market Corporation ("Boston Market" or "Defendant"). Plaintiffs contend that Defendant misclassified them, and other employees, as exempt from overtime requirements, and as a result, failed to properly pay Plaintiffs for all time worked in violation of the Fair Labor Standards Act ("FLSA") and New York and Connecticut law. Boston Market denies Plaintiffs' allegations.

Plaintiffs sought to pursue their FLSA claims as a collective action under 29 U.S.C. § 216(b), and they sought to pursue their state law claims as a class action under Fed. R. Civ. P. 23. In a prior ruling, this Court granted conditional certification to the FLSA claims, but notice has not yet been distributed under that ruling. Plaintiffs have not yet moved for certification of

the Rule 23 Connecticut or New York classes ("State Law Classes"), and as such, this Court has

not ruled on the propriety of Rule 23 certification for the State Law Classes.

Notwithstanding their adversarial positions in this matter, the Parties have entered into

the attached Global Settlement Agreement, which consists of the Settlement Agreement and

Exhibits A through J thereto (collectively, the "Agreement"), that, if approved by this Court,

would resolve all claims in this matter, including the claims of the FLSA Class and the State Law

Classes (each of which is defined herein) that Plaintiffs seek to represent.  Presently pending

before this Court is Plaintiffs' Motion For Order Preliminarily Approving Settlement,

Provisionally Certifying State Law Classes, Conditionally Certifying FLSA Settlement Class,

Approving Notice, and Setting Fairness Hearing ("Motion").  Having reviewed the Parties'

submissions, the Court now FINDS, CONCLUDES, AND ORDERS as follows:

## I.      DEFINITION OF THE SETTLEMENT STATE LAW CLASSES AND FLSA CLASS

The Parties have entered into the Agreement solely for the purposes of compromising and

settling their disputes in this matter.  As part of the Agreement, Boston Market has agreed not to

oppose, for settlement purposes only, provisional certification of the following settlement

classes:

> The "New York Class" shall mean: all individuals who are or were
> employed by Boston Market as Assistant General Manager,
> Culinary Manager, or Hospitality Manager within the State of New
> York between January 4, 2004, and the date of this Order.

> The "Connecticut Class" shall mean: all individuals who are or
> were employed by Boston Market as Assistant General Manager,
> Culinary Manager, or Hospitality Manager within the State of
> Connecticut between January 4, 2008, and the date of this Order.

The New York Class and the Connecticut Class together are referred to as the "State Law Classes." The State Law Classes are opt-out classes under Fed. R. Civ. P. 23, and, collectively, the members of the State Law Classes are "State Law Class Members."

As further part of the Agreement, Defendant has agreed not to oppose, for settlement purposes, certification pursuant to 29 U.S.C. § 216(b) of the following opt-in settlement class:

> The "FLSA Class" shall mean all individuals who are or were employed by Boston Market as Assistant General Manager, Culinary Manager, or Hospitality Manager in states other than California, New York, or Connecticut between January 4, 2007 and the date of this Order or in Connecticut between January 4, 2007 and January 3, 2008 and the date of this Order.

Collectively the FLSA Class Members and the State Law Class Members are the "Class Members."

## II.    PROVISIONAL RULE 23 CERTIFICATION OF THE STATE LAW CLASSES

In examining potential provisional certification of the State Law Classes, the Court has considered: (1) the allegations, information, arguments, and authorities cited in the Motion and supporting papers; (2) the allegations, information, arguments, and authorities provided by the Parties in connection with the pleadings and other motions filed by each of them in this case; (3) Defendant's conditional agreement, for settlement purposes only, not to oppose provisional certification of the State Law Classes; (4) the terms of the Agreement; and (5) the elimination of the need, on account of the settlement, for the Court to consider any potential trial manageability issues that might otherwise bear on the propriety of class certification.

In connection with its provisional certification of the State Law Classes, the Court makes the following findings:

(a)    The State Law Classes are sufficiently numerous that joinder of all class members is impracticable;

(b)     There are questions of law or fact common to the members of each State Law Class, including whether the class members were properly classified as exempt from overtime requirements;

(c)     The State Law Classes representatives' claims are typical of the claims of the members of the respective State Law Class in that each State Law Class representative raises the same claims as the class members of the particular State Law Class that he or she seeks to represent;

(d)     The State Law Class representatives can fairly and adequately represent their respective State Law Classes' interests, in that (1) State Law Class representatives have retained counsel who are qualified and experienced in the issues raised in this litigation, and (2) none of the State Law Class representatives has any apparent interest antagonistic to the interests of the classes that they seek to represent.

The Court further concludes that the requirements of Federal Rule of Civil Procedure 23(b)(3) are satisfied because questions of law and fact common to the members of the State Law Classes predominate over any questions affecting only individual members and because a settlement class is superior to other available methods for the fair and efficient adjudication of this matter.

Therefore, solely for the purpose of determining whether the terms of settlement are fair, reasonable, and adequate, the Court provisionally certifies, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, the State Law Classes as defined above.  The Court authorizes that notice be mailed to potential members of the State Law Classes.

## III.    DESIGNATION OF THE FLSA CLASS AS AN FLSA COLLECTIVE ACTION

The Court finds that the members of the FLSA Class are similarly situated within the meaning of Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. §216(b), for purposes of determining whether the terms of the settlement are fair.  Accordingly, the Court conditionally certifies the FLSA Class as an FLSA collective action.  This FLSA Class shall replace the class conditionally certified by this Court on September 8, 2011.

**IV.     APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL**

Plaintiffs are hereby appointed as class representatives of the FLSA Class and the New York Class.  Sherrie Ward and Rahiem Taylor are hereby appointed as class representatives of the Connecticut Class.

Justin M. Swartz and Jennifer Liu of Outten & Golden LLP, Seth R. Lesser and Fran R. Rudich of Klafter Olsen & Lesser LLP, and Richard E. Hayber of Hayber Law Firm, LLC are hereby appointed as Class Counsel of the FLSA Class and the State Law Classes.

**V.      DISPOSITION IF SETTLEMENT DOES NOT BECOME EFFECTIVE**

If, for any reason, the Agreement does not become effective, Defendant's agreement not to oppose certification of settlement classes in this case shall be null and void in its entirety; this Order provisionally certifying the State Law Classes and conditionally certifying the FLSA Class shall be vacated; the Parties shall return to their respective positions in this lawsuit as those positions existed immediately before the Parties executed the Agreement; and nothing stated in the Agreement, the Motion, this Order, or in any attachments to the foregoing documents shall be deemed an admission of any kind by any of the Parties or used as evidence against, or over the objection of, any of the Parties for any purpose in this action or in any other action.  In particular, the FLSA Class, conditionally certified for purposes of settlement, and the State Law Classes, provisionally certified for purposes of settlement, shall be decertified.  The class that this Court conditionally certified under 29 U.S.C. § 216(b) in its September 8, 2011 Order shall be conditionally recertified, and Defendant will retain the right to contest whether this case should be maintained as a class and/or collective action and to contest the merits of all claims in the case.

## VI.     PRELIMINARY APPROVAL OF THE AGREEMENT

The Court has reviewed the terms of the Agreement, and the description of the Parties'

settlement in the Plaintiffs' Motion and supporting papers.  Based on that review, the Court

concludes that the Agreement has no obvious defects, and the Parties' settlement is within the

range of possible settlement approval.  Defendant has committed to pay up to and including

$3,000,000 to settle this matter, a commitment that provides adequate consideration for the

releases of claims in this case.  As to the proposed plan of allocation contained in the Agreement,

the Court finds that the proposed plan is rationally related to the relative strengths and

weaknesses of the respective claims asserted.  Specifically, Plaintiffs contend that they and

others similarly situated were misclassified as exempt employees, whereas Defendant contends

that Assistant General Managers, Culinary Managers, and Hospitality Managers were properly

classified as exempt.  The Parties have agreed to a settlement that compensates individuals based

on weeks worked during the relevant time periods.  This is a fair and reasonable provision, and

the parties' proposed plan of distribution is well within the range of possible approval.

Accordingly, the Court hereby grants preliminary approval of the Agreement.

## VII.    APPROVAL OF THE FORM AND MANNER OF NOTICE

The Parties have submitted for this Court's approval a proposed Notice of Proposed

Settlement of Class Action Lawsuit and Fairness Hearing for State Law Class Members (the

"State Law Class Member Notice") (Exhibit E to the Agreement), a proposed Notice of Proposed

Settlement of Class Action Lawsuit and Fairness Hearing for FLSA Class Members ("FLSA

Class Member Notice") (Exhibit G to the Agreement), an Opt-Out Statement (Exhibit F to the

Agreement), a letter from Boston Market to FLSA Class Member ("FLSA Letter") and an Opt-In

Form and Individual Release (Exhibit H to the Agreement).  The Parties propose distributing to

State Law Class Members (1) the State Law Class Member Notice, and (2) the Opt-Out

Statement.  The Parties propose distributing to FLSA Class Members (1) the FLSA Class Member Notice, (2) the FLSA Letter, and (3) the Opt-In Form and Individual Release. The Court now considers each of these documents.

The proposed State Law Class Member Notice and Opt-Out Statement appear to be the best notice practical under the circumstances and appear to allow the State Law Members a full and fair opportunity to consider the Parties' proposed settlement and develop a response. Distribution of the State Law Class Member Notice (and Opt-Out Statement) appears to be a reasonable method calculated to reach all State Law Class Members who would be bound by the settlement

The proposed FLSA Class Member Notice, FLSA Letter, and Opt-In Form and Individual Release appear to be the best notice practical under the circumstances and appear to allow the FLSA Class Members a full and fair opportunity to consider the Parties' proposed settlement and to determine whether they want to participate in the settlement.  Distribution of the FLSA Class Member Notice, FLSA Letter, and Opt-In Form and Individual Release appear to be a reasonable method calculated to reach all members of the FLSA Class.

The State Law Class Member Notice, the Out-Out Statement, the FLSA Letter, and the FLSA Class Member Notice fairly, plainly, accurately, and reasonably inform members of the FLSA Class and the State Law Class of:  (1) appropriate information about the nature of this litigation, the class, the identity of Class Counsel, and the essential terms of the Agreement and settlement; (2) appropriate information about Class Counsel's forthcoming application for attorneys' fees, the proposed service payments, and other payments that will be deducted from the settlement fund; (3) appropriate information about how to participate in the settlement; (4) appropriate information about this Court's procedures for final approval of the Agreement and

settlement; (5) appropriate information about how to object to or opt-out of the settlement, if they wish to do so; and (6) appropriate instructions as to how to obtain additional information regarding the litigation, the Agreement, and the settlement.  Similarly, the proposed Opt-In Form and Individual Release appears to allow members of the FLSA Class a full and fair opportunity to submit a claim for proceeds in connection with the settlement.  Moreover, the Opt-In Form and Individual Release fairly, accurately, and reasonably informs FLSA Class Members that failure to complete and submit an Opt-In Form, in the manner and time specified, shall constitute a waiver of any right to obtain any share of the Settlement Payment.

The Court, having reviewed the proposed State Law Class Notice, Out-Out Statement, FLSA Class Notice, FLSA Letter, and Opt-In Form and Individual Release (collectively "Notice Materials"), finds and concludes that the proposed plan for distributing the same will provide the best notice practicable.  The Court further finds and concludes that the Notice Materials satisfy the applicable notice requirements of Rule 23(e), and satisfy all other legal and due process requirements.  Accordingly, the Court hereby Orders as follows:

(a)     The form and manner of distributing the proposed Notice Materials are hereby approved.

(b)     Promptly following the entry of this Order, the Claims Administrator selected by the Parties shall prepare final versions of the Notice Materials, incorporating into the Notice Materials the relevant dates and deadlines set forth in this Order.

(c)     Within 15 calendar days after Defendant's delivery of the information referenced in Section 3.4.(A) of the Agreement (the "Initial Mailing Deadline"), the Claims Administrator shall mail the Notice Materials, using information to be provided by Defendant no later than 15 business days after the entry of this Order:

(1)     State Law Class Member Documents:  For State Law Class Members, the final version of the (1) State Law Member Notice, and (2) Opt-Out Statement; and

(2)     FLSA Class Member Documents:  For FLSA Class Members, the final version of the (1) FLSA Class Member Notice, (2) FLSA Letter, and (3) Opt-In Form and Individual Release.

(d)     The Claims Administrator shall take all reasonable steps to obtain the correct address of any State Law Class Member or FLSA Class Member for whom Notice Materials are returned by the post office as undeliverable.

(e)     Where correct addresses are obtained for any State Law Class Member or FLSA Class Member for whom Notice Materials are returned by the post office as undeliverable, the Claims Administrator shall attempt to remail the Notice Materials.  The Claims Administrator shall attempt to contact via telephone any FLSA Class Member for whom the FLSA Class Member Documents are returned by the post office as undeliverable.

(f)     The Claims Administrator shall take all other actions in furtherance of claims administration as are specified in the Agreement.

## VIII.   PROCEDURES FOR FINAL APPROVAL OF THE SETTLEMENT

### A.     Deadline To Request Exclusion From the Settlement

To be effective, a State Law Class Member's Opt-Out Statement must be signed and sent to the Claims Administrator, at the address provided in the Class Notice, via First Class United States Mail, postage prepaid, with a postmark no later than 60 calendar days after the Initial Mailing Deadline (the end of the "Opt-Out Period").  The Claims Administrator shall stamp the postmark date on the original of each Opt-Out Statement that it receives and shall serve copies of each Opt-Out Statement on Class Counsel and Defendant's Counsel, as specified in the Agreement, not later than three business days after the receipt thereof.  The Claims Administrator also shall, within ten calendar days after the end of the Opt-Out Period, send a final list of Opt-Out Statements to Class Counsel and Defendant's counsel by both e-mail and overnight delivery.  The Claims Administrator shall retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Claims Administrator is relieved of its duties and responsibilities under the terms of the Agreement.

### B.      Deadline For Filing Objections To Settlement

Any State Law Class Member who wishes to object to the fairness, reasonableness or adequacy of the Agreement or the settlement must do so in writing.  To be considered, any such objection must be sent to the Claims Administrator, at the address provided in the Class Notice, via First-Class United States mail, postage prepaid.  In addition, any such objection must be postmarked no later than 60 calendar days after the Initial Mailing Deadline, and it must be received by the Claims Administrator no later than seven calendar days after the end of the Opt-Out Period.  An objector who wishes to appear at the Fairness Hearing, either in person or through counsel hired by the objector, must state his or her intention to do so at the time the objector submits his/her written objections.  State Law Class Members who opt out of the case shall not be eligible to submit objections.

The Claims Administrator shall stamp the postmark date and the date received on the original and send copies of each objection to the Parties by e-mail and overnight delivery not later than two business days after receipt thereof.  The Claims Administrator shall also date-stamp originals of any objections.  On or before 14 calendar days before the Fairness Hearing, the Parties may file with the Court written responses to any filed objections.

### C.      Qualification for Payment & Deadline For Submitting Opt-In Forms

Plaintiffs quality for payment by virtue of their status as Plaintiffs.  State Law Class Members qualify for payment if they do not opt out.  FLSA Class Members qualify for payment if they timely and fully complete an Opt-In Form and Individual Release in accordance with the terms of the Agreement.  Completion of the Opt-In Form and Individual Release includes: (1) an acknowledgment that, by signing the Opt-In Form and Individual Release, he or she is an FLSA Class Member; (2) an acknowledgment that, by signing the Opt-In Form and Individual Release, he or she opts in to the case pursuant to 29 U.S.C. § 216(b); and (3) a release of claims consistent

with that set forth in the FLSA Class Member Notice.  To be effective, the Opt-In Form and

Individual Release must be sent to the Claims Administrator at the address provided in the Class

Notice by First Class United States Mail, postage prepaid, and must be postmarked no later than

60 calendar days after the Initial Mailing Deadline.

        **D.**      **Fairness Hearing**

No later than 45 calendar days after the end of the Opt-Out period, the Parties shall

jointly file a motion requesting that the Court grant:  (1) final Fed. R. Civ. P. 23 certification of

the State Law Classes, (2) final 29 U.S.C. § 216(b) certification to the FLSA Class, (3) final

approval of the Agreement, (4) entry of judgment, and (5) dismissal of the case with prejudice.

The hearing (the "Fairness Hearing") to determine whether to grant this motion will be

held approximately 120 days after the Court's entry of this Order.  Specifically, this Court will

hold the Fairness Hearing on [DATE], at [TIME].

        **E.**      **Deadline for Class Counsel to File a Petition For an Award of Attorneys'**
              **Fees and Reimbursement of Expenses**

Class Counsel shall file with this Court their petition for an award of attorneys' fees and

reimbursement of expenses no later than 45 calendar days after the end of the Opt-Out Period.

The Court will consider any such petition at the Fairness Hearing.

        **F.**      **Deadline For Plaintiffs To File A Petition For Approval of Service Payments**
              **To Plaintiffs**

Plaintiffs shall file with the Court any petition for an award of service payments no later

than 45 calendar days after the end of the Opt-Out Period.  The Court will consider any such

petition at the Fairness Hearing.

        **G.**      **Release of Claims**

If, at the Fairness Hearing, this Court grants Final Approval of the Agreement, each

Plaintiff, each FLSA Class Member who submits an Opt-In Form and Individual Release, and

each State Law Class Member who does not opt out will release the claims identified in the

Agreement.  This Court has reviewed the release language in the Agreement and the language

contained in the Opt-In Form and Individual Release, and finds such language to be fair,

reasonable, and enforceable.


DATED:_____                    _____

                                               Hon. Janet C. Hall
                                               United States District Judge

## EXHIBIT C

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

-------------------------------------------------------- X

BEBI ALLI, ERIK KEHOU, PATRICIA   )      **Civil Action No. 3:10-cv-00004-JCH**
FERNANDEZ, individually and on behalf of  )
all others similarly situated,              )
                                        )
              Plaintiffs,         )
                                          )
               -v.-           )
                                          )
BOSTON MARKET CORP.,          )
                                        )
            Defendant.       )
                                        )

-------------------------------------------------------- X

## CONFIDENTIAL AGREEMENT AND INDIVIDUAL RELEASE

THIS CONFIDENTIAL SETTLEMENT AGREEMENT AND INDIVIDUAL RELEASE ("Agreement") is made and entered into, by [NAME] ("Employee"), on the one hand, and by Defendant Boston Market ("Defendant" or "Boston Market"), on the other.

WHEREAS, on January 4, 2010, in a case styled *Bebi Alli v. Boston Market Corp.*, Case No 3:10-cv-00004-JCH (the "Litigation"), Bebi Alli ("Alli") sued Defendant in the United States District Court for the District of Connecticut ("Court"). Alli's putative collective action/class action complaint ("Complaint") included allegations under the Fair Labor Standards Act ("FLSA") and Connecticut Law;

WHEREAS, Plaintiff filed amended complaints on January 28, 2010, May 7, 2010, March 8, 2011, and June 27, 2011. In the January 28, 2010 amended complaint, Alli added Eric Kehou as a Named Plaintiff and added class action claims under the New York Labor Law. The March 8, 2011 amended complaint added Patricia Fernandez as a Named Plaintiff. The June 27, 2011 amended complaint added Sherrie Ward and Raheim Taylor as Named Plaintiffs (collectively, Alli, Kehou, Fernandez, Ward, and Taylor are the "Named Plaintiffs");

WHEREAS, Employee is a [Named Plaintiff] [Litigation Opt-In] in this action;

WHEREAS, Employee is represented by Justin M. Swartz and Jennifer Liu of Outten & Golden LLP, Seth R. Lesser and Fran L. Rudich of Klafter Olsen & Lesser LLP, and Richard E. Hayber of Hayber Law Firm, LLC (collectively "Class Counsel") for purposes of the Litigation;

WHEREAS, Defendant denies all of the allegations against it and denies that it is liable for damages to anyone with respect to the causes of action asserted in the Litigation;

WHEREAS, Defendant and Class Counsel, on behalf of Named Plaintiffs and the classes they seek to represent, will present to the Court a Global Settlement Agreement to resolve the claims actually asserted in Litigation and those that could have been asserted therein;

WHEREAS, Employee and Defendant now desire to settle fully and finally all allegations and claims that were asserted, or could have been asserted, in the Litigation;

NOW, THEREFORE, in consideration of the premises and mutual promises herein contained and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.      <u>Payment To Employee</u>.  Within the time period specified in Section 6 of the Global Settlement Agreement, Employee shall receive payment calculated in the manner described in Section 4.4 [and Section 4.3] of the Global Settlement Agreement.  This payment shall be subject to the tax treatment described in Section 4.7 of the Global Settlement Agreement.

2.      <u>Payment to Attorneys on Employee's Behalf; Tax Treatment</u>.  Within the time period specified in Section 6 of the Global Settlement Agreement, Class Counsel shall receive the one-time lump sum payment described in Section 4.2 of the Global Settlement Agreement. The Claims Administrator (as that term is defined in the Global Settlement Agreement), as the administrator of the QSF (as that term is defined in the Global Settlement Agreement) making such payment, shall report this payment to the Taxing Authorities as specified in Section 4.7 of the Global Settlement Agreement.

3.      <u>Dismissal of Litigation</u>.  By executing this Agreement, Employee instructs Class Counsel to take all steps necessary to obtain the dismissal with prejudice of the Litigation in accordance with the Global Settlement Agreement.

4.      <u>No Other Claims</u>.  Employee represents that, other than in connection with the Litigation, Employee has not filed any complaints, grievances, charges, lawsuits, or appeals against Defendant, any of its employees, or any other Releasees, as defined below in Paragraph 5, with any governmental agency or any court.

5.      <u>Release</u>.  As a material inducement to Defendant to enter into this Agreement, Employee forever and fully releases Defendant, its owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parent companies, divisions, subsidiaries, affiliates, benefit plans, plan fiduciaries and/or administrators, and all persons acting by, through, under or in concert with any of them, including any party that was or could have been named as a defendant in the Litigation (collectively, the "Releasees") from any and all past and present matters, claims, demands, causes of action, and appeals of any kind, whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, local, or other applicable law, which any such individual has or might have, known or unknown, related in any way to Employee's employment with Defendant, including, but not limited to, an alleged failure to pay overtime or

other compensation, and that arose during any time that such individual worked for Defendant up until the date of the entry of the order granting Final Approval ("Released Claims").  The Released Claims include without limitation claims asserted in the Litigation and any other claims based on state or federal wage and hour law governing overtime pay, exempt status, denial of meal periods and rest breaks, denial of spread of hours pay, failure to pay wages upon termination, failure to provide itemized wage statements, unfair competition, failure to make payments due had such individual been classified as nonexempt, failure to provide benefits or benefit credits, failure to keep records of hours worked or compensation due, and penalties for any of the foregoing, including without limitation claims under the Fair Labor Standards Act ("FLSA"), the New York Minimum Wage Act, New York Labor Law §§ 650 et seq., New York Wage Payment Act, New York Labor Law § 190 et seq., the New York State Department of Labor Regulations, 12 N.Y.C.R.R. part 142, the Connecticut Minimum Wage Act, Conn. Gen. Stat. §§ 31-58 et seq., and the statutes and regulations of all other states relating to the foregoing.

6.      Confidentiality.  Employee recognizes and acknowledges Defendant's interest in the confidentiality of this Agreement.  As an inducement for Defendant to enter into this Agreement, Employee agrees, other than as may be required by a subpoena or court order, that Employee shall:  (1) make no public statement regarding the terms of this Agreement or the Global Settlement Agreement; (2) make no public statement regarding the settlement of the Litigation; and (3) not mention or describe the Litigation, this Agreement, or the Global Settlement Agreement in any internet website or in any other type of media.

7.      Consultation with Counsel.  Employee represents and agrees that Employee fully understands Employee's right to discuss all aspects of this Agreement with Employee's attorneys, and that to the extent, if any, Employee so desired, Employee has availed himself/herself of this right.  Employee further represents and agrees that Employee has carefully read and fully understands all of the provisions of this Agreement and that Employee is voluntarily entering into this Agreement.

8.      Effective Date.  This Agreement shall have the same Effective Date as the Global Settlement Agreement.

9.      Ownership of Claims.  Employee hereby warrants and represents that Employee owns all claims that are the subject of this Agreement, including any and all claims arising from the Litigation, and that Employee has the sole and exclusive right to settle and compromise such claims.

10.     Governing Law.  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Connecticut.

11.     No Representations.  Employee represents and acknowledges that, in executing this Agreement, Employee has not relied upon any representation or statement not set forth herein made by Defendant or by any of Defendant's agents, representatives, or attorneys.

12.     Binding Agreement.  This Agreement shall be binding upon the parties to it, and, with respect to Employee, Employee's spouse, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

13.     Force and Effect.  Following the Effective Date, if any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful, or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

14.     Waivers, etc. to be in Writing.  No waiver, modification or amendment of the terms of this Agreement shall be valid or binding unless in writing, signed by or on behalf of all parties to the Agreement, and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

15.     Sole and Entire Agreement.  Apart from the Global Settlement Agreement, this Agreement sets forth the entire agreement regarding the subject matter hereof between the parties hereto and fully supersedes any and all prior oral or written agreements or understandings between the parties hereto pertaining to the subject matter hereof.  This Agreement may be modified only in writing.

16.     Counterparts.  The parties to this Agreement may execute the Agreement in counterparts, and execution in counterparts shall have the same force and effect as if the Parties had signed the same instrument.

17.     Facsimile and Email Signatures.  Any signature made and transmitted by facsimile for the purposes of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.


DATED:      November ___, 2011          [NAME]


                                        _____
                                        Address:
                                        [ADDRESS]



DATED:      November ___, 2011          BOSTON MARKET CORP.


                                        By:_____
                                        Its: _____

# TAXPAYER IDENTIFICATION NUMBER CERTIFICATION

## (TO BE COMPLETED BY [NAME])

---

**SUBSTITUTE IRS FORM W-9**

**ENTER YOUR SOCIAL SECURITY NUMBER:** ___ ___ ___ - ___ ___ - ___ ___ ___ ___

**CERTIFICATION**: Under penalties of perjury, I certify that:

1. The social security number shown on this form is my correct taxpayer identification number; and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. person (including U.S. resident alien).

Note: If you have been notified by the IRS that you are subject to backup withholding, you must cross out item 2 above.

**SIGNATURE:** _____   **DATE:** _____

The IRS does not require your consent to any provision of this document other than this Form W-9 certification to avoid backup withholding

---

## EXHIBIT D

**HAYBER LAW FIRM, LLC**
Richard E. Hayber (ct11629)
221 Main Street, Suite 502
Hartford, CT 06106
Telephone: (860) 522-8888

**OUTTEN & GOLDEN LLP**
Justin M. Swartz (phv03853)
Jennifer L. Liu (phv04305)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

**KLAFTER OLSEN & LESSER LLP**
Seth R. Lesser (ct27068)
Fran L. Rudich (ct09487)
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone: (914) 934-9200

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ERIC KEHOU, PATRICIA FERNANDEZ, SHERRIE WARD, AND RAHIEM TAYLOR, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>BOSTON MARKET CORP**.,**<br><br>Defendant. | CIVIL CASE NUMBER:<br><br>3:10-cv-4 (JCH)<br><br><br><br>November 21, 2011 |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS, APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND APPROVAL OF PLAINTIFFS' PROPOSED NOTICES OF SETTLEMENT

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 2

I.     Procedural History ............................................................................................. 2

II.    Overview of Investigation and Discovery ........................................................ 3

III.   Settlement Negotiations & Further Discovery.................................................. 4

SUMMARY OF THE SETTLEMENT TERMS ........................................................ 5

I.     The Settlement Fund ......................................................................................... 5

II.    Release .............................................................................................................. 6

III.   Eligible Employees ........................................................................................... 6

IV.   Notice ................................................................................................................ 7

V.    Allocation.......................................................................................................... 7

VI.   Attorneys' Fees and Litigation Costs................................................................ 8

VII.  Service Awards ................................................................................................. 8

VIII. Settlement Claims Administrator...................................................................... 9

CLASS ACTION SETTLEMENT PROCEDURE .................................................... 9

ARGUMENT ............................................................................................................. 12

I.     Preliminary Approval of the Settlement Is Appropriate ................................ 12

       A.    The Settlement Is Fair, Reasonable, and Adequate ............................. 13

             1.    Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1)........................................................................................................... 14

             2.    The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) ........... 15

             3.    Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)....................................................... 15

             4.    Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5) ......................................................................................................... 16

             5.    Establishing a Class and Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6)........................................................................17

             6.    Defendant Likely Could Not Withstand a Greater Judgment (*Grinnell* Factor 7) ..................................................................................... 17

7.      The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)..............................................................................................................................18

II.     Conditional Certification of the Rule 23 Class Is Appropriate..........................................19

    A.      Numerosity............................................................................................................21

    B.      Commonality.........................................................................................................21

    C.      Typicality..............................................................................................................22

    D.      Adequacy of the Named Plaintiffs.......................................................................23

    E.      Certification Is Proper Under Rule 23(b)(3).........................................................24

        1.      Common Questions Predominate ..............................................................24

        2.      A Class Action Is a Superior Mechanism .................................................26

III.    Plaintiffs' Counsel Should Be Appointed as Class Counsel.............................................27

IV.     The Proposed Notices Are Appropriate.............................................................................28

    A.      The Proposed State Law Notice Satisfies Due Process ........................................28

    B.      The Notice Plan and Award Distribution Process Are Appropriate......................29

    C.      The Proposed FLSA Notice Is Appropriate..........................................................29

V.      Plaintiffs Will Seek Approval of the FLSA Settlement....................................................30

CONCLUSION..............................................................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alli v. Boston Market Corp.*,
No. 10 Civ. 4, 2011 WL 3924246 (D. Conn. Sept. 7, 2011) ....................................................2

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)........................................................................................ 24, 26

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000)........................................................................14, 16, 23

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated
Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)..............................................................................13, 14

*Clark v. Ecolab, Inc.*,
Nos. 07 Civ. 8623, et al., 2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009)..............12, 22, 23, 25

*Clark v. Ecolab, Inc.*,
Nos. 07 Civ. 8623, 04 Civ. 4488 & 06 Civ. 5672, 2010 WL 1948198 (S.D.N.Y. May
11, 2010) ...................................................................................................................8

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995)........................................................................................21

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007)........................................................................................25

*County of Suffolk v. Long Island Lighting Co.*,
710 F. Supp. 1422 (E.D.N.Y. 1989), 907 F.2d 1295 (2d Cir. 1990). ....................................20

*Cruz v. Hook-Superx, LLC*,
No. 09 Civ. 7717, 2010 WL 3069558 (S.D.N.Y. Aug. 5, 2010) ............................................25

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)........................................................................................14

*Damassia v. Duane Reade, Inc.*,
250 F.R.D. 152 (S.D.N.Y. 2008) .................................................................................24, 27

*Davis v. J.P. Morgan Chase & Co.*,
No. 01 Civ. 6492, 2011 WL 4793835 (W.D.N.Y. Oct. 11, 2011)........................................17

*Dorn v. Eddington Sec., Inc.*,
No. 08 Civ. 10271, 2011 WL 382200 (S.D.N.Y. Jan. 21, 2011)............................................20

*Dziennik v. Sealift, Inc.*,
  No. 05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007)...........................................23

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) .........................................13

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005)................................................................................ passim

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982)..............................................................................................................21

*Giant Interactive Grp., Inc. Sec. Litig.*,
  No. 07 Civ. 10588, 2011 WL 5244707 (S.D.N.Y. Nov. 2, 2011) .........................................18

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3rd Cir.1995) ..................................................................................................20

*Green v. Wolf Corp.*,
  406 F.2d 291 (2d Cir. 1968)..................................................................................................26

*Hoffman-LaRoche, Inc. v. Sperling*,
  493 U.S. 165 (1989)..............................................................................................................29

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
  239 F.R.D. 363 (S.D.N.Y. 2007) ..........................................................................................25

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004)...........................................................................................12, 15

*Johnson v. Brennan*,
  No. 10 Civ. 4712, 2011 WL 1872405 (S.D.N.Y. May 17, 2011)...............................24, 27, 29

*Johnson v. Brennan*,
  No. 10 Civ. 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) .........................................18

*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
  109 F.R.D. 391 (S.D.N.Y. 1986) ..........................................................................................21

*Khait v. Whirlpool Corp.*,
  No. 06 Civ. 6381, 2009 WL 6490085 (E.D.N.Y. Oct. 1, 2009) ......................................22, 23

*Khait v. Whirlpool Corp.*,
  No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010)............................................9

*Lynn's Food Stores, Inc. v. United States*,
  679 F.2d 1350 (11th Cir. 1982) ............................................................................................13

*Marisol A. v. Giuliani*,
    126 F.3d 372, 377 (2d Cir. 1997)............................................................................22

*Marriott v. Cnty. of Montgomery*,
    227 F.R.D. 159 (N.D.N.Y. 2005)...........................................................................25

*Maywalt v. Parker & Parsley Petroleum Co.*,
    67 F.3d 1072 (2d Cir. 1998).................................................................................12

*McBean v. City of New York*,
    228 F.R.D. 487 (S.D.N.Y. 2005) ..........................................................................25

*McKenna v. Champion Intern. Corp.*,
    747 F.2d 1211 (8th Cir. 1984) .............................................................................30

*McMahon v. Olivier Cheng Catering and Events, LLC*,
    No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ...........................30

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) ...........................................................................28

*Noble v. 93 Univ. Place Corp.*,
    224 F.R.D. 330 (S.D.N.Y. 2004) ..........................................................................25

*Perkins, et al. v. Southern New England Telephone Co.*,
    No. 07 Civ. 967 (D. Conn. Oct. 21, 2011) (Hall, J.)............................................16

*Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*,
    698 F.2d 150 (2d Cir. 1983)................................................................................21

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
    237 F.R.D. 26 (E.D.N.Y. 2006) ...........................................................................21

*Reyes v. Altamarea Grp., LLC*,
    No. 10 Civ. 6451, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ...........................8

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993).................................................................................23

*Rossini v. Ogilvy & Mather, Inc.*,
    798 F.2d 590 (2d Cir. 1986).................................................................................24

*Scott v. Aetna Servs., Inc.*,
    210 F.R.D. 261 (D. Conn. 2002)..........................................................................24

*Stefaniak v. HSBC Bank USA*,
    No. 05 Civ. 720, 2008 WL 7630102, (W.D.N.Y. June 28, 2008) ...........................8

*In re Top Tankers, Inc. Sec. Litig.*,
    No. 06 Civ. 13761, 2008 WL 2944620 (S.D.N.Y. July 31, 2008) .........................................13

*Toure v. Cent. Parking Sys.*,
    No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007)..........................................23

*In re Traffic Executive Ass'n*,
    627 F.2d 631 (2d Cir. 1980)................................................................................................12

*Trinidad v. Breakaway Courier Sys., Inc.*,
    No. 05 Civ. 4116, 2007 WL 103073 (S.D.N.Y. Jan. 12, 2007)............................................23

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)..........................................................................................12, 13

*Willix v. Healthfirst, Inc.*,
    No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)..............................................9

*In re Zyprexa Prods. Liab. Litig.*,
    253 F.R.D. 69 (E.D.N.Y. 2008)..........................................................................................26

## STATUTES

Federal Rule of Civil Procedure 23 ....................................................................... passim

Federal Rule of Civil Procedure 54 ........................................................................................8

## OTHER AUTHORITIES

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002)................... passim

## INTRODUCTION

Subject to Court approval, Plaintiffs, who were Assistant General Managers, Hospitality Managers, and/or Culinary Managers ("AGMs") employed by Defendant Boston Market Corporation ("Defendant" or "Boston Market") have settled this wage and hour class and collective action for $3,000,000.  The proposed settlement resolves Plaintiffs' claims on a classwide basis and satisfies all of the criteria for preliminary settlement approval under federal law.

With this motion, Plaintiffs ask the Court to take the first step in the settlement approval process.  Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Global Settlement Agreement ("Settlement Agreement") attached as Exhibit B to the Declaration of Justin M. Swartz in Support of Plaintiffs' Motion for Preliminary Approval of Settlement ("Swartz Decl.");[1] (2) conditionally certify the settlement class under Federal Rule of Civil Procedure 23(b)(3); (3) appoint Outten & Golden LLP ("O&G"), Klafter Olsen & Lesser LLP ("KOL"), and Hayber Law Firm, LLC ("HLF") (collectively, "Plaintiffs' Counsel") as Class Counsel ("Class Counsel"); and (4) approve the proposed Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing to the New York Class Members and Connecticut Class Members ("Proposed State Law Notice"), attached as Exhibit C to the Swartz Declaration; and the proposed Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing ("Proposed FLSA Notice"); attached as Exhibit D to the Swartz Declaration (collectively, the "Proposed Notices").

---

[1]        Unless otherwise indicated, all exhibits are attached to the Swartz Declaration.

## FACTUAL AND PROCEDURAL BACKGROUND

I.      **Procedural History**

On December 7, 2009, Patricia Fernandez ("Fernandez") filed *Fernandez v. Boston Market Corp.*, No. 09 Civ. 5333 (E.D.N.Y.) ("*Fernandez*"), a class and collective action in the U.S. District Court for the Eastern District of New York on behalf of herself and others similarly situated, alleging violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").  Swartz Decl. ¶ 17.  On January 4, 2010, Bebi Alli ("Alli")[2] filed this case, a class and collective action on behalf of herself and others similarly situated, alleging violations of the FLSA and the Connecticut Minimum Wage Act ("CMWA").  *Id.*  The plaintiffs in both cases alleged that Defendant improperly classified them and other similarly situated AGMs as exempt from applicable overtime protections and unlawfully failed to pay them overtime compensation.  *Id.* ¶ 19.

On January 28, 2010, Alli filed an Amended Complaint adding Eric Kehou ("Kehou") as a named plaintiff and class NYLL claims.  *Id.* ¶ 20.  On May 7, 2010, Alli and Kehou filed a Second Amended Complaint seeking class-wide liquidated damages under the NYLL.  *Id.*

On March 11, 2010, Defendant moved to dismiss this case because of the pending first-filed *Fernandez* case.  *Id.* ¶ 21.  On April 15, 2010, Defendant withdrew its motion to dismiss.  *Id.*  On June 11, 2010, Defendant moved to transfer this case to the Eastern District of New York.  *Id.*  On November 10, 2010, the Court denied the Defendant's motion to transfer.  *Id.*  On March 8, 2011, Plaintiffs Alli and Kehou filed a Third Amended Complaint adding Fernandez as a named plaintiff in this case.  *Id.*

---

[2]     As explained below, Alli is no longer a named plaintiff because the Court dismissed her claims on September 7, 2011.  *See Alli v. Boston Market Corp.*, No. 10 Civ. 4, 2011 WL 3924246 (D. Conn. Sept. 7, 2011).

On February 28, 2011, Plaintiffs filed a Motion For Conditional Certification And Court-Authorized Notice Pursuant To Section 216(b) of the FLSA ("Motion For Conditional Certification").  *Id.* ¶ 22.

On March 9, 2011, Plaintiffs filed a motion for leave to amend their complaint.  *Id.* ¶ 23. Plaintiffs subsequently withdrew this motion and filed a renewed Motion For Leave to Amend Complaint ("Motion To Amend") for the purpose of adding Sherrie Ward ("Ward") and Rahiem Taylor ("Taylor") as named plaintiffs.  *Id.*  On June 23, 2011, the Court granted Plaintiffs' Motion To Amend.  *Id.*  On June 27, 2011, Alli, Kehou, and Fernandez filed a Fourth Amended Complaint adding Ward and Taylor as named plaintiffs.  *Id.*

On March 22, 2011, Boston Market filed a Motion To Dismiss Claims Of Plaintiff Alli ("Motion To Dismiss Alli") on the grounds that she lacked standing to assert her claims because she failed to disclose them in a bankruptcy filing.  *Id.* ¶ 24.  On September 7, 2011, the Court granted Defendant's Motion To Dismiss Alli.  *Id.*  On September 8, 2011, the Court granted Plaintiffs' Motion For Conditional Certification.  *Id.* ¶ 25.

## II.    <u>Overview of Investigation and Discovery</u>

Plaintiffs' Counsel conducted a thorough investigation of the claims and defenses. Swartz Decl. ¶¶ 14-16.  Plaintiffs' Counsel focused their investigation and legal research on the underlying merits of class members' claims, the damages to which they were entitled, and the propriety of class certification.  *Id.*  Plaintiffs' Counsel conducted in-depth interviews with Plaintiffs and other AGMs to determine the hours that they worked, the wages they were paid, the nature of their daily activities, and other information relevant to their claims.  *Id.*  Plaintiffs' Counsel obtained and reviewed several thousand pages of documents from Plaintiffs, including job descriptions, pay records, schedules, time sheets, personnel documents, and corporate documents.  *Id.*

Through formal discovery, Plaintiffs obtained and reviewed over 30,000 pages of documents produced by Defendant, including a substantial email production.  *Id*. ¶ 27.  Plaintiffs produced several thousand pages of documents in response to Defendant's discovery requests.  *Id*. ¶ 26.  Plaintiffs regularly communicated with Plaintiffs' Counsel and assisted with the preparation of the complaints and discovery requests, and the factual investigation of the claims.  *Id*. ¶ 28.  Alli and Kehou were deposed for two days each, and Fernandez sat for a one day deposition.  *Id*. ¶ 29.  Alli, Kehou, and Fernandez also responded to interrogatories.  *Id.*  Ward and Taylor provided detailed declarations about their employment history and the nature of their duties as AGMs at Boston Market.  *Id*. ¶ 30.  Plaintiffs took a 30(b)(6) deposition of Robert Gerard, Director of Operations for Boston Market.  *Id*. ¶ 31.  Based on this discovery, Plaintiffs' Counsel were able to perform damage calculations and otherwise assess the claims.

III.   **Settlement Negotiations & Further Discovery**

During the summer of 2010, the parties agreed to attempt to resolve this matter through non-binding private mediation.  Swartz Decl. ¶ 32.  Defendant produced data to Plaintiffs on the number of AGMs, the total number of workweeks worked, and AGMs' average compensation in order to allow Plaintiffs to perform damage calculations.  *Id.*  In addition, subject to a confidentiality agreement between the parties, Defendant produced certain confidential financial information to Plaintiffs' Counsel.  *Id.*  On September 29, 2010, the parties attended a formal mediation session with Lynn Cohn of Northwestern University in an effort to settle the case.  *Id.* ¶ 33.  No settlement was reached, but the parties continued to discuss settlement.  *Id.*

On September 14, 2011, the parties attended a second formal mediation session with Lynn Cohn. *Id.* ¶ 34.  In advance of this session, Defendant produced additional data on the number of AGMs, the total number of workweeks worked, and AGMs' average compensation in order to allow Plaintiffs to refine their damages calculations.  *Id.*  In addition, Defendant produced additional confidential financial information, again subject to a confidentiality agreement between the parties.  *Id.*  Although the parties did not agree upon the terms of a settlement at the mediation, they continued to negotiate over the next couple of weeks.  *Id.*  On or around September 27, 2011, the parties agreed to the key terms of a settlement, which are memorialized in the Global Settlement Agreement ("Settlement Agreement").  *Id.* ¶ 35.

At all times during the settlement negotiation process, negotiations were conducted on an arm's-length basis.  *Id.* ¶ 36.

## SUMMARY OF THE SETTLEMENT TERMS

### I. The Settlement Fund

The parties agreed to resolve the lawsuit for a total settlement amount of $3,000,000 ("Fund").  Ex. B (Settlement Agreement) § 4.1; Swartz Decl. ¶ 37.  The Fund covers class members' awards, service payments for the named plaintiffs, attorneys' fees and costs, and a reserve set aside for reasonable costs of settlement administration.  *Id.*  Defendant will pay all applicable employer-side payroll taxes.  *Id.*  The "Net Settlement Amount" is the Fund minus the reserve set aside for reasonable costs of settlement administration, the amount of attorneys' fees and reimbursement for costs approved by the Court, and the amount of service payments approved by the Court.  Ex. B (Settlement Agreement) § 4.4(A)(1); Swartz Decl. ¶ 39.

II.    **Release**

The Settlement Agreement provides that the Named Plaintiffs, the current Opt-Ins and any other individuals who join the case pursuant to the settlement process, and every New York and Connecticut Class Member who does not timely opt out of the settlement will release Defendant from all wage and hour claims under the FLSA, New York law, and Connecticut law that were asserted or that could have been asserted in the Complaint.   Ex. B (Settlement Agreement) § 5.1.

III.   **Eligible Employees**

The employees eligible to participate in the settlement ("Class Members") consist of three groups.  Swartz Decl. ¶ 38.  The "New York Class" consists of all individuals who are or were employed by Boston Market as an Assistant General Manager, Culinary Manager, or Hospitality Manager within the State of New York between January 4, 2004, and the date of the order granting Preliminary Approval.  Ex. B (Settlement Agreement) § 1.8; Swartz Decl. ¶ 38(a). The "Connecticut Class" consists of all individuals who are or were employed by Boston Market as an Assistant General Manager, Culinary Manager, or Hospitality Manager within the State of Connecticut between January 4, 2008, and the date of the order granting Preliminary Approval. Ex. B (Settlement Agreement) § 1.10; Swartz Decl. ¶ 38(b).  The "FLSA Class" consists of all persons who are or were employed by Boston Market as an Assistant General Manager, Culinary Manager, or Hospitality Manager in states other than California, New York, or Connecticut between January 4, 2007, and the date of the order granting Preliminary Approval or in Connecticut between January 4, 2007, and January 3, 2008.  Ex. B (Settlement Agreement) § 1.7; Swartz Decl. ¶ 38(c).[3]

---

[3]    To minimize overlap between the New York and Connecticut Classes and the FLSA Class, the definition of the FLSA Class described above is slightly different than that

6

IV.    <u>Notice</u>

The Settlement Agreement provides that notice will be mailed to the last known address of each class member within thirty days of this Court's Order Granting Preliminary Approval. Ex. B (Settlement Agreement) §§ 3.4(A)-(C), 3.5(A)-(C).  Defendant will provide the Claims Administrator with an electronic class list from which to send the Proposed Notices.  *Id.* §§ 3.4(A), 3.5(A); Swartz Decl. ¶ 40.  The Claims Administrator will take reasonable steps to obtain the correct address of any class member whose notice is returned as undeliverable.  Ex. B (Settlement Agreement) § 3.5(D).  The Proposed Notices contain information about how New York Class Members and Connecticut Class Members can exclude themselves from or object to the settlement, and information about how members of the FLSA Class can join it.  Class members will have 60 days from the date of mailing to respond.  *Id.* §§ 3.6(B), 3.8(A).

V.    <u>Allocation</u>

All New York Class Members and Connecticut Class Members are entitled to a settlement award.  All FLSA Class Members who join the case by returning a claim form are entitled to a settlement award.  The Claims Administrator will determine the settlement awards to each Class Member using data provided by Defendant.  Ex. B (Settlement Agreement) § 6(A); Swartz Decl. ¶ 40.  A Class Member's proportionate share of the Net Settlement Amount will be determined by the Claims Administrator according to a point system, based on the number of weeks worked.  Ex. B (Settlement Agreement) § 4.4(A); Swartz Decl. ¶ 40.  Any funds allocated to but not claimed by FLSA Class Members will revert to Defendant.  Ex. B (Settlement Agreement) § 4.4(B); Swartz Decl. ¶ 41.

---

conditionally certified by this Court in its September 8, 2011 Order.  Plaintiffs respectfully request that for settlement purposes the Court substitute this class definition for the definition of the class conditionally certified on September 8, 2011.  For settlement purposes, Defendant does not oppose this request.

The individual settlement payments include sums for wages, interest and liquidated damages. The parties agree that 50% of all payments to claimants will be treated as back wages. Ex. B (Settlement Agreement) § 4.7(A); Swartz Decl. ¶ 42. The remaining fifty percent (50%) will be deemed to constitute interest and liquidated damages. *Id.* The employee portion of all payroll taxes and withholdings will be the responsibility of each class member. *Id.* Defendant will pay the employer's portion of all payroll taxes. *Id.*

## VI.   <u>Attorneys' Fees and Litigation Costs</u>

Plaintiffs' Counsel will apply for one-third of the Fund as attorneys' fees and up to an additional $60,000 for reimbursement of reasonable litigation costs and expenses.[4] Ex. B (Settlement Agreement) § 4.2. The Notice will explain Plaintiffs' Counsel's request to Class Members. The Court need not rule on fees and costs now. Plaintiffs' Counsel will file a formal motion for approval of fees and costs along with their motion for final approval of the settlement. *See* Fed. R. Civ. P. 23(h) & 54(d)(2).

## VII.   <u>Service Awards</u>

In addition to their individual awards under the allocation formula, and subject to Court approval, Kehou, Fernandez, Ward, and Taylor will seek additional payments in recognition of the services they rendered to the class ("Service Awards"). Ex. B (Settlement Agreement) § 4.3. Kehou and Fernandez will seek $15,000 each. Ward and Taylor will seek $10,000 each.[5]

---

[4]    This is a typical fee award in the Second Circuit. *See Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488 & 06 Civ. 5672, 2010 WL 1948198, at *8 (S.D.N.Y. May 11, 2010) (finding class counsel's request for one-third of the settlement fund "reasonable and 'consistent with the norms of class litigation in this circuit'") (citing *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)); *Stefaniak v. HSBC Bank USA*, No. 05 Civ. 720, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (a fee award of "33% of the Settlement Fund is typical in class action settlements in the Second Circuit").

[5]    These are typical service awards in the Second Circuit. *See, e.g.*, *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *9 (S.D.N.Y.  Aug. 16, 2011) (approving

Plaintiffs' services to the class included, but were not limited to, informing counsel of the facts initially and as the case progressed, providing counsel with relevant documents in their possession, providing declarations, and informing putative class members of the lawsuit and encouraging them to join it.  *See* Swartz Decl. ¶¶ 26-31.  Kehou and Fernandez also sat for depositions.  *Id.* ¶ 29.  The Notice will explain Plaintiffs' requests for service awards.  Plaintiffs will move for Court approval of the Service Awards simultaneously with their motion for final approval of the Settlement.

## VIII.   Settlement Claims Administrator

The parties will jointly select a Claims Administrator to administer the settlement.  Ex. B (Settlement Agreement) § 1.1.  The Claims Administrator will be responsible for mailing the settlement notice to class members, calculating each class member's individual settlement award and tax withholdings, cutting the settlement checks, and mailing them to class members.  *Id.* §§ 3.4, 4.4-4.5.

## CLASS ACTION SETTLEMENT PROCEDURE

Courts have established a defined procedure and specific criteria for settlement approval in class action settlements that include three distinct steps:

1. Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval and provisional certification of the settlement class;

2. Dissemination of mailed and/or published notice of settlement to all affected class members; and

---

service awards of $15,000 to three class representatives and $5,000 to fourth class representative in restaurant case challenging tip and minimum wage policies); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving service awards of $30,000, $15,000, and $7,500 in wage and hour action under FLSA and NYLL); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) (approving service awards of $15,000 and $10,000, respectively, in wage and hour class action).

3.      A final settlement approval hearing at which class members may be heard
regarding the settlement, and at which argument concerning the fairness,
adequacy, and reasonableness of the settlement may be presented, and the Court
may finally certify the settlement class.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*

("*Newberg*") §§ 11.22 *et seq.* (4th ed. 2002).  This process safeguards class members' procedural

due process rights and enables the Court to fulfill its role as the guardian of class interests.  With

this motion, Plaintiffs request that the Court take the first step – granting preliminary approval of

the Settlement Agreement, conditionally certifying the settlement class, appointing Plaintiffs'

Counsel as Class Counsel, and approving the Proposed Notice and authorizing the Claims

Administrator to send it.

The parties respectfully submit the following proposed schedule for final resolution of

this matter for the Court's consideration and approval:

1.      Provided that the Court has granted Preliminary Approval as of the following
dates, Defendant will transfer the total settlement funds into the Fund as follows:

(a)     $325,000 on November 30, 2011;

(b)     25% of the amount that is the Fund less $325,000 on March 15, 2012;

(c)     another 25% of the amount that is the Fund less $325,000 on November
15, 2012; and

(d)     the remaining 50% of the amount that is the Fund less $325,000, minus
any reversion to Defendants on March 15, 2013.  Ex. B (Settlement
Agreement) § 4.5(A)(1)-(4).

If the Court has not granted Preliminary Approval as of any of the above dates,
the transfer that would otherwise have been due will be due within 7 calendar
days after the Court grants Preliminary Approval.  *Id.* § 4.5(B).

2.      Within 15 calendar days following the entry of an order granting Preliminary
Approval, Defendant will provide the Claims Administrator and Class Counsel
with lists, in electronic form, of the names, last known addresses and phone
numbers, and applicable dates of employment of all FLSA Class Members, *id.* §§
3.4(A)-(B), and of the names and last known addresses of all New York Class
Members and Connecticut Class Members, *id.* § 3.5(A).

10

3.      The Claims Administrator will mail the Notices to Class Members within 15 calendar days after Defendant's delivery of Class Member information. *Id.* §§ 3.4(D), 3.5(C).

4.      Class Members will have 60 days after the date the Notices are mailed to opt out of or object to the settlement ("Opt-Out Period"). *Id.* § 3.6(B), 3.8(A).

5.      Plaintiffs will file a Motion for Judgment and Final Approval of Settlement no later than 45 calendar days after the end of the Opt-Out Period. *Id.* § 3.9.

6.      If the Court grants Plaintiffs' Motion for Final Approval, the Court will enter Judgment in accordance with the Settlement Agreement and dismiss the case with prejudice. *Id.* § 1.6.

7.      If no party seeks a rehearing, reconsideration, or appeal of the Court's Final Order and Judgment, and the governing time periods for seeking such review have expired, the effective date of the settlement will be the date on which the following have occurred:  (1) the the Court enters its Order Granting Final Approval and rules on motions for awards of service payments and attorneys' fees and costs, whichever is later; and (2) the time periods for seeking rehearing, reconsideration, appellate review and/or an extension of time for seeking appellate review have expired ("Effective Date"). *Id.* § 1.4(A)-(B)(1).

8.      If a party seeks rehearing, reconsideration, or appeal of the Court's Final Order and Judgment, the Effective Date of the settlement shall be 30 calendar days after all avenues of rehearing, reconsideration, and appellate review have been exhausted and no further rehearing, reconsideration, or appellate review is permitted, and the time for seeking such review has expired, and the judgment has not been modified, amended, or reversed in any way ("Effective Date"). *Id.* § 1.4(B)(2).

9.      Within 21 days of the Effective Date or April 5, 2012, whichever is later, the Claims Administrator shall reimburse Class Counsel for all court-approved costs and expenses, pay Class Counsel their pro rata share of the settlement fund balance as of that date, pay Plaintiffs their court-approved service awards, and distribute to class members their respective percentages of the remaining settlement balance as of such date. *Id.* § 6(B).  Within 21 days of the Effective Date or April 5, 2013, whichever is later, the Claims Administrator shall pay Class Counsel their pro rata share of the remaining settlement balance, and distribute to class members the remaining portion of their settlement payments. *Id.* § 6(C).

## ARGUMENT

## I.    Preliminary Approval of the Settlement Is Appropriate

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks and citation omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *see also Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

The approval of a proposed class action settlement is a matter of discretion for the trial court. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998). "In exercising this discretion, courts should give proper deference to the private consensual decision of the parties." *Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623, et al., 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (internal quotation marks omitted). "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . ." *Id.* (internal quotation marks omitted).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Clark*, 2009 WL 6615729, at *3 (citing *Newberg* § 11.25). To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 11.25 (noting that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall

12

within the range of possible approval," the court should permit notice of the settlement to be sent to class members) (quoting *Manual for Complex Litigation* (3d ed.) § 30.41).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *cf. Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness).

If the settlement was achieved through experienced counsels' arm's-length negotiations, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008) (same).

Preliminary approval is the first step in the settlement process. It simply allows notice to issue and for class members to object or opt out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input.

## A.     The Settlement Is Fair, Reasonable, and Adequate

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Although the Court's task on a motion for preliminary approval is merely to perform an "initial

13

evaluation," *Newberg* § 11.25 (internal quotation marks omitted), to determine whether the settlement falls within the range of possible final approval, or "the range of possible approval," *id.* at § 11.26, it is useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  495 F.2d at 463.  All of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

## 1.    Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1)

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  This case is no exception, with approximately 1,030 FLSA Class Members, approximately 475 New York Class Members, and approximately 45 Connecticut Class Members.  Swartz Decl. ¶ 38.

Although the parties have already undertaken considerable time and expense litigating this matter, *id.* ¶¶ 14-16, 26-31, further litigation without settlement would result in additional expense and delay.  Additional discovery would be required to establish liability and damages.  A complicated trial would be necessary, featuring extensive testimony by Defendant's corporate representatives and employees, Plaintiffs, class members, and possibly expert testimony.  Preparing and putting on evidence of the complex factual and legal issues at trial would consume tremendous amounts of time and resources for both sides, as well as requiring substantial judicial resources to adjudicate the dispute.  A trial of the damages issues, even on a representative basis, would be costly and would further defer closure.  Any judgment would likely be appealed, thereby extending the duration of the litigation.  The settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

### 2.      The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)

Notice of the settlement and its details has not yet issued to the class.  The Court should more fully analyze this factor after notice of the settlement issues and class members are given the opportunity to opt out or object.

### 3.      Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

Although preparing this case through trial would require many more hours of discovery work for both sides, the Parties have completed enough discovery to recommend settlement.  The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin*, 391 F.3d at 537 (internal quotation marks omitted).  "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a

15

settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (internal quotation marks omitted).

The parties' discovery here meets this standard.  Plaintiffs' Counsel conducted in-depth interviews with Plaintiffs, obtained and reviewed thousands of pages of hard copy and electronic documents, including pay and time records, job descriptions, corporate documents (including confidential financial statements), and other data that enabled them to evaluate the merits of their claims and estimate classwide damages.  Swartz Decl. ¶¶ 14-16, 26-31.  Alli, Kehou, and Fernandez were deposed by Defendant.  *Id.* ¶ 29.  Plaintiffs' Counsel also took a 30(b)(6) deposition of Robert Gerard, Boston Market Director of Operations.  *Id.* ¶ 31.  Therefore, this factor favors preliminary approval.

> **4.  Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)**

Plaintiffs' case is subject to considerable risk as to liability and damages.  Although Plaintiffs believe their case is strong, Defendant likewise believes that its case is strong, noting particularly the recent defense verdict in *Perkins, et al. v. Southern New England Telephone Co.*, No. 07 Civ. 967 (D. Conn. Oct. 21, 2011) (Hall, J.).  In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotation marks omitted).  A trial on the merits would involve significant risks to Plaintiffs because of the fact-intensive nature of proving liability under the FLSA, the NYLL, the CMWA, and the defenses available to Defendant.

To prove both liability and damages, Plaintiffs would have to overcome Defendant's defense that Plaintiffs and class members were subject to the Executive, Administrative, and/or Professional exemptions to the FLSA.  Furthermore, Plaintiffs would have to establish their

16

hours worked and overcome Defendant's arguments that the fluctuating workweek method of calculating overtime should apply.

While Plaintiffs believe that they could ultimately establish Defendant's liability, Defendant disputes this, and the matter would require significant factual development. Plaintiffs' Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome at trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. This factor therefore weighs in favor of preliminary approval.

### 5. Establishing a Class and Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6)

Although the Court has conditionally certified an FLSA collective, the risk of maintaining it through trial is present. Moreover, Defendant may have moved for decertification of the collective after the conclusion of discovery, requiring further briefing by the parties. Furthermore, the Court has not yet certified the class under Rule 23, and such a determination would likely be reached only after another round of extensive briefing. Defendant may have argued, both on a decertification motion and a Rule 23 motion, that individual questions preclude class certification, including whether the duties of the AGMs varied, whether exemptions applied, and whether the relevant policies were uniform throughout the class period. If a class was certified, Defendant would have likely sought permission to file an interlocutory appeal under Federal Rule of Civil Procedure 23(f). Risk, expense, and delay permeate such a process. Settlement eliminates this risk, expense, and delay. This factor also favors preliminary approval.

### 6. Defendant Likely Could Not Withstand a Greater Judgment (*Grinnell* Factor 7)

It is well settled that a defendant's ability to withstand a greater judgment is a *Grinnell* factor that should be assigned "relatively little weight." *Davis v. J.P. Morgan Chase & Co.*, No.

17

01 Civ. 6492, 2011 WL 4793835, at *4 (W.D.N.Y. Oct. 11, 2011).  "[A] defendant is not required to 'empty its coffers' before a settlement can be found adequate."  *Giant Interactive Grp., Inc. Sec. Litig.*, No. 07 Civ. 10588, 2011 WL 5244707, at *7 (S.D.N.Y. Nov. 2, 2011).  Where, as here, all other *Grinnell* factors weigh in favor of approval, "this factor alone does not suggest the settlement is unfair."  *Id.*

In all events, whatever weight this factor does carry, it too favors settlement.  The country is experiencing difficult economic times, and the restaurant industry as a whole is facing particularly serious economic challenges, which have led to bankruptcy filings by some companies.  In this context, the Settlement Agreement significantly reduces any risk of collection by requiring Defendant to begin paying into a Fund shortly after preliminary approval, and to continue paying into the Fund in four payments over a 15-month period.  *See* Swartz Decl. ¶ 37.  This is likely shorter than the time it would take to collect on a judgment and exhaust all appeals, assuming in the first instance that Plaintiffs prevailed at trial.  And, according to the Settlement Agreement, if Defendant fails to make any payment by the scheduled date and fails to cure, Defendant's payment of the total settlement amount accelerates and will become due 45 calendar days later.  Ex. B (Settlement Agreement) § 4.6.  Accordingly, this factor also favors preliminary approval.  *Cf. Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *11 (S.D.N.Y. Sept. 16, 2011) (factor favors approval where settlement "eliminates risk of collection").

### 7.    The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

Defendant has agreed to settle this case for a substantial amount, $3,000,000.  This settlement amount represents a good value given the attendant risks of litigation – the recovery could be greater if Plaintiffs succeeded on all claims at trial and survived an appeal, but could be nothing if Defendant prevailed.   The determination of whether a settlement amount is reasonable

18

"does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*,

228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178).  "Instead, 'there is a range of

reasonableness with respect to a settlement – a range which recognizes the uncertainties of law

and fact in any particular case and the concomitant risks and costs necessarily inherent in taking

any litigation to completion.'"  *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Here, each class member will receive a payment based upon the duration of his or her

employment during the class period and whether he or she is a member of the FLSA, New York,

or Connecticut Class.  Ex. B (Settlement Agreement) §§ 1.7-1.11, 4.4(A); Swartz Decl. ¶¶ 38,

40.  Weighing the benefits of the settlement against the risks associated with proceeding in the

litigation, the settlement amount is reasonable.

The *Grinnell* factors all weigh in favor of granting preliminary approval of the settlement.

In the event that a substantial number of objectors come forward with meritorious objections, the

Court may reevaluate its determination.  Because the settlement, on its face, is "'fair, adequate,

and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v.

Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant preliminary approval.

## II.     Conditional Certification of the Rule 23 Class Is Appropriate

For settlement purposes, Plaintiffs seek to certify the following classes under Federal

Rule of Civil Procedure 23(e):

> All individuals who are or were employed by Boston Market as a Assistant
> General Manager, Culinary Manager, or Hospitality Manager within the State of
> New York between January 4, 2004 and the date of the order granting Preliminary
> Approval (the "New York Class"); and

> All individuals who are or were employed by Boston Market as a Assistant
> General Manager, or Culinary Manager, or Hospitality Manager within the State
> of Connecticut between January 4, 2008 and the date of the order granting
> Preliminary Approval (the "Connecticut Class").

19

As discussed below, Plaintiffs contend and Defendant does not dispute for settlement purposes that these settlement classes meet all of the requirements for class certification. *See Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only"); *County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a proposed settlement of the action prior to certification of the class."), *aff'd in part, rev'd in part on other grounds*, 907 F.2d 1295 (2d Cir. 1990).

Conditional Rule 23 class certification for settlement purposes and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed settlement agreement, and setting the date and time of the final approval hearing. *See In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 790-92 (3rd Cir.1995) (discussing purposes of certification of settlement classes); *Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 WL 382200, at *1 (S.D.N.Y. Jan. 21, 2011) (noting practical purposes of provisionally certifying settlement class). Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that:

    (1)    the class is so numerous that joinder of all members is impracticable;

    (2)    there are questions of law or fact common to the class;

    (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

    (4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Rule 23(b)(3) requires the court to find that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification.  *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

A.    **Numerosity**

Plaintiffs contend, and Defendant does not dispute for settlement purposes, that Plaintiffs easily satisfy the numerosity requirement because there are approximately 475 New York Class Members and approximately 45 Connecticut Class Members.  Swartz Decl. ¶ 38.  "[N]umerosity is presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

B.    **Commonality**

Plaintiffs also contend, and Defendant does not dispute for settlement purposes, that the proposed settlement classes satisfy the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Although the claims need not be identical, they must share common questions of fact or law.  *Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983).  The proper question is whether there is a "unifying thread" among the claims to warrant class certification.  *Kamean v. Local 363, Int'l*

*Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).  Courts construe the commonality requirement liberally.  *Frank*, 228 F.R.D. at 181.

Plaintiffs contend that this case involves numerous common issues.  Plaintiffs assert that they, the New York Class Members, and the Connecticut Class Members all bring the identical claims that Defendant failed to pay them overtime in violation of the NYLL or the CMWA. Plaintiffs contend that other common issues include, but are not limited to: (a) whether Defendant misclassified Plaintiffs, New York Class Members, and Connecticut Class Members as exempt; (b) whether Defendant maintained true and accurate time records for all hours worked by Plaintiffs, New York Class Members, and Connecticut Class Members; (c) what proof of hours worked is sufficient where an employer fails in its duty to maintain time records; and (d) whether Defendant acted willfully or in reckless disregard of the NYLL.  *See Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2009 WL 6490085, at *2 (E.D.N.Y. Oct. 1, 2009) (Rule 23(a)(2) satisfied where common issues included whether plaintiffs were properly classified as exempt from overtime eligibility, whether defendants failed to pay them overtime, and whether defendants maintained accurate time records); *Clark*, 2009 WL 6615729, at *4 (commonality satisfied where common issues included "whether Defendant violated wage and hour laws by failing to pay overtime premium pay for hours [class members] worked over 40 in a workweek, and failing to keep accurate records of time worked").

## C.   Typicality

Rule 23 requires that the claims of the class representatives be typical of the claims of the class.  "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members."  *Frank*, 228 F.R.D. at 182.  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A.*, 126 F.3d

at 376 (internal quotation marks omitted).  "Minor variations in the fact patterns underlying

individual claims" do not defeat typicality when the defendants direct "the same unlawful

conduct" at the named plaintiff and the class.  *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir.

1993).  Courts evaluate typicality "with reference to the company's actions, not with respect to

particularized defenses it might have against certain class members."  *Trinidad v. Breakaway

Courier Sys., Inc.*, No. 05 Civ. 4116, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007) (internal

quotation marks omitted).

Plaintiffs contend, and Defendant does not dispute for settlement purposes, that

Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the

New York and Connecticut Class Members' claims.  Plaintiffs contend that they and the New

York and Connecticut Class Members performed the same or similar job duties, were classified

as exempt, and were not paid overtime as a result.  Plaintiffs thus contend that because Plaintiffs'

wage and hour claims arise from the same factual and legal circumstances that form the basis of

New York and Connecticut Class Members' claims, they satisfy the typicality requirement.  *See

Khait*, 2009 WL 6490085, at *2; *Clark*, 2009 WL 6615729, at *5.

### D.    Adequacy of the Named Plaintiffs

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect

the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure

that the named representative will 'have an interest in vigorously pursuing the claims of the

class, and . . . have no interests antagonistic to the interests of other class members.'"  *Toure v.

Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007)

(quoting *Penney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir. 2006)).  "[O]nly a conflict

that goes to the very subject matter of the litigation will defeat a party's claim of representative

status."  *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29,

23

2007) (internal quotation marks omitted).  There is no evidence that Named Plaintiffs have interests that are antagonistic or at odds with Class Members.  *See Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 1872405, at *2 (S.D.N.Y. May 17, 2011) (Rule 23(a)(4) met where there was no evidence that named plaintiffs' and class members' interests were at odds).

Plaintiffs contend, and Defendant does not dispute for settlement purposes, that Plaintiffs' Counsel meet the adequacy requirement of Rule 23(a)(4).  *See, e.g.*, *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) (O&G and KOL have "an established record of competent and successful prosecution of large wage and hour class actions, and the attorneys working on the case are likewise competent and experienced in the area"); *Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261, 267 (D. Conn. 2002) (finding HLF and other plaintiffs' counsel to be "experienced and competent in class action litigation, employment litigation, and wage-and-hour class litigation in particular").  Swartz Decl. ¶ 12.

### E.   Certification Is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  That a plaintiff easily meets the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied.  *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").

### 1.   Common Questions Predominate

Plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues

24

that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-8 (2d Cir. 2007) (internal quotations marks omitted). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Marriott v. Cnty. of Montgomery*, 227 F.R.D. 159, 173 (N.D.N.Y. 2005) (internal quotation marks omitted). Simply because a defense "'may arise and [] affect different class members differently does not compel a finding that individual issues predominate over common ones.'" *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 339 (S.D.N.Y. 2004) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 138 (2d Cir. 2001)). Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005). The predominance requirement is "more demanding than the Rule 23(a) commonality inquiry and is designed to determine whether 'proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Frank*, 228 F.R.D. at 183 (quoting *Amchem*, 521 U.S. at 623).

Here, Plaintiffs contend, and Defendant does not dispute for settlement purposes, that these requirements are met here. Plaintiffs assert that class members' common factual allegations and common legal theory – that Defendant violated the NYLL and CMWA by misclassifying them as exempt and failing to pay them overtime – predominate over any factual or legal variations among class members. *See Cruz v. Hook-Superx, LLC*, No. 09 Civ. 7717, 2010 WL 3069558, at *3 (S.D.N.Y. Aug. 5, 2010) ("Plaintiffs' allegation is simple and identical across all claims: Defendants have misclassified employees to escape overtime wage obligations."); *Clark*, 2009 WL 6615729, at *5 (common factual allegations and common legal theory predominated over factual and legal variations among class members in settlement of wage and hour misclassification case); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363,

25

373 (S.D.N.Y. 2007) (issue of whether employees were supposed to be paid overtime was "about the most perfect question[] for class treatment).

## 2.    A Class Action Is a Superior Mechanism

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to the superiority inquiry, including: class members' interests in individually controlling the prosecution or defense of separate actions; whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[6]

Here, Plaintiffs contend and Defendant does not dispute for settlement purposes that these requirements are met. Plaintiffs contend that they and the class members have limited financial resources with which to prosecute individual actions, and Plaintiffs are unaware of any pending individual lawsuits filed by class members arising from the same allegations. They assert that concentrating the litigation in this Court is desirable because much of the allegedly wrongful conduct occurred within its jurisdiction. They further contend that employing the class

---

[6]      Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement."). Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *In re Zyprexa Prods. Liab. Litig.*, 253 F.R.D. 69, 199 (E.D.N.Y. 2008) (internal quotation marks omitted).

device here will not only achieve economies of scale for putative class members, but will also conserve the resources of the judicial system and preserve public confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings and prevent inconsistent adjudications of similar issues and claims. *See Johnson*, 2011 WL 1872405, at *2 (class adjudication conserves judicial resources); *Damassia*, 250 F.R.D. at 161, 164. A class action is the most suitable mechanism to fairly, adequately, and efficiently resolve Plaintiffs' and Class Members' claims.

### III.  Plaintiffs' Counsel Should Be Appointed as Class Counsel

The lawyers representing Plaintiffs, O&G, HLF, and KOL should be appointed as Class Counsel. Rule 23(g), which governs the standards and framework for appointing class counsel for a certified class, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(1)(B). The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case." Fed. R. Civ. P. 23(g) advisory committee's note.

Class Counsel attorneys meet all of these criteria. As set forth in the accompanying Declaration of Justin M. Swartz, Plaintiffs' Counsel have done substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and class members' claims. Swartz Decl. ¶ 14-16, 26-31. Additionally, Plaintiffs' Counsel has substantial experience prosecuting and settling

27

employment class actions, including wage and hour class actions and the attorneys assigned to

this matter are well-versed in wage and hour and class action law and are well-qualified to

represent the interests of the class.  *Id.* ¶ 12.  Accordingly, courts have repeatedly found

Plaintiffs' Counsel to be adequate class counsel in wage and hour class actions.  *Id.*

**IV.**     <u>**The Proposed Notices Are Appropriate**</u>

    **A.**     **The Proposed State Law Notice Satisfies Due Process**

The content of the Proposed State Law Notice, which is attached to the Swartz

Declaration as Exhibit C, fully complies with due process and Federal Rule of Civil Procedure

23.  Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice practicable under the circumstances, including individual notice to
> all members who can be identified through reasonable effort. The notice must
> clearly and concisely state in plain, easily understood language:
>
> (i)     the nature of the action;
> (ii)     the definition of the class certified;
> (iii)     the class claims, issues, or defenses;
> (iv)     that a class member may enter an appearance through an attorney if the
>        member so desires;
> (v)     that the court will exclude from the class any member who requests
>        exclusion;
> (vi)     the time and manner for requesting exclusion; and
> (vii)     the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Proposed State Law Notice here satisfies each of these requirements.  Additionally, it

describes the terms of the settlement, informs the classes about the allocation of attorneys' fees,

and provides specific information regarding the date, time, and place of the final approval

hearing.  Accordingly, the detailed information in the Proposed State Law Notice is more than

adequate to put class members on notice of the proposed settlement and is well within the

requirements of Rule 23(c)(2)(B).  Courts have approved class notices even when they provided

only general information about a settlement. *See In re Michael Milken & Assocs. Sec. Litig.*, 150

F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"); *see also Johnson*, 2011 WL 1872405, at *3.  The Proposed State Law Notice far exceeds this bare minimum and fully complies with the requirements of Rule 23(c)(2)(B).

**B.     The Notice Plan and Award Distribution Process Are Appropriate**

The Settlement Agreement provides that notice will be mailed to the last known address of each class member within thirty days of this Court's Order Granting Preliminary Approval. Ex. B (Settlement Agreement) § 3.5(A)-(C).  Defendant will provide the Claims Administrator with an electronic class list from which to send the Notice.  *Id.* § 3.5(A).  The Claims Administrator will take reasonable steps to obtain the correct address of any class member whose notice is returned as undeliverable.  *Id.* § 3.5(D).  The Proposed State Law Notice contains information about how to exclude oneself or object to the settlement.  Class members will have 60 days from the date of mailing to submit opt-out requests or object to the settlement.  *Id.* § 3.6(B), 3.8(A).  Within 21 days of the Effective Date or April 5, 2012, whichever is later, the Claims Administrator shall reimburse Class Counsel for all court-approved costs and expenses, pay Class Counsel their pro rata share of the settlement fund balance, pay Plaintiffs their court-approved service awards, and distribute to class members their respective percentages of the remaining settlement fund balance as of such date.  *Id.* § 6(B).  Within 21 days of the Effective Date or April 5, 2013, whichever is later, the Claims Administrator shall pay Class Counsel their pro rata share of the remaining settlement funds, and distribute to class members the remaining portion of their settlement payments.  *Id.* § 6(C).

**C.     The Proposed FLSA Notice Is Appropriate**

The content of the Proposed FLSA Notice, which is attached to the Swartz Declaration as Exhibit D, is also appropriate.  Notice to potential FLSA opt-ins should be "timely, accurate, and informative."  *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 172 (1989).  The Proposed

FLSA Notice will be sent to FLSA Class Members within 30 days of preliminary approval.  Ex.

B (Settlement Agreement) §§ 3.4(A), (D).  The Proposed FLSA Notice also accurately provides

information about the nature of the case; the definition of the class; the claims, issues, and

defenses; the terms of the settlement; the allocation of attorneys' fees; and the date, time, and

place of the final approval hearing.  Defendant will also provide the Claims Administrator with

last known phone numbers of all FLSA Class Members, to facilitate obtaining current addresses

for any notices returned as undeliverable.  *Id.* § 3.4(A).  Additionally, Defendant will issue a

letter to FLSA Class Members alerting them to the settlement and urging them to consider it.  *Id.*

§ 3.4(C).

## V.      Plaintiffs Will Seek Approval of the FLSA Settlement

Plaintiffs will seek approval of the settlement of the FLSA claims when they file their

motion for final settlement approval.  Because under the FLSA, "parties may elect to opt in but a

failure to do so does not prevent them from bringing their own suits at a later date," FLSA

collective actions do not implicate the same due process concerns as Rule 23 actions.  *McKenna*

*v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984); *see also McMahon v. Olivier*

*Cheng Catering and Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3,

2010) ("The standard for approval of a FLSA settlement is lower than for a Rule 23 settlement

because a FLSA settlement does not implicate the same due process concerns as does a Rule 23

settlement.")  Accordingly, the high standard for approval of a class action settlement under Rule

23 does not apply to a FLSA settlement.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court: (1) preliminarily approve the Settlement Agreement; (2) conditionally certify the settlement class; (3) appoint Plaintiffs' Counsel as class counsel; and (4) approve the Proposed Notices and authorize their distribution.

Dated:          November 21, 2011
                New York, New York

                            Respectfully submitted,

                            **OUTTEN & GOLDEN LLP**

                             /s/ Justin M. Swartz
                            Justin M. Swartz (phv03853)
                            Jennifer L. Liu (phv04305)
                            **OUTTEN & GOLDEN LLP**
                            3 Park Avenue, 29th Floor
                            New York, New York 10016
                            (212) 245-1000

                            Seth R. Lesser (ct27068)
                            Fran L. Rudich (ct09487)
                            **KLAFTER OLSEN & LESSER LLP**
                            Two International Drive, Suite 350
                            Rye Brook, New York 10573
                            (914) 934-9200

                            Richard E. Hayber (ct11629)
                            **HAYBER LAW FIRM, LLC**
                            221 Main Street, Suite 502
                            Hartford, CT 06106
                            (860) 522-8888

                            ***Attorneys for Plaintiffs and the Putative Class***

<u>**EXHIBIT E**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

-------------------------------------------------------- X

| | |
|---|---|
| BEBI ALLI, ERIK KEHOU, PATRICIA )<br>FERNANDEZ, individually and on behalf of )<br>all others similarly situated, )<br>                      )<br>         Plaintiffs, )<br>               )<br>          -v.- )<br>               )<br>BOSTON MARKET CORP., )<br>               )<br>        Defendant. )<br>               ) | **Civil Action No. 3:10-cv-00004-JCH** |

-------------------------------------------------------- X

**NOTICE OF PROPOSED SETTLEMENT OF CLASS**
**ACTION LAWSUIT AND FAIRNESS HEARING**

TO:    CERTAIN PERSONS WHO HAVE WORKED FOR BOSTON MARKET IN NEW
YORK AND/OR CONNECTICUT AS ASSISTANT GENERAL MANAGERS,
HOSPITALITY MANAGERS, OR CULINARY MANAGERS

Based on information in the records of Boston Market, you may be a Class Member who
is entitled to participate in the settlement of the case captioned *Alli v. Boston Market Corp.* (the
"Lawsuit"). **Please read this Notice carefully.** It contains important information about your
rights concerning the class action settlement described below.

As described more fully below in Section 6.D of this Notice, if you choose to participate
in the settlement, you will receive a monetary distribution. **You do not need to take any action
if you wish to participate in the settlement.**

However, if you do not want to participate in the settlement, and you do not want to be
bound by the Release described in Section 6.B, you must exclude yourself by mailing the
enclosed Opt-Out Statement to the Claims Administrator. To be effective, this Opt-Out
Statement must be postmarked by no later than [DATE]. This process is described more fully
below in Section 9.

## IMPORTANT DEADLINES

- Deadline for the Opt-Out Statement:  must be postmarked by [DATE]

- Deadline for objecting to the settlement:  must be postmarked by [DATE] and received by the Claims Administrator by [DATE]

For assistance in completing the Opt-Out Statement, please contact the Claims Administrator at:

[CONTACT INFORMATION]

This Notice explains the nature of the Lawsuit and the terms of the settlement and informs you of your rights and obligations.  It contains information about the following topics:

1. **What Is This Lawsuit About?**

2. **What Is A Class Action?**

3. **What Is The Purpose Of This Notice?**

4. **Who Is Included In The Lawsuit?**

5. **Who Is Class Counsel?**

6. **What Are The Benefits And Terms Of The Proposed Settlement?**

7. **When Is The Fairness Hearing To Determine Whether The Settlement Will Be Approved?**

8. **How Can You Object To The Proposed Settlement?**

9. **How Can You Opt Out Of The Settlement?**

10. **How Can You Examine Court Records?**

11. **What If You Have Questions?**

THIS NOTICE IS NOT AN EXPRESSION OF ANY OPINION BY THE COURT AS TO THE MERITS OF ANY OF THE CLAIMS OR DEFENSES ASSERTED BY THE PARTIES.

**1.    What Is This Lawsuit About?**

Plaintiffs, who were employed by Boston Market as Assistant General Managers, Hospitality Managers, or Culinary Managers, brought this lawsuit.  Plaintiffs claim that they were improperly classified as exempt from overtime requirements, and as a result, were not properly paid for all time worked.  Plaintiffs, for themselves and for others whom they claim are similarly situated, sought to recover unpaid wages, including allegedly unpaid overtime compensation.  Plaintiffs also sought recovery of statutory damages, interest, attorneys' fees and

costs, and other relief.  A number of other current or former Assistant General Managers, Hospitality Managers, and Culinary Managers (the "FLSA Class Members") have opted, or may opt, to join Plaintiffs in this Litigation.

Boston Market has denied and continues to deny any wrongdoing and denies any and all liability and damages to anyone with respect to the alleged facts or causes of action asserted in the Lawsuit.  To avoid the burden, expense, inconvenience and uncertainty of continued litigation, Defendant has concluded that it is in its best interest to resolve and settle the lawsuit by entering into a settlement agreement (the "Settlement").

The Lawsuit is presently before Judge Janet C. Hall, United States District Judge for the United States District Court for District of Connecticut.  Judge Hall has not made any decision on the merits of Plaintiffs' claims.  On [DATE], the Court granted provisional class action certification to Plaintiffs' claims and granted preliminary approval to the Settlement, subject to a fairness hearing that will take place on [DATE].

**2.     What Is A Class Action?**

A class action is a lawsuit in which the claims and rights of many people are decided in a single court proceeding.  One or more representative plaintiffs, also known as "Class Representatives," file a lawsuit asserting claims on behalf of the entire group, called a "Class." Members of the Class are called "Class Members."

**3.     What Is The Purpose Of This Notice?**

Judge Hall has ordered that this Notice be sent to you because you may be a Class Member.  The purpose of this Notice is to inform you of the proposed Settlement and of your rights, including:

- To inform you of your right to "opt out" of the settlement class, and thereby preserve your ability to independently bring any claim that you might have; and

- To inform you of your right to file objections to the Settlement.

**4.     Who Is Included In The Lawsuit?**

You are a Class Member if you meet the following criteria:

You were employed by Boston Market as an Assistant General Manager, a Hospitality Manager, or a Culinary Manager, in the following states:

(a)     From January 4, 2004 to [PRELIMINARY APPROVAL DATE] in New York, or

(b)     From January 4, 2008 to [PRELIMINARY APPROVAL DATE] in Connecticut.

5.      **Who Is Class Counsel?**

The Court has approved and appointed lawyers to represent all members of the Class. Class Counsel are Justin M. Swartz and Jennifer Liu of Outten & Golden LLP, Seth R. Lesser and Fran R. Rudich of Klafter Olsen & Lesser LLP, and Richard E. Hayber of Hayber Law Firm, LLC.  Class Counsel may be reached at Outten & Golden LLP, 3 Park Avenue, 29th Floor, New York, NY 10016, (212) 245-1000; Klafter Olsen & Lesser LLP, Two International Drive, Suite 350, Rye Brook, NY 10573, (914) 934-9200; or Hayber Law Firm, LLC, 221 Main Street, Hartford, CT 06106, (860) 522-8888.

6.      **What Are The Benefits And Terms Of The Proposed Settlement?**

Plaintiffs and Defendants have agreed to the Settlement summarized below.  The complete terms and conditions of the proposed Settlement are on file with the Clerk of Court at the address listed below in Section 10.  The parties' obligations under the Settlement will not become effective unless and until it receives final court approval, including the exhaustion of any appeals.

A.      *What are the benefits of the Settlement?*

Class Members who do not opt out, as described in Section 9, will be eligible to receive a specified share of a $3 million settlement fund, less certain deductions described below, based on a formula approved by the Court.

The following adjustments will be made to the $3 million amount prior to distribution of the settlement funds to the Class Members:

- Settlement Administration Fees:  A reserve will be set aside for reasonable costs associated with administering the Settlement.  The reserve will be used to pay a claims administration company for mailings, processing claims, providing information and assistance to Class Members, and preparing information reported to the Court.

- Attorneys' Fees and Costs: Class Counsel will seek, and Defendants will not oppose, an award covering fees not to exceed 33.33% of the $3 million settlement fund described above and costs not to exceed $60,000.  All fee awards, costs and expenses paid to Class Counsel will be paid from the settlement fund.  Class Counsel have expended considerable time and effort in the prosecution of this litigation on a contingent basis, and they have advanced the expenses of this litigation in the expectation that if they were successful in obtaining a recovery in the matter, they would be paid from that recovery.  In this type of litigation, it is customary for counsel to be awarded a percentage of the recovery to cover attorneys' fees, costs, and expenses.

- Service Payments:  If the Court approves such payments, certain individuals will receive payments because they provided service to the Class by helping Class Counsel to formulate claims.  Specifically, Plaintiffs will seek: $15,000 each for

Eric Kehou and Patricia Fernandez, and $10,000 each for Sherrie Ward and Rahiem Taylor.  Each of these individuals is a Named Plaintiff in this case.  The payments outlined in this paragraph are separate from and in addition to the shares of the settlement fund that these individuals may be otherwise eligible to receive.  The remaining amount in the settlement fund (the "Net Settlement Fund") will be distributed according to the method set forth below in Section 6.D.

B.      *What is the legal effect of participating in the Settlement?*

If the Court grants final approval of the Settlement, in exchange for the $3 million settlement described above, this action will be dismissed with prejudice and Class Members who do not opt out will fully release and discharge Defendant from certain claims.  When claims are "released," that means that a person covered by the release cannot sue Defendant for any of the claims that are covered by the release.

The terms of the Release in the Settlement Agreement read:

By operation of the entry of the Court Order, and except as to such rights or claims as may be created by this Agreement, Named Plaintiffs, the Opt-Ins, each individual New York Class Member who does not timely opt out pursuant to Section 3.6, and each individual Connecticut Class Member who does not timely opt out pursuant to Section 3.6 forever and fully release Defendant, its owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parent companies, divisions, subsidiaries, affiliates, benefit plans, plan fiduciaries and/or administrators, and all persons acting by, through, under or in concert with any of them, including any party that was or could have been named as a defendant in the Litigation (collectively, the "Releasees") from any and all past and present matters, claims, demands, causes of action, and appeals of any kind, whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, local, or other applicable law, which any such individual has or might have, known or unknown, of any kind whatsoever, that are based upon an alleged failure to pay overtime or other compensation, or otherwise arise out of or relate to the facts, acts, transactions, occurrences, events or omissions alleged in the Litigation, and that arose during any time that such individual worked for Defendant up until the date of the entry of the order granting Final Approval ("Released Claims").  The Released Claims include without limitation claims asserted in the Litigation and any other claims based on state or federal wage and hour law governing overtime pay, exempt status, denial of meal periods and rest breaks, denial of spread of hours pay, failure to pay wages upon termination, failure to provide itemized wage statements, unfair competition, failure to make payments due had

such individual been classified as nonexempt, failure to provide benefits or benefit credits, failure to keep records of hours worked or compensation due, and penalties for any of the foregoing, including without limitation claims under the Fair Labor Standards Act ("FLSA"), the New York Minimum Wage Act, New York Labor Law §§ 650 et seq., New York Wage Payment Act, New York Labor Law § 190 et seq., the New York State Department of Labor Regulations, 12 N.Y.C.R.R. part 142, the Connecticut Minimum Wage Act, Conn. Gen. Stat. §§ 31-58 et seq., and the statutes and regulations of all other states relating to the foregoing.

C.    *How can I participate in the Settlement?*

**If you wish to receive a distribution from the settlement fund, you do not need to take any action.**

D.    *How will my share be calculated if I participate?*

Each Class Member will receive a share of the Net Settlement Amount (that is, the settlement funds that remain after deductions are made for claims administration costs, service payments, and attorneys' fees and expenses).

Your share will be based upon the number of weeks that you were employed by Boston Market as an Assistant General Manager, Hospitality Manager, or Culinary Manager in New York and/or Connecticut during the time periods that are relevant to this case. Specifically, your share will be calculated as follows:

First, an "Individual Numerator" will be calculated for you. The Individual Numerator shall equal:

The number of weeks that you worked for Boston Market in New York in the Assistant General Manager, Hospitality Manager, or Culinary Manager positions between January 4, 2004 and [DATE], plus,

The number of weeks you worked for Boston Market in any other state (except California) in the Assistant General Manager, Hospitality Manager, or Culinary Manager positions between January 4, 2007 and [DATE].

Second, a "Total Denominator" will be calculated. The Total Denominator will equal the Individual Numerator of each Named Plaintiff, each Class Member, and each FLSA Class Member added together.

Third, your "Share Percentage" will be calculated. Your Share Percentage equals your Individual Numerator divided by the Total Denominator.

Fourth, your share of the Net Settlement Fund will be determined. Your share equals your Share Percentage times the amount of the Net Settlement Amount.

**7.     When Is The Fairness Hearing To Determine Whether The Settlement Will Be Approved?**

The Court has granted preliminary approval of the proposed Settlement, concluding preliminarily that the Settlement is fair, adequate, and reasonable and that the proposed distribution of the Settlement amount is fair, adequate, and reasonable.

A hearing will be held to determine whether final approval of the Settlement and the amount of reasonable attorneys' fees and costs and service awards should be granted.  At the hearing, the Court will hear objections, if any, and arguments concerning the fairness of the proposed Settlement and the request for reasonable attorneys' fees and costs and service awards. The hearing will take place before Judge Hall on [DATE] at [TIME], or as soon thereafter as practicable, at the Brien McMahon Federal Building, 915 Lafayette Boulevard, Bridgeport, CT 06604.  The time and date of this hearing may be continued or adjourned, so please contact Class Counsel prior to the date of the hearing if you plan to attend.

YOU ARE NOT OBLIGATED TO ATTEND THIS HEARING.  YOU MAY ATTEND THE HEARING IF YOU PLAN TO OBJECT TO THE SETTLEMENT.  YOU MAY ALSO RETAIN YOUR OWN ATTORNEY TO REPRESENT YOU IN YOUR OBJECTIONS.  IF YOU WISH TO OBJECT TO THE SETTLEMENT, YOU MUST SUBMIT A WRITTEN OBJECTION AS DESCRIBED IN THE FOLLOWING SECTION.  IF YOU WISH TO APPEAR AT THE HEARING TO DISCUSS YOUR OBJECTION YOU MUST STATE IN YOUR OBJECTION YOUR INTENTION TO APPEAR AT THE FAIRNESS HEARING.

**8.     How Can You Object To The Proposed Settlement?**

If you want to present objections at the Fairness Hearing, you must submit a written statement of the objection(s) to the Claims Administrator at the address below.  Your objection will not be heard unless it is mailed to the Claims Administrator via First Class United States Mail, postage prepaid.  To be effective any objections must be postmarked no later than [DATE] and received by the Claims Administrator no later than [DATE].  You do not need to be represented by counsel to object.  If you wish to present your objection at the fairness hearing, you must state your intention to do so in your written objection.  You may hire a lawyer to assist you with your objection or to represent you at the Fairness Hearing.

[CLAIMS ADMINISTRATOR ADDRESS]

**9.     How Can You Opt Out Of The Settlement?**

You have the right to exclude yourself, and yourself only, from this Lawsuit and Settlement.  **If you choose to exclude yourself, you will not be barred from seeking relief with respect to any legal claims and will be free to pursue an individual claim, if any, against Defendants, but you will not be eligible to receive the benefits of this Settlement.**

If you intend to exclude yourself, you must complete the enclosed Opt-Out Statement and mail it to the Claims Administrator at the address below.  The Opt-Out Statement must be mailed to the Claims Administrator via First Class United States Mail, postage prepaid, and postmarked no later than [DATE].

[CLAIMS ADMINISTRATOR ADDRESS]

**10.     How Can You Examine Court Records Or Enter An Appearance In This Case?**

The foregoing description of the case is general and does not cover all of the issues and proceedings thus far.  In order to see the complete file, including a copy of the settlement agreement, you should visit the Clerk of Court, Brien McMahon Federal Building, 915 Lafayette Boulevard, Bridgeport, CT 06604.  The Clerk will make all files relating to this lawsuit available to you for inspection and copying at your own expense.  You may enter an appearance in this case through an attorney if you so desire.

**11.     What If You Have Questions?**

If you have questions about this Notice, or want additional information, you can contact the Claims Administrator at [PHONE NUMBER].

**Dated:  _____**

**This Notice is sent to you by Order of the United States District Court for the District of Connecticut.**

**EXHIBIT F**

**OPT-OUT STATEMENT**
**Bebi Alli**

**v.**

**Boston Market Corporation**

**SUBMIT THIS FORM ONLY IF YOU DO NOT WISH TO REMAIN A CLASS MEMBER.  IF YOU SUBMIT THIS FORM, YOU WILL NOT BE ELIGIBLE TO RECEIVE ANY MONEY FROM THE SETTLEMENT.**

I wish to opt out of the Settlement of the *Alli v. Boston Market Corporation* case.  I understand that by opting out, I will be excluded from the Settlement and will receive no money from the Settlement.  I understand that in any separate lawsuit, it is possible that I may receive nothing or less than I would have received if I had filed a claim under the Settlement in this lawsuit.  I understand that any separate lawsuit by me will be undertaken at my own expense and at my own risk.  I understand that Counsel for the Class will not represent my interests if I opt out.

_____
Print Name

_____
Social Security Number

_____
Signature

**SEND TO CLAIMS ADMINISTRATOR AT
[ADDRESS]**

**MUST BE MAILED BY UNITED STATES FIRST CLASS MAIL
AND POSTMARKED NO LATER THAN [DATE]**

**WE ADVISE YOU TO KEEP A COPY FOR YOUR RECORDS—YOU MAY WISH TO MAIL RETURN RECEIPT REQUESTED**

**EXHIBIT G**

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

------------------------------------------------------- X

| | |
|---|---|
| BEBI ALLI, ERIK KEHOU, PATRICIA FERNANDEZ, individually and on behalf of all others similarly situated, | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| -v.- | ) |
| | ) |
| BOSTON MARKET CORP., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**Civil Action No. 3:10-cv-00004-JCH**

------------------------------------------------- X

## NOTICE OF PROPOSED SETTLEMENT OF CLASS
## ACTION LAWSUIT AND FAIRNESS HEARING

TO:   CERTAIN PERSONS WHO HAVE WORKED FOR BOSTON MARKET AS ASSISTANT GENERAL MANAGERS, HOSPITALITY MANAGERS, OR CULINARY MANAGERS OUTSIDE OF NEW YORK, CONNECTICUT, AND CALIFORNIA

Based on information in the records of Boston Market, you may be an FLSA Class Member who is entitled to participate in the settlement of the case captioned *Alli v. Boston Market Corp. (*the "Lawsuit"). **Please read this Notice carefully.** It contains important information about your rights concerning the class action settlement described below.

As described more fully below in Section 6.C of this Notice, to participate in the settlement and receive a monetary distribution of the fund established by the settlement, you must mail a properly completed Opt-In Form and Individual Release to the Claims Administrator, postmarked no later than [DATE]. If you fail to mail in a timely Opt-In Form and Individual Release, you will receive no monetary distribution.

If you decide to participate in the settlement, you will be bound by the release described in section 6.B. If you do not want to participate in the settlement, and you do not want to be bound by the Release described in Section 6.B, you do not need to take any action.

## IMPORTANT DEADLINE

- Deadline for the Opt-In Form and Individual Release:  must be postmarked by [DATE]

For assistance completing the enclosed Opt-In Form and Individual Release or for assistance with related matters, please contact the Claims Administrator at:

[CONTACT INFORMATION]

This Notice explains the nature of the Lawsuit and the terms of the settlement and informs you of your rights and obligations.  It contains information about the following topics:

1. **What Is This Lawsuit About?**

2. **What Is A Class Action?**

3. **What Is The Purpose Of This Notice?**

4. **Who Is Included In The Lawsuit?**

5. **Who Is Class Counsel?**

6. **What Are The Benefits And Terms Of The Proposed Settlement?**

7. **When Is The Fairness Hearing To Determine Whether The Settlement Will Be Approved?**

8. **How Can You Examine Court Records?**

9. **What If You Have Questions?**

THIS NOTICE IS NOT AN EXPRESSION OF ANY OPINION BY THE COURT AS TO THE MERITS OF ANY OF THE CLAIMS OR DEFENSES ASSERTED BY THE PARTIES.

**1.     What Is This Lawsuit About?**

Plaintiffs, who were employed by Boston Market as Assistant General Managers, Hospitality Managers, or Culinary Managers, brought this lawsuit.  Plaintiffs claim that they were improperly classified as exempt from overtime requirements, and as a result, were not properly paid for all time worked.  Plaintiffs, for themselves and for others whom they claim are similarly situated, sought to recover unpaid wages, including allegedly unpaid overtime compensation.  Plaintiffs also sought recovery of statutory damages, interest, attorneys' fees and costs, and other relief.  A number of other current or former Assistant General Managers, Hospitality Managers, and Culinary Managers (the "Class Members") may participate in this Litigation.

Boston Market has denied and continues to deny any wrongdoing and denies any and all liability and damages to anyone with respect to the alleged facts or causes of action asserted in

the Lawsuit.  To avoid the burden, expense, inconvenience and uncertainty of continued litigation, Defendant has concluded that it is in its best interests to resolve and settle the lawsuit by entering into a settlement agreement (the "Settlement").

The Lawsuit is presently before Judge Janet C. Hall, United States District Judge for the United States District Court for District of Connecticut.  Judge Hall has not made any decision on the merits of Plaintiffs' claims.  On [DATE], the Court granted provisional class action certification to Plaintiffs' claims and granted preliminary approval to the Settlement, subject to a fairness hearing that will take place on [DATE].

**2.      What Is A Class Action?**

A class action is a lawsuit in which the claims and rights of many people are decided in a single court proceeding.  One or more representative plaintiffs, also known as "Class Representatives," file a lawsuit asserting claims on behalf of the entire group, called a "Class." Members of the Class are called "Class Members."

**3.      What Is The Purpose Of This Notice?**

Judge Hall has ordered that this Notice be sent to you because you may be an FLSA Class Member.  The purpose of this Notice is to inform you of the proposed Settlement and of your rights, including:

- To inform you of your right to "opt in" to the settlement class and to receive a share of the settlement funds;

- To inform you of the steps you must take to receive a share of the settlement funds.

**4.      Who Is Included In The Lawsuit?**

You are an FLSA Class Member if you meet the following criteria:

You were employed by Boston Market as an Assistant General Manager, a Hospitality Manager, or a Culinary Manager, in any state except New York, Connecticut, or California, between January 4, 2007 until _____ or in Connecticut between January 4, 2007 and January 3, 2008.

**5.      Who Is Class Counsel?**

The Court has approved and appointed lawyers to represent all members of the Class. Class Counsel are Justin M. Swartz and Jennifer Liu of Outten & Golden LLP, Seth R. Lesser and Fran R. Rudich of Klafter Olsen & Lesser LLP, and Richard E. Hayber of Hayber Law Firm, LLC.  Class Counsel may be reached at Outten & Golden LLP, 3 Park Avenue, 29th Floor, New York, NY 10016, (212) 245-1000; Klafter Olsen & Lesser LLP, Two International Drive, Suite 350, Rye Brook, NY 10573, (914) 934-9200; or Hayber Law Firm, LLC, 221 Main Street, Hartford, CT 06106, (860) 522-8888.

**6.      What Are The Benefits And Terms Of The Proposed Settlement?**

Plaintiffs and Defendant have agreed to the Settlement summarized below.  The complete terms and conditions of the proposed Settlement are on file with the Clerk of Court at the address listed below in Section 10.  The parties' obligations under the Settlement will not become effective unless and until it receives final court approval, including the exhaustion of any appeals.

A.      *What are the benefits of the Settlement?*

FLSA Class Members who timely and properly complete and return the Opt-In Form and Individual Release, as described in Section 6.B below, will be eligible to receive a specified share of a $3 million settlement fund, less certain deductions described below, based on a formula approved by the Court.

The following adjustments will be made to the $3 million amount prior to distribution of the settlement funds to the FLSA Class Members:

- <u>Settlement Administration Fees</u>:  A reserve will be set aside for reasonable costs associated with administering the Settlement.  The reserve will be used to pay a claims administration company for mailings, processing claims, providing information and assistance to Class Members, and preparing information reported to the Court.

- <u>Attorneys' Fees and Costs</u>:  Class Counsel will seek, and Defendant will not oppose, an award covering fees not to exceed 33.33% of the $3 million settlement fund described above, and reasonable costs and out-of-pocket expenses not to exceed $60,000.  All fee awards, costs and expenses paid to Class Counsel will be paid from the settlement fund.  Class Counsel have expended considerable time and effort in the prosecution of this litigation on a contingent basis, and they have advanced the expenses of this litigation in the expectation that if they were successful in obtaining a recovery in the matter, they would be paid from that recovery.  In this type of litigation, it is customary for counsel to be awarded a percentage of the recovery to cover attorneys' fees, costs, and expenses.

- <u>Service Payments</u>:  If the Court approves such payments, certain individuals will receive payments because they provided service to the Class by helping Class Counsel to formulate claims.  Specifically, Plaintiffs will seek: $15,000 each for Eric Kehou and Patricia Fernandez, and $10,000 each for Sherrie Ward and Rahiem Taylor, the Named Plaintiffs.  The payments outlined in this paragraph are separate from and in addition to the shares of the settlement fund that these individuals may be otherwise eligible to receive.  The remaining amount in the settlement fund (the "Net Settlement Fund") will be distributed according to the method set forth below in Section 6.D.

B.      *What is the legal effect of participating in the Settlement?*

If the Court grants final approval of the Settlement, in exchange for the establishment of the $3 million settlement fund described above, this action will be dismissed with prejudice and FLSA Class Members who opt in will fully release and discharge Defendant from certain claims. When claims are "released," that means that a person covered by the release cannot sue Defendant for any of the claims that are covered by the release.

The terms of the Release in the Opt-In Form read:

By signing below, I hereby forever and fully release the I forever and fully release Defendant, its owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parent companies, divisions, subsidiaries, affiliates, benefit plans, plan fiduciaries and/or administrators, and all persons acting by, through, under or in concert with any of them, including any party that was or could have been named as a defendant in the Litigation (collectively, the "Releasees") from any and all past and present matters, claims, demands, causes of action, and appeals of any kind, whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, local, or other applicable law, which any such individual has or might have, known or unknown, of any kind whatsoever, that are based upon an alleged failure to pay overtime or other compensation, or otherwise arise out of or relate to the facts, acts, transactions, occurrences, events or omissions alleged in the Litigation, and that arose during any time that such individual worked for Defendant up until the date of the entry of the order granting Final Approval ("Released Claims").  The Released Claims include without limitation claims asserted in the Litigation and any other claims based on state or federal wage and hour law governing overtime pay, exempt status, denial of meal periods and rest breaks, denial of spread of hours pay, failure to pay wages upon termination, failure to provide itemized wage statements, unfair competition, failure to make payments due had such individual been classified as nonexempt, failure to provide benefits or benefit credits, failure to keep records of hours worked or compensation due, and penalties for any of the foregoing, including without limitation claims under the Fair Labor Standards Act ("FLSA"), and the statutes and regulations of all other states relating to the foregoing.

C.      *How can I participate in the Settlement?*

If you wish to receive a distribution from the settlement fund, you must timely complete and mail the enclosed Opt-In Form and Individual Release according to instructions provided on the form, including:  (1) an acknowledgment that, by signing the Opt-In Form and Individual Release, you are an FLSA Class Member; (2) an acknowledgement that, by signing the Opt-In Form and Individual Release, you are opting in to the case pursuant to 29 U.S.C.  § 216(b); and (3) a release of claims consistent with that set forth in Section 6.B of this Notice.

The Opt-In Form and Individual Release must be properly completed, signed, and mailed to the Claims Administrator via First Class United States Mail, at the address below.  Your Opt-In Form and Individual Release must be postmarked on or before [DATE].  If you do not properly complete and timely submit the Opt-In Form and Individual Release, you will not be

eligible to receive any monetary distribution.  Class Counsel recommend that you send your Opt-In Form and Individual Release in the enclosed postage-prepaid envelope.

[CLAIMS ADMINISTRATOR ADDRESS]

    D.    *How will my share be calculated if I participate?*

Each FLSA Class Member who submits a timely and properly completed Opt-In Form and Individual Release will receive a share of the Net Settlement Fund (that is, the settlement funds that remain after deductions are made for claims administration costs, service payments, and attorneys' fees and expenses).

Your share will be based upon the number of weeks that you were employed by Boston Market as an Assistant General Manager, Hospitality Manager, or Culinary Manager in states other than New York, Connecticut, or California during the time periods that are relevant to this case.  Specifically, your share will be calculated as follows:

<u>First</u>, an "Individual Numerator" will be calculated for you.  The Individual Numerator shall equal:

The number of weeks that you worked for Boston Market in New York in the Assistant General Manager, Hospitality Manager, or Culinary Manager positions between January 4, 2004 and [DATE], plus,

The number of weeks you worked for Boston Market in any other state (except California) in the Assistant General Manager, Hospitality Manager, or Culinary Manager positions between January 4, 2007 and [DATE].

<u>Second</u>, a "Total Denominator" will be calculated.  The Total Denominator will equal the Individual Numerator of each Named Plaintiff, each FLSA Class Member, and each Class Member added together.

<u>Third</u>, your "Share Percentage" will be calculated.  Your Share Percentage equals your Individual Numerator divided by the Total Denominator.

<u>Fourth</u>, your share of the Net Settlement Fund will be determined.  Your share equals your Share Percentage times the amount of the Net Settlement Fund.

Specifically, your estimated share of the Net Settlement Fund is [$_____]

Amounts that are not claimed by FLSA Class Members (and that are not necessary to cover expenses and fees associated with the Settlement) will revert to Boston Market.  The amount of your share of the Net Settlement Fund will not be affected by the number of Class Members who claim a share.

6

**7.    When Is The Fairness Hearing To Determine Whether The Settlement Will Be Approved?**

The Court has granted preliminary approval of the proposed Settlement, concluding preliminarily that the Settlement is fair, adequate, and reasonable and that the proposed distribution of the Settlement amount is fair, adequate, and reasonable.

A hearing will be held to determine whether final approval of the Settlement and the amount of reasonable attorneys' fees and costs and service awards should be granted. At the hearing, the Court will hear objections, if any, and arguments concerning the fairness of the proposed Settlement and the request for reasonable attorneys' fees and costs and service awards. The hearing will take place before Judge Hall on [DATE] at [TIME], or as soon thereafter as practicable, at the Brien McMahon Federal Building, 915 Lafayette Boulevard, Bridgeport, CT 06604. The time and date of this hearing may be continued or adjourned, so please contact Class Counsel prior to the date of the hearing if you plan to attend.

YOU ARE NOT OBLIGATED TO ATTEND THIS HEARING. YOU MAY ATTEND THE HEARING IF YOU PLAN TO OBJECT TO THE SETTLEMENT. YOU MAY ALSO RETAIN YOUR OWN ATTORNEY TO REPRESENT YOU IN YOUR OBJECTIONS. IF YOU WISH TO OBJECT TO THE SETTLEMENT, YOU MUST SUBMIT A WRITTEN OBJECTION AS DESCRIBED IN THE FOLLOWING SECTION. IF YOU WISH TO APPEAR AT THE HEARING TO DISCUSS YOUR OBJECTION YOU MUST STATE IN YOUR OBJECTION YOUR INTENTION TO APPEAR AT THE FAIRNESS HEARING.

**8.    How Can You Examine Court Records Or Enter An Appearance In This Case?**

The foregoing description of the case is general and does not cover all of the issues and proceedings thus far. In order to see the complete file, including a copy of the settlement agreement, you should visit the Clerk of Court, Brien McMahon Federal Building, 915 Lafayette Boulevard, Bridgeport, CT 06604. The Clerk will make all files relating to this lawsuit available to you for inspection and copying at your own expense. You may enter an appearance in this case through an attorney if you so desire.

**9.    What If You Have Questions?**

If you have questions about this Notice, or want additional information, you can contact the Claims Administrator at [PHONE NUMBER].

**Dated:**

**This Notice is sent to you by Order of the United States District Court for the District of Connecticut.**

<u>**EXHIBIT H**</u>

<u>**Alli v. Boston Market Corporation**</u>

Claims Administrator
[NAME]
[ADDRESS]
[ADDRESS]
[PHONE NUMBER]

# <u>OPT-IN FORM AND INDIVIDUAL RELEASE INSTRUCTIONS</u>

_____

If you are an FLSA Class Member who wishes to opt-in to the Settlement, and if you properly complete the Claim Form and Individual Release and timely mail it to this Claims Administrator according to these instructions, you will be eligible for a distribution from the Settlement.  For more information on the Settlement, how your share of the settlement funds will be calculated, and your rights, please see the accompanying NOTICE.

**In order to receive any portion of the settlement funds you MUST complete, sign, date, and mail this Opt-In Form and Individual Release to the Claims Administrator at the address below.  To be effective this Opt-In Form and Individual Release must be mailed via First Class United States Mail and postmarked no later than** [DATE]**.  If the Opt-In Form and Individual Release is not postmarked by** [DATE]**, you will NOT be eligible to receive any portion of the settlement funds.  You may return the Opt-In Form and Individual Release in the addressed, pre-paid envelope that has been enclosed.  You may also use your own envelope, but, in all cases, the Opt-In Form and Individual Release must be mailed via First Class United States Mail to:**

**[ADDRESS]**

**BE SURE TO MAKE A COPY OF THE SIGNED CLAIM FORM AND INDIVIDUAL RELEASE FOR YOUR RECORDS.**

**By signing, dating, and mailing the Opt-In Form and Individual Release, you are agreeing to the Release of Claims set forth below.  (For Further Information, see NOTICE.)**

**By signing, dating, and mailing the Opt-In Form and Individual Release, you also consent to become a party plaintiff to this action under the federal Fair Labor Standards Act, 29 U.S.C. § 216(b).  (For Further Information, see NOTICE.)**

## CHANGE OF ADDRESS

**It is your responsibility to keep a current address on file with the Claims Administrator.  Please make sure to notify the Claims Administrator of any change of address.**

**Alli v. Boston Market Corporation**
Claims Administrator
[Name]
[Address]
[Phone Number]

## OPT-IN FORM AND INDIVIDUAL RELEASE

**THIS FORM MUST BE POSTMARKED
NO LATER THAN [DATE]**

[To be pre-inserted by Claims Administrator:]    [To be provided by employee:]
Name/Address Changes, if any:

Claim Number:_____    _____
Name:_____    _____
Address:_____    _____
City, State, Zip Code:_____    ( ) _____
                                         Area Code      Home Telephone Number

### TAXPAYER IDENTIFICATION NUMBER CERTIFICATION

<table>
<tr><td>

**SUBSTITUTE IRS FORM W-9**

**ENTER YOUR SOCIAL SECURITY NUMBER:** ___ ___ ___ - ___ ___ - ___ ___ ___ ___

**CERTIFICATION**: Under penalties of perjury, I certify that:

1.  The social security number shown on this form is my correct taxpayer identification number; and

2.  I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3.  I am a U.S. person (including U.S. resident alien).

Note: If you have been notified by the IRS that you are subject to backup withholding, you must cross out item 2 above.

**SIGNATURE:** _____    **DATE:** _____

**The IRS does not require your consent to any provision of this document other than this Form W-9 certification to avoid backup withholding**

</td></tr>
</table>

By signing below, I hereby forever and fully release the I forever and fully release Defendant, its owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parent companies, divisions, subsidiaries, affiliates, benefit plans, plan fiduciaries and/or administrators, and all persons acting by, through, under or in concert with any of them, including any party that was or could have been named as a defendant in the Litigation (collectively, the "Releasees") from any and all past and present

matters, claims, demands, causes of action, and appeals of any kind, whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, local, or other applicable law, which any such individual has or might have, known or unknown, of any kind whatsoever, that are based upon an alleged failure to pay overtime or other compensation, or otherwise arise out of or relate to the facts, acts, transactions, occurrences, events or omissions alleged in the Litigation, and that arose during any time that such individual worked for Defendant up until the date of the entry of the order granting Final Approval ("Released Claims").  The Released Claims include without limitation claims asserted in the Litigation and any other claims based on state or federal wage and hour law governing overtime pay, exempt status, denial of meal periods and rest breaks, denial of spread of hours pay, failure to pay wages upon termination, failure to provide itemized wage statements, unfair competition, failure to make payments due had such individual been classified as nonexempt, failure to provide benefits or benefit credits, failure to keep records of hours worked or compensation due, and penalties for any of the foregoing, including without limitation claims under the Fair Labor Standards Act ("FLSA"), and the statutes and regulations of all other states relating to the foregoing.

I declare under penalty of perjury that the above information is correct.


_____          _____
Date                                          Signature

To be valid, this Opt-In Form and Individual Release must be properly completed, signed, dated, and mailed to the Claims Administrator at the following address via First Class United States Mail and postmarked by [INSERT DATE]:

[INSERT ADDRESS]

## YOU MUST COMPLETE [BOTH] PAGES OF THE OPT-IN FORM AND INDIVIDUAL RELEASE

## EXHIBIT I

### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

-------------------------------------------------------- X

|  |  |
|---|---|
| BEBI ALLI, ERIK KEHOU, PATRICIA FERNANDEZ, individually and on behalf of all others similarly situated, | Civil Action No. 3:10-cv-00004-JCH |

BEBI ALLI, ERIK KEHOU, PATRICIA ) 
FERNANDEZ, individually and on behalf of ) 
all others similarly situated, )
)
          Plaintiffs, )
)
          -v.- )
)
BOSTON MARKET CORP., )
)
          Defendant. )
)

-------------------------------------------------------- X

### CONFIDENTIAL AGREEMENT AND INDIVIDUAL RELEASE

THIS CONFIDENTIAL SETTLEMENT AGREEMENT AND INDIVIDUAL RELEASE ("Agreement") is made and entered into, by [NAME] ("Employee"), on the one hand, and by Defendant Boston Market ("Defendant" or "Boston Market"), on the other.

WHEREAS, on January 4, 2010, in a case styled *Bebi Alli v. Boston Market Corp.*, Case No 3:10-cv-00004-JCH (the "Litigation"), Bebi Alli ("Alli") sued Defendant in the United States District Court for the District of Connecticut ("Court"). Alli's putative collective action/class action complaint ("Complaint") included allegations under the Fair Labor Standards Act ("FLSA") and Connecticut Law;

WHEREAS, Plaintiff filed amended complaints on January 28, 2010, May 7, 2010, March 8, 2011, and June 27, 2011. In the January 28, 2010 amended complaint, Alli added Eric Kehou as a Named Plaintiff and added class action claims under the New York Labor Law. The March 8, 2011 amended complaint added Patricia Fernandez as a Named Plaintiff. The June 27, 2011 amended complaint added Sherrie Ward and Raheim Taylor as Named Plaintiffs (collectively, Alli, Kehou, Fernandez, Ward, and Taylor are the "Named Plaintiffs");

WHEREAS, Employee is a Litigation Opt-In in this action;

WHEREAS, Employee is represented by Justin M. Swartz and Jennifer Liu of Outten & Golden LLP, Seth R. Lesser and Fran L. Rudich of Klafter Olsen & Lesser LLP, and Richard E. Hayber of Hayber Law Firm, LLC (collectively "Class Counsel") for purposes of the Litigation;

WHEREAS, Defendant denies all of the allegations against it and denies that it is liable for damages to anyone with respect to the causes of action asserted in the Litigation;

WHEREAS, Defendant and Class Counsel, on behalf of Named Plaintiffs and the classes they seek to represent, will present to the Court a Global Settlement Agreement to resolve the claims actually asserted in Litigation and those that could have been asserted therein;

WHEREAS, Employee and Defendant now desire to settle fully and finally all allegations and claims that were asserted, or could have been asserted, in the Litigation;

NOW, THEREFORE, in consideration of the premises and mutual promises herein contained and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.  <u>Payment To Employee</u>.  Within the time period specified in Section 6 of the Global Settlement Agreement, Employee shall receive payment calculated in the manner described in Section 4.4 of the Global Settlement Agreement.  This payment shall be subject to the tax treatment described in Section 4.7 of the Global Settlement Agreement.

2.  <u>Payment to Attorneys on Employee's Behalf; Tax Treatment</u>.  Within the time period specified in Section 6 of the Global Settlement Agreement, Class Counsel shall receive the one-time lump sum payment described in Section 4.2 of the Global Settlement Agreement. The Claims Administrator (as that term is defined in the Global Settlement Agreement), as the administrator of the QSF (as that term is defined in the Global Settlement Agreement) making such payment, shall report this payment to the Taxing Authorities as specified in Section 4.7 of the Global Settlement Agreement.

3.  <u>Dismissal of Litigation</u>.  By executing this Agreement, Employee instructs Class Counsel to take all steps necessary to obtain the dismissal with prejudice of the Litigation in accordance with the Global Settlement Agreement.

4.  <u>No Other Claims</u>.  Employee represents that, other than in connection with the Litigation, Employee has not filed any complaints, grievances, charges, lawsuits, or appeals against Defendant, any of its employees, or any other Releasees, as defined below in Paragraph 5, with any governmental agency or any court.

5.  <u>Release</u>.  As a material inducement to Defendant to enter into this Agreement, Employee hereby forever and fully releases Defendant, its owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parent companies, divisions, subsidiaries, affiliates, benefit plans, plan fiduciaries and/or administrators, and all persons acting by, through, under or in concert with any of them, including any party that was or could have been named as a defendant in the Litigation (collectively, the "Releasees") from any and all past and present matters, claims, demands, causes of action, and appeals of any kind, whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, local, or other applicable law, which Employee has or might have, known or unknown, of any kind whatsoever, that are based upon an alleged failure to pay overtime or other compensation, or otherwise arise out of or relate to the facts, acts, transactions, occurrences, events or omissions alleged in the Litigation, and that arose

during any time Employee worked for Defendant up until the date of the entry of the order granting Final Approval ("Released Claims"). The Released Claims include without limitation claims asserted in the Litigation and any other claims based on state or federal wage and hour law governing overtime pay, exempt status, denial of meal periods and rest breaks, denial of spread of hours pay, failure to pay wages upon termination, failure to provide itemized wage statements, unfair competition, failure to make payments due had Employee been classified as nonexempt, failure to provide benefits or benefit credits, failure to keep records of hours worked or compensation due, and penalties for any of the foregoing, including without limitation claims under the Fair Labor Standards Act ("FLSA"), the New York Minimum Wage Act, New York Labor Law §§ 650 et seq., New York Wage Payment Act, New York Labor Law § 190 et seq., the New York State Department of Labor Regulations, 12 N.Y.C.R.R. part 142, the Connecticut Minimum Wage Act, Conn. Gen. Stat. §§ 31-58 et seq., and the statutes and regulations of all other states relating to the foregoing, and the statutes and regulations of all other states relating to the foregoing.

6.     <u>Confidentiality</u>. Employee recognizes and acknowledges Defendant's interest in the confidentiality of this Agreement. As an inducement for Defendant to enter into this Agreement, Employee agrees, other than as may be required by a subpoena or court order, that Employee shall: (1) make no public statement regarding the terms of this Agreement or the Global Settlement Agreement; (2) make no public statement regarding the settlement of the Litigation; and (3) not mention or describe the Litigation, this Agreement, or the Global Settlement Agreement in any internet website or in any other type of media.

7.     <u>Consultation with Counsel</u>. Employee represents and agrees that Employee fully understands Employee's right to discuss all aspects of this Agreement with Employee's attorneys, and that to the extent, if any, Employee so desired, Employee has availed himself/herself of this right. Employee further represents and agrees that Employee has carefully read and fully understands all of the provisions of this Agreement and that Employee is voluntarily entering into this Agreement.

8.     <u>Effective Date.</u> This Agreement shall have the same Effective Date as the Global Settlement Agreement.

9.     <u>Ownership of Claims</u>. Employee hereby warrants and represents that Employee owns all claims that are the subject of this Agreement, including any and all claims arising from the Litigation, and that Employee has the sole and exclusive right to settle and compromise such claims.

10.    <u>Governing Law</u>. This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Connecticut.

11.    <u>No Representations</u>. Employee represents and acknowledges that, in executing this Agreement, Employee has not relied upon any representation or statement not set forth herein made by Defendant or by any of Defendant's agents, representatives, or attorneys.

12.     <u>Binding Agreement</u>.  This Agreement shall be binding upon the parties to it, and, with respect to Employee, Employee's spouse, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

13.     <u>Force and Effect</u>.  Following the Effective Date, if any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful, or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

14.     <u>Waivers, etc. to be in Writing.</u>  No waiver, modification or amendment of the terms of this Agreement shall be valid or binding unless in writing, signed by or on behalf of all parties to the Agreement, and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

15.     <u>Sole and Entire Agreement</u>.  Apart from the Global Settlement Agreement, this Agreement sets forth the entire agreement regarding the subject matter hereof between the parties hereto and fully supersedes any and all prior oral or written agreements or understandings between the parties hereto pertaining to the subject matter hereof.  This Agreement may be modified only in writing.

16.     <u>Counterparts</u>.  The parties to this Agreement may execute the Agreement in counterparts, and execution in counterparts shall have the same force and effect as if the Parties had signed the same instrument.

17.     <u>Facsimile and Email Signatures.</u>  Any signature made and transmitted by facsimile for the purposes of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

DATED:       November \_\_\_, 2011       [NAME]

_____
Address:
[ADDRESS]


DATED:       November \_\_\_, 2011       BOSTON MARKET CORP.

By:_____
Its: _____

\

**EXHIBIT J**

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

---------------------------------------------------- X

BEBI ALLI, ERIK KEHOU, PATRICIA          )          **Civil Action No. 3:10-cv-00004-JCH**
FERNANDEZ, individually and on behalf of )
all others similarly situated,           )
                                         )
           Plaintiffs,          )
                                         )
            -v.-             )
                                         )
BOSTON MARKET CORP.,                     )
                                         )
           Defendant.           )
                                         )

---------------------------------------------------- X

### ORDER CONFIRMING CERTIFICATION OF CLASS/COLLECTIVE ACTION AND GRANTING FINAL APPROVAL TO SETTLEMENT[,] [*AND GRANTING CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES*][,] [*AND GRANTING PLAINTIFFS' & OPT-INS' MOTION FOR SERVICE PAYMENTS*]

On [*DATE*], the parties to this action entered into a Global Settlement Agreement ("Agreement"), and on [*DATE*] Plaintiffs applied for preliminary approval of that agreement and the terms thereof.  On [*DATE*], this Court granted preliminary approval to the Agreement and provisionally certified the State Law Classes under Rule 23 of the Federal Rules of Civil Procedure and conditionally certified the FLSA Class under Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b).  This Court subsequently directed that notice of the Agreement, its terms, and the applicable procedures and schedules be provided to proposed members of the FLSA Class and to the State Law Classes.  All State Law Class Members were given an opportunity to object to the settlement and/or opt out of it.

On [*DATE*], the parties jointly filed a Motion for Order Confirming Certification of the State Law Classes and FLSA Class and Granting Final Approval of the Settlement ("Final Approval Motion").  This Court held a hearing on that motion on [*DATE*].

And on [*DATE*], Class Counsel filed a Motion for an Award of Attorneys Fees and Reimbursement of Costs.  Also on [DATE], Named Plaintiffs filed a separate Motion for Award of Service Payments.  Defendant did not oppose either motion, which the Parties agree are to be considered by the Court separately from the Final Approval Motion.  This Court held a hearing on Plaintiffs' and Class Counsel's separate motions on [*DATE*].

[*PARAGRAPHS 1-12 ARE PROPOSED BY ALL PARTIES AND RELATE SOLELY TO THE FINAL APPROVAL MOTION:*]

NOW, THEREFORE, IT IS HEREBY ORDERED, upon consideration of the Agreement, the Final Approval Motion, as well as the Parties' briefs, declarations, and oral arguments in support of that motion, and the proceedings in this action to date, as follows:

1.      Except as otherwise specified herein, the Court for purposes of this Order adopts all defined terms set forth in the Agreement.

2.      This Court has jurisdiction over the subject matter of this litigation and all matters relating thereto, and over all Parties.

3.      This Court confirms as final its provisional certification under Fed. R. Civ. P. 23(a) and (b)(3) of the State Law Classes for purposes of settlement and based on the findings in Section II of the Court's [*DATE*] Order.

4.      The Court confirms as final its conditional designation of the FLSA Class as an FLSA collective action pursuant to 29 U.S.C. § 216(b) for purposes of settlement and based on the findings in Section III of the Court's [*DATE*] Order.  The Court finds that certain individuals

have opted in to this FLSA Class, and that these individuals are similarly situated for purposes of settlement, and the Court therefore certifies the FLSA Class as a collective action.

5.      The Court confirms as final the appointment of the following as the class representatives of the FLSA Class and the State Law Classes:

FLSA Class:  Named Plaintiffs;

New York Class: Named Plaintiffs;

Connecticut Class: Sherrie Ward and Rahiem Taylor.

The Court likewise confirms as final the appointment of Justin M. Swartz and Jennifer Liu of Outten & Golden LLP, Seth R. Lesser and Fran R. Rudich of Klafter Olsen & Lesser LLP, and Richard E. Hayber of Hayber Law Firm, LLC as Class Counsel of the FLSA Class and the State Law Classes.  The Court finds that Class Counsel are experienced in prosecuting and settling employment class actions and able to represent the class well.

6.      If, for any reason, this Order and the final judgment entered concurrently herewith do not become Final, this Order, including the certification of the State Law Classes under Rule 23 and the grant of final certification of the FLSA Class under 29 U.S.C. § 216(b), shall be vacated; the Parties shall return to their respective positions in this lawsuit as those positions existed immediately before the Parties executed the Agreement; and nothing stated in the Agreement or any other papers filed with this Court in connection with the settlement shall be deemed an admission of any kind by any of the Parties or used as evidence against, or over the objection of, any of the Parties for any purpose in this action or in any other action.

7.      The New York & Connecticut Documents and the FLSA Documents (as defined in the Agreement) given, respectively, to the State Law Class Members and the FLSA Class Members, pursuant to this Court's [*DATE*] Order, constituted the best notice practicable under the circumstances, was accomplished in all material respects, and fully met the requirements of

Rule 23 of the Federal Rules of Civil Procedure, due process, the United States Constitution and any other applicable law.

8.     This Court grants final approval to the Agreement and the settlement set forth therein because it meets the applicable criteria under *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  The Court finds that the settlement is fair, reasonable, and adequate in all respects and that it is binding on Plaintiffs, all Opt-Ins, and all State Law Class Members who did not timely opt out pursuant to the procedures set forth in this Court's [*DATE*] Order and the Agreement.  A list of State Law Class Members who timely opted out is attached to the Final Judgment as Exhibit A.  [*DELETE PRECEDING SENTENCE IF NO CLASS MEMBERS OPT OUT.*]  The Court specifically finds that the settlement is rationally related to the strength of the claims in this case given the risk, expense, complexity, and duration of further litigation.  This Court also finds that the Agreement is the result of arms-length negotiations between experienced counsel representing the interests of the Plaintiffs and Defendant, after thorough factual and legal investigation.

9.     The Court finds the proposed plan of allocation is rationally related to the relative strengths and weaknesses of the respective claims asserted.  The mechanisms and procedures set forth in the Agreement by which Settlement Payments are to be calculated and made to Plaintiffs and Class Members are fair, reasonable and adequate, and payment shall be made according to those allocations and pursuant to the procedure set forth in the Agreement.  The Court finds that the reserve set aside for the costs of settlement administration is reasonable and is approved.

10.     By operation of the entry of this Order, all claims described in Section 5 of the Agreement, and in the Opt-In Form and Individual Release executed by certain members of the

FLSA Class, are fully, finally and forever released, relinquished and discharged.  The Court has reviewed the documents referenced above and finds all of these releases to be fair, reasonable, and enforceable under the FLSA and Fed. R. Civ. P. 23 and all other applicable law.

11.     The Parties entered into the Agreement solely for the purpose of compromising and settling disputed claims.  Boston Market in no way admits any violation of law or any liability whatsoever to Plaintiffs and the other Class Members, individually or collectively, liability being expressly denied by Defendant.

12.     The Court retains jurisdiction over this matter for purposes of resolving issues relating to administration, implementation, and enforcement of the Agreement.

[*PARAGRAPHS 13 AND 14 ARE PROPOSED BY PLAINTIFFS ONLY AND RELATES SOLELY TO THE MOTION FOR ATTORNEYS FEES AND REIMBURSEMENTS OF COSTS:*]

FURTHERMORE, IT IS HEREBY ORDERED, upon consideration of Class Counsel's Motion for An Award of Attorneys' Fees and Reimbursement of Costs, as well as Class Counsel's brief, declarations, and oral argument in support of that motion, as follows:

13.     An award of attorneys' fees equal to no more than one-third of the Settlement Amount plus reimbursement of no more than $60,000 in actual litigation costs is approved.   The attorneys' fee award is reasonable in light of the effort expended and risks undertaken by Class Counsel and the results of such efforts including the ultimate recovery obtained.  The Court finds that Plaintiffs' fee application meets the relevant criteria under *Goldberger*, 209 F.3d 43.

14.     This fee award shall be the full, final, and complete payment of all attorneys' fees and costs associated with Class Counsel's representation of the FLSA Class and the State Law Class.

[*PARAGRAPH 15 IS PROPOSED BY PLAINTIFFS ONLY AND RELATES SOLELY TO THE MOTION FOR SERVICE PAYMENTS:*]

FINALLY, IT IS HEREBY ORDERED, upon consideration of Plaintiffs' Motion for An Award of Service Payments, as well as their brief, declarations, and oral argument in support of that motion, as follows:

15.     Service payments are approved as follows: For Kehou and Fernandez, $15,000 each; for Ward and Taylor, $10,000 each.  Together, such service payments represent 1.7% of the Settlement Amount and are in addition to the amounts Named Plaintiffs will otherwise receive as their share of the recovery.  Such service payment is to compensate Named Plaintiffs for the personal risks borne in bringing the litigation and for the time and effort expended in assisting in the prosecution of the litigation and the ultimate recovery.


DATED:_____                    _____
                                                Hon. Janet C. Hall
                                                United States District Judge