## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BEBI ALLI, ERIC KEHOU, and PATRICIA FERNANDEZ, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | **CIVIL ACTION NUMBER:** |
| | ) | |
| v. | ) | 10-cv-00004-(JCH) |
| | ) | |
| BOSTON MARKET CORP., | ) | April 4, 2012 |
| | ) | |
| Defendant. | | |

## MEMORANDUM IN SUPPORT OF JOINT MOTION FOR ORDER CONFIRMING CERTIFICATION OF THE STATE LAW CLASSES AND FLSA CLASS AND GRANTING FINAL APPROVAL OF THE SETTLEMENT

Seth R. Lesser, Esq. (ct27068)
Fran L. Rudich, Esq. (ct09487)
Klafter Olsen & Lesser LLP
Two International Drive, Suite 350
Rye Brook, NY 10573
Telephone:    914.934.9200

Justin M. Swartz (phv03853)
Jennifer L. Liu (phv04305)
Outten & Golden LLP
3 Part Avenue, 29th floor
New York, NY 10016
Telephone: (212) 245-1000

Richard E. Hayber (ct11629)
Hayber Law Firm, LLC
21 Main Street, Suite 502
Hartford, CT 06106
Telephone: (860) 522-8888

Attorneys for Plaintiffs and the Class

Michael J. Gray (phv04066)
JONES DAY
77 West Wacker
Chicago, Illinois  60601-1692
Tel: 312.782.3939
Fax: 312.782.8585
mjgray@jonesday.com

E. Michael Rossman (phv04064)
JONES DAY
325 John H. McConnell Boulevard, Suite 600
Columbus, Ohio 43215-2673
Tel: 614.469.3939
Fax: 614.461.4198
emrossman@jonesday.com

Craig S. Friedman (phv04065)
JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309-3053
Tel: 404.581-8412
Fax: 404.581.8330
csfriedman@jonesday.com

Deborah DeHart Cannavino (ct08144)
LITTLER MENDELSON P.C.
265 Church Street, Suite 300
New Haven, Connecticut 06510
Tel: (203) 974-8700
Fax: (203) 974-8799
dcannavino@littler.com

Attorneys for Defendant Boston Market
Corporation

## TABLE OF CONTENTS

I.  Introduction ................................................................................................................. 1

II.  Procedural History ...................................................................................................... 2

III.  Summary of the Terms of the Settlement, the Notices That Were Sent, and the Class's Reaction ............................................................................................................... 7

IV.  Legal Argument ........................................................................................................... 10

    A.  The Rule 23 Component of the Proposed Settlement is Fair, Reasonable, and Adequate, and Should Be Approved in All Respects ......................................... 10

        1)  Procedural Fairness Considerations Support Approving this Class Action Settlement ............................................................................................ 10

        2)  The Second Circuit's Standard for Examining Substantive Fairness of Class .......................................................................................................... 12

        1.  The Risks of Establishing Liability and Damages ........................................ 13

            i)  Litigation Through Trial Would be Complex, Costly, and Long .. 13

            ii)  The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) 14

            iii)  Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case ....................................................... 15

            iv)  Plaintiffs Would Face Real Risks of Establishing Liability and Damages if the Case Proceeded (*Grinnell* Factors 4 and 5) ......... 16

            v)  Obtaining and Maintaining a Class Through Trial Would Be Difficult (*Grinnell* Factor 6) ......................................................... 18

            vi)  The Settlement Agreement Reduces Any Risk of Collection (*Grinnell* Factor 7) ...................................................................... 18

            vii)  The Total Settlement Amount is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ........................................ 19

    B.  Approval of the FLSA Settlement is Appropriate under Federal Law ... 24

V.  Conclusion .................................................................................................................. 26

## TABLE OF AUTHORITIES

**Cases**

*Ansoumana v. Gristedes Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001)............................ 24

*Behrens v. Wometco Enters.*, 118 F.R.D. 534 (S.D. Fla. 1988).................................................... 23

*Brooks v. Am. Export Indus., Inc.*, No. 71 Civ. 5128, 1977 U.S. Dist. LEXIS 17313 (S.D.N.Y. Feb. 17, 1977).................................................................................................................. 20

*Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 U.S. Dist. LEXIS 11450 (E.D.N.Y. May 17, 1990).................................................................................................................... 20

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)............................................. *passim*

*Clements v. Serco, Inc.,* 530 F.3d 1224 (10th Cir. 2008).............................................................. 21

*D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001) ........................................................ 10

*Davis v. J.P. Morgan Chase & Co.*, No. 01 Civ. 6492, 2011 U.S. Dist. LEXIS 117082 (W.D.N.Y. Oct. 11, 2011)................................................................................................................. 18, 22

*Desmond v. PNGI Charles Town Gaming, L.L.C.,* 630 F.3d 351 (4th Cir. 2011)........................ 21

*Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231 (E.D.N.Y. 2010)............ 10, 13, 15, 24

*Fernandez v. Boston Market Corp.*, No. 09 Civ. 5333 (E.D.N.Y.) ................................................ 3

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 185 (W.D.N.Y. 2005)................................ *passim*

*Gallagher v. T-Bone Rest. LLC,* 2011 U.S. Dist. LEXIS 143773 (S.D.N.Y. Dec. 13, 2011) ..... 19

*Giant Interactive Grp., Inc. Sec. Litig.*, No. 07 Civ. 10588, 2011 WL 5244707 (S.D.N.Y. Nov. 2, 2011) ............................................................................................................................. 18

*Gilliam v. Addicts Rehab. Ctr. Fund,* No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. Mar. 24, 2008.) .................................................................................. 10, 13, 20, 25

*Greenfield Online*, 2008 U.S. Dist. LEXIS 84175 (D. Conn. Oct. 20, 2008) ............................. 10

*Hall v. Children's Place Retail Stores, Inc.*, 669 F. Supp. 2d 399 (S.D.N.Y. 2009) ................... 23

*Henry v. Quicken Loans, Inc.,* Case No. 2:04-cv-40346-SJM-MJH (E.D. Mich. 17, 2011)........ 21

*In re Adelphia Communs. Corp. Sec. & Derivatives Litig.*, 271 Fed. Appx. 41 (2d Cir. 2008)..... 9

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000) .... *passim*

*In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694 (E.D. Mo. 2002) ........................................ 11

*In re Canadian Superior Secs. Litig.,* 2011 U.S. Dist. LEXIS 132708 (S.D.N.Y.
Nov. 16, 2011) ........................................................................................................... 20

*In re China Sunergy Sec. Litig*, 2011 U.S. Dist. LEXIS 53007 (S.D.N.Y. May 13, 2011)......... 20

*In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993)................................................. 23

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist.
LEXIS 57918 (S.D.N.Y. July 27, 2007) ........................................................................... 11, 14

*In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y. 2009) .............................. 23

*In re Ira Haupt & Co.,* 304 F. Supp. 917 (S.D.N.Y. 1969) ......................................................... 16

*In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104 (S.D.N.Y. 1997).................................... 16

*In re Priceline.com, Inc.*, 60 Fed. R. Serv. 3d 273, 2007 U.S. Dist. LEXIS 52538 (D. Conn. July
19, 2007). ........................................................................................................................ 10

*In re Prudential Inc. Secs. Ltd. Partnerships Litig.*, MDL No. 1005, M-21-67, 1995 U.S. Dist.
LEXIS 22103 (S.D.N.Y. Nov. 20, 1995)........................................................................... 23

*In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 U.S. Dist. LEXIS 58106 (S.D.N.Y.
July 31, 2008)................................................................................................................... 11

*Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011)............. 19

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982) ................ 25

*Maced. Church v. Lancaster Hotel, LP,* 2011 U.S. Dist. LEXIS 62063 (D. Conn.
June 9, 2011)....................................................................................................................... 9

*Maley v. Dale Global Techs. Corp.,* 186 F. Supp. 2d 358 (S.D.N.Y. 2002). ............................. 14

*McKenna v. Champion Int'l Corp.*, 747 F.2d 1211 (8th Cir. 1984) ........................................... 25

*Mohney v. Shelly's Prime Steak*, No. 06 Civ. 4270, 2009 U.S. Dist. LEXIS 27899 ....... 12, 16, 25

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972). ........................................................................ 19

*Officers for Justice v. Civil Service Com.*, 688 F.2d 615 (9th Cir. 1982) .................................. 20

*Parker v. Time Warner Entm't Co.*, 631 F. Supp. 2d 242 (E.D.N.Y. 2009) .............................. 15

*Perkins, et al. v. Southern New England Telephone Co.*, No. 07 Civ. 967 (D. Conn. Oct. 21, 2011)....................................................................................................... 17, 21

*RMED Int'l, Inc. v. Sloan's Supermkts, Inc.,* No. 94 Civ. 5587, 2003 U.S. Dist. LEXIS 8239 (S.D.N.Y. May 15, 2003) ......................................................................... 15

*Ross v. A.H. Robbins, Inc.,* 700 F. Supp. 682 (S.D.N.Y. 1988).................................................. 15

*Russell v. Wells Fargo and Co.,* 2009 U.S. Dist. LEXIS 107044 (N.D. Cal. Nov. 17, 2009)...... 17

*Stillman v. Staples, Inc.*, No. 07-849 (KSH), 2009 U.S. Dist. LEXIS 42247 (D.N.J. May 15, 2009) ....................................................................................................... 21, 22

*Urnikis-Negro v. Am. Family Prop. Servs.,* 616 F.3d 665 (7th Cir. 2010) ................................ 21

*Valerio v. Putnam Assocs., Inc.,* 173 F.3d 35 (1st Cir. 1999)...................................................... 21

*Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223 (S.D.N.Y. June 22, 2007)....................................................................................... 15, 16

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) .............................. 10, 12

*Wilson v. DirectBuy, Inc.*, No. 3:09-CV-590 (JCH), 2011 U.S. Dist. LEXIS 51874 (D. Conn. May 16, 2011).............................................................................................................. *passim*

*Wright v. Stern*, 553 F. Supp. 2d 337 (S.D.N.Y. 2008) .............................................................. 15

**Statutes**

29 U.S.C. § 216(b) ............................................................................................................. *passim*

**Rules**

Fed. R. Civ. P. 23 ................................................................................................ 10, 18, 24, 25

Fed. R. Civ. P. 23(a) ................................................................................................................. 1

Fed. R. Civ. P. 23(b)(3)............................................................................................................. 1

Fed. R. Civ. P. 23(e) ...................................................................................................... 1, 9, 10

Fed. R. Civ. P. 23(f). ............................................................................................................... 18

Plaintiffs Eric Kehou, Patricia Fernandez, Sherrie Ward, and Rahiem Taylor (collectively, "Named Plaintiffs"), and Defendant Boston Market Corporation ("Boston Market) (together, with Named Plaintiffs, the "Parties"), by and through their respective counsel, respectfully submit this memorandum in support of their motion for an order pursuant to Fed. R. Civ. P. 23(e) and 29 U.S.C. § 216(b) confirming as final the Court's preliminary approval of the settlement of this action as a class action.  Specifically, Named Plaintiffs and Boston Market ask this Court to:

(1) Confirm as final its provisional certification under Fed. R. Civ. P. 23(a) and (b)(3) of the State Law Classes[1] for purposes of settlement;

(2) Confirm as final its conditional designation of the FLSA Class as an FLSA collective action pursuant to 29 U.S.C. § 216(b) for purposes of settlement;

(3) Confirm as final the appointment of the class representatives of the FLSA Class and the State Law Classes;

(4) Confirm as final the appointment of Class Counsel of the FLSA Class and the State Law Classes; and

(5) Approve to pay the Claims Administrator, The Garden City Group, in an amount expected to be $101,000.

I.   **Introduction**

Named Plaintiffs and Boston Market submit this motion for final approval of the $3,000,000 settlement in this action, a settlement that is being presented for final approval just over two years after the case was initiated, and in the face of a defendant in an industry – the restaurant industry – that as a whole is facing particularly serious economic challenges.

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings proscribed to them in the Global Settlement Agreement (the "Agreement") (Docket No. 150-2).

The reaction of the Class speaks to the quality of this settlement.[2]  Specifically, although each member of the New York and Connecticut Classes was informed, in the New York and Connecticut Documents, of the details of the Settlement and the deadlines to object and/or opt out, and each FLSA Class Member was informed, in the FLSA Class Notice Packet, as to his/her estimated share of the Net Settlement Fund (assuming the Court approves the Settlement and the requested attorneys' fees and costs, service payments and the costs of settlement administration), there has not been a single objection to any part of the Settlement.  *See* Affidavit of Jason Zuena ("Zuena Aff."), attached as Exhibit A to the Declaration of Justin Swartz in Support of Final Approval and Other Relief ("Swartz Decl."), at ¶¶ 4, 7; *see also* Zuena Aff. at Exhibit A (the form of the FLSA Class Notice Packet that was sent to FLSA Class Members) and Exhibit B (the form of the State Law Class Notice Packet that was sent to New York and Connecticut Class Members).  Second, there have only been two Opt-Out Forms submitted.  *Id.*  at ¶ 8.

The $3 million settlement of the Class Members' claims against Defendant provides Class Members with expeditious relief, warranting approval of the entirety of the proposed Settlement and all relief requested herein.

## II.   __Procedural History__

The procedural history of this wage and hour misclassification case was previously set forth for the Court at pages 2-4 of the Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of Plaintiffs'

---

[2] Although the Settlement covers three classes – the FLSA Class, the New York Class, and the Connecticut Class (*see* note 5, *infra*) – for convenience, this memorandum will refer to the three classes as the "Class" and the members of the classes as "Class Members."

Proposed Notices of Settlement (Docket No. 150).  Relevant portions of that discussion are repeated here for the convenience of the Court.

On December 7, 2009, Patricia Fernandez ("Fernandez") filed *Fernandez v. Boston Market Corp.*, No. 09 Civ. 5333 (E.D.N.Y.) ("*Fernandez*"), a class and collective action in the U.S. District Court for the Eastern District of New York on behalf of herself and others similarly situated, alleging violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").  Swartz Decl. at ¶ 2.  On January 4, 2010, Bebi Alli ("Alli") filed this case, a class and collective action on behalf of herself and others similarly situated, alleging violations of the FLSA and the Connecticut Minimum Wage Act ("CMWA").  *Id.*  The plaintiffs in both cases alleged that Defendant improperly classified them and other similarly situated Assistant General Managers, Hospitality Managers, and/or Culinary Managers ("AGMs") as exempt from applicable overtime protections and unlawfully failed to pay them overtime compensation.  *Id.*

On January 28, 2010, Alli filed an Amended Complaint adding Eric Kehou ("Kehou") as a named plaintiff and class NYLL claims.  *Id.*  at ¶ 3.  On May 7, 2010, Alli and Kehou filed a Second Amended Complaint seeking class-wide liquidated damages under the NYLL.

On March 11, 2010, Defendant moved to dismiss this case because of the pending first-filed *Fernandez* case.  *Id.* at ¶ 4.  On April 15, 2010, Defendant withdrew its motion to dismiss. *Id.*  On June 11, 2010, Defendant moved to transfer this case to the Eastern District of New York.  *Id.*  On November 10, 2010, the Court denied Defendant's motion to transfer.  *Id.*  On March 11, 2011, Plaintiffs Alli and Kehou filed a Third Amended Complaint adding Fernandez as a named plaintiff in this case.  *Id.*

On February 28, 2011, Plaintiffs filed a Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA ("Motion for Conditional Certification"). *Id.* at ¶ 5.

On March 9, 2011, Plaintiffs filed a motion for leave to amend their complaint. *Id.* at ¶ 6. Plaintiffs subsequently withdrew this motion and filed a renewed Motion for Leave to Amend Complaint ("Motion to Amend") for the purpose of adding Sherrie Ward ("Ward") and Rahiem Taylor ("Taylor") as named plaintiffs. *Id.* On June 23, 2011, the Court granted Plaintiffs' Motion to Amend. On June 27, 2011, Alli, Kehou, and Fernandez filed a Fourth Amended Complaint adding Ward and Taylor as named plaintiffs. *Id.*

On March 22, 2011, Boston Market filed a Motion to Dismiss Claims of Plaintiff Alli ("Motion to Dismiss Alli") on the grounds that she lacked standing to assert her claims because she failed to disclose them in a bankruptcy filing. *Id.* at ¶ 7. On September 7, 2011, the Court granted Defendant's Motion to Dismiss Alli. *Id.* On September 8, 2011, the Court granted Plaintiffs' Motion for Conditional Certification. *Id.*

Class Counsel have conducted a thorough investigation of the claims and defenses. *Id.* at ¶ 8. Class Counsel focused their investigation and legal research on the underlying merits of Class Members' claims, the damages to which they claim they are entitled, and the propriety of class certification. *Id.* Class Counsel conducted in-depth interviews with Named Plaintiffs and other AGMs to determine the hours that they worked, the wages they were paid, the nature of their daily activities, and other information relevant to their claims. *Id.* Class Counsel obtained and reviewed several thousand pages of documents from Named Plaintiffs, including job descriptions, pay records, schedules, time sheets, personnel documents, and corporate documents. *Id.*

Through formal discovery, Plaintiffs obtained and reviewed over 30,000 pages of documents produced by Defendant, including a substantial email production. *Id.* at ¶ 9. Plaintiffs produced several thousand pages of documents in response to Defendant's discovery requests. *Id.* Named Plaintiffs regularly communicated with Class Counsel and assisted with preparation of the complaints and discovery requests, and the factual investigation of the claims. *Id.* Alli and Kehou were deposed for two days each, and Fernandez sat for a one day deposition. *Id.* Alli, Kehou, and Fernandez also responded to interrogatories. *Id.* Ward and Taylor provided detailed declarations about their employment history and the nature of their duties as AGMs at Boston Market. *Id.* Plaintiffs took a 30(b)(6) deposition of Robert Gerard, Director of Operations for Boston Market. *Id.* Based on this discovery, Class Counsel were able to perform damage calculations and otherwise asses the claims. *Id.*

During the summer of 2010, the Parties agreed to attempt to resolve this matter through non-binding private mediation. *Id.* at ¶ 10. Defendant produced data to Plaintiffs on the number of AGMs, the total number of workweeks worked, and AGMs' average compensation in order to allow Plaintiffs to perform damage calculations. *Id.* In addition, and not unimportantly, subject to a confidentiality agreement between the Parties, Defendant produced certain confidential financial information to Class Counsel. *Id.* On September 29, 2010, the Parties attended a formal mediation session with Lynn Cohn of Northwestern University in an effort to settle the case. *Id.* No settlement was reached, but the Parties continued to discuss settlement. *Id.*

On September 14, 2011, the Parties attended a second formal mediation session with Lynn Cohn. *Id.* at ¶ 11. In advance of this session, Defendant produced additional data on the number of AGMs, the total number of workweeks worked, and AGMs' average compensation in order to allow Plaintiffs to refine their damages calculations. *Id.* In addition, Defendant produced

additional confidential financial information, again subject to a confidentiality agreement between the Parties. *Id.* Although the Parties did not agree upon the terms of a settlement at the mediation, they continued to negotiate over the next couple of weeks. *Id.* On or around September 27, 2011, the Parties agreed to the key terms of a settlement, which are memorialized in the Agreement. *Id.* At all times during the settlement negotiation process, negotiations were conducted on an arm's-length basis. *Id.*

Both Parties are of the opinion that the Agreement is fair, reasonable, and adequate. *Id.* at ¶ 13. Further, Class Counsel believe that the Agreement is in the best interest of the Class Members in light of all known facts and circumstances, including the significant risks and delays of litigation that are presented by the defenses and potential pre-trial and appellate issues Defendant may assert. *Id.* A resolution of this litigation at this stage – rather than following upon a year or more of discovery, class action briefing, further post-certification discovery, pretrial proceedings and potential trial, and the costs attendant upon and likely to be incurred through such activities, most certainly inures to the benefit of the Class. *Id.*[3] In addition, Class Counsel have fully advised the Named Plaintiffs of the Agreement, and they approve of and

---

[3] Indeed, Class Counsel are particularly well aware of the risks and delays attendant upon such a wage and hour misclassification case inasmuch as, in January 2009, Mr. Lesser was trial counsel at one of the rare FLSA misclassification cases that have ever been tried to a jury. *See* Certification of Seth R. Lesser of Klafter Olsen & Lesser LLP in Support of Application for an Award of Attorneys' Fees and Expenses, attached as Exhibit C to Swartz Decl., at ¶ 10. That trial, which, even pursuant to an expedited schedule, occurred nearly two years after the filing of the case, consumed six weeks of time, cost hundreds of thousands of dollars and presented innumerable contested issues of both law and fact. *Id.* Although a jury verdict was obtained, the post-trial motion practice that thereupon followed was quite extensive and included, among other things, motions for judgment notwithstanding the verdict, to have the damages reduced pursuant to the "fluctuating work week" basis of calculating overtime, and for decertification of the collective class. *Id.* Accordingly, Class Counsel believe that the proposed Settlement here, being presented to the Court just over two years after the case was filed, is a result well to the benefit of the Class Members.

consent to the Settlement.  Swartz Decl at ¶ 14.  Further driving the resolution here was the

information provided by Defendant relating to its financial status as a retail food chain in light of

the economic downturn.  *Id.* at ¶ 17.

In sum, the Parties desire fully, finally, and forever to settle, compromise, and discharge

all individual and class wage and hour claims that were asserted or could have been asserted in

this or any related future actions.

III.   **Summary of the Terms of the Settlement, the Notices That Were Sent, and the
Class's Reaction**

The Agreement provides that, if approved, Defendant will pay the Total Settlement

Amount of $3,000,000.00 into a qualified settlement fund to resolve the claims asserted in the

Litigation in their entirety.  *See* Agreement at ¶ 4.1.  Indeed, pursuant to the Agreement,

Defendant has already paid $1,018,750 into the fund.  Swartz Decl. at ¶ 15.  The qualified

settlement fund is being administered and will continue to be administered by an independent

and experienced third-party claims administrator, which has acted as notice administrator, The

Garden City Group, Inc. ("GCG" or the "Claims Administrator").  The Total Settlement Amount

will cover Class Members' awards, as well as Class Counsel's attorneys' fees and costs, service

payments to the Class Representatives, and a reserve set aside for reasonable costs of

administration, in the amounts awarded by the Court upon the present motion.[4]  The portion of

the Settlement allocated to FLSA Class Members who do not opt-in will revert to Defendant.

---

[4] The Total Settlement Amount will also pay the full amount of the participating Class Members'
W-2 withholdings (and state/local withholdings if applicable).  However, Boston Market will
bear the cost of the employer's share of taxes for such payments, which share of taxes will not
come out of the Total Settlement Amount.  *See* Agreement at ¶ 4.7.

As previously set forth and as preliminarily approved by the Court, the Settlement is in the form of a hybrid FLSA collective action and Rule 23 state law class action, which encompasses differing statutes of limitations based upon state laws.[5]

Pursuant to this Court's Preliminary Approval order, each member of the FLSA Class was sent, by first class mail, a Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing for FLSA Class Members (the "FLSA Class Member Notice") and Opt-In Form which set out his/her estimated share of the Net Settlement Fund (assuming the Court approves the Settlement and the requested attorneys' fees and costs, service payments and the costs of settlement administration), and each member of the State Law Class was sent a Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing for State Law Class Members (the "State Law Class Member Notice").[6]  *See* Zuena Aff. at ¶ 4, and Exhibits A & B

---

[5] In its Preliminary Approval order, the Court provisionally certified the following classes:

  a.  **NEW YORK CLASS** – all individuals who are or were employed by Boston Market as an Assistant General Manager, Culinary Manager, or Hospitality Manager within the State of New York between January 4, 2004 and December 8, 2011(the date of the Preliminary Approval order).

  b.  **CONNECTICUT CLASS** – all individuals who are or were employed by Boston Market as an Assistant General Manager, Culinary Manager, or Hospitality Manager within the State of Connecticut between January 4, 2008 and December 8, 2011(the date of the Preliminary Approval order).

  c.  **FLSA CLASS** – all individuals who are or were employed Boston Market as an Assistant General Manager, Culinary Manager, or Hospitality Manager in states other than California, New York, or Connecticut between January 4, 2007 and December 8, 2011 (the date of the Preliminary Approval order) or in Connecticut between January 4, 2007 and January 3, 2008.

[6] Each participating Class Member will receive a share of the Net Settlement Amount (that is, the settlement funds that remain after deductions are made for claims administration costs, service payments, and attorneys' fees and expenses).  Each participating Class Member's share will be based on the number of weeks he/she was employed by Boston Market as an AGM during the relevant time periods.  The specific method of calculation of each participating Class Members' share was included in the FLSA Class Member Notice and the State Law Class Member Notice.  *See* Zuena Aff. at Exhibits A and B, at pages 3-4.

thereto.  Notices were sent to each of the 1,921 Class Members (not including Litigation Opt-Ins).  *Id.* at ¶ 4.  As of March 28, 2011, the Claims Administrator had disseminated a total of 2,115 Notice Packets (this includes the initial mailing, re-mails where updated addresses were obtained, and Notice Packet requests from individuals who were not included in the initial mailing).  *Id.* at ¶ 6.

Pursuant to the Preliminary Approval order, State Law Class Members do not need to submit a claim form in order to participate in the Settlement and receive a monetary distribution; FLSA Class Members must submit an Opt-In Form and Individual Release.  *See* Preliminary Approval Order (Docket No. 152) at 10-11.  The opt-in period ended on March 20, 2012.  Zuena Aff. at ¶ 9.  As of April 2, 2012, 620 Opt-In Forms had been returned (618 timely and two late).  *Id.*  In the Preliminary Approval order, this Court found that the proposed plan for distributing notice provided the best notice practicable, and concluded that the Notice Materials satisfy the requirements of Fed. R. Civ. P 23(e) and all other legal and due process requirements.  *See* Preliminary Approval order (Docket No. 152) at 8.[7]

---

[7] *See also Maced. Church v. Lancaster Hotel, LP,* 2011 U.S. Dist. LEXIS 62063, at *31 (D. Conn. June 9, 2011) (notice sent individually to class members reasonably identified by counsel satisfied due process); *In re Adelphia Communs. Corp. Sec. & Derivatives Litig.*, 271 Fed. Appx. 41, 44 (2d Cir. 2008) ("for due process to be satisfied, not every class member need receive actual notice, as long as class counsel acted reasonably in selecting means likely to inform persons affected.") (internal quotations omitted); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993) (notice generally describing terms of settlement and formula for computing awards, mailed out 45 days before hearing met requirements of Rule 23 and due process); *Miller v. Republic Nat'l Life Ins. Co.,* 559 F.2d 426, 429 (5th Cir. 1977); *In re Equity Funding Corp.,* 603 F.2d 1353, 1361 (9th Cir. 1979) (notice found sufficient where it informed class members of the subject matter of the litigation, terms of the proposed settlement and the proposed plan of allocation of the settlement proceeds).

**IV.**   <u>**Legal Argument**</u>

 **A.** **The Rule 23 Component of the Proposed Settlement is Fair, Reasonable, and Adequate, and Should Be Approved in All Respects**

 For court approval of a class action settlement, Rule 23(e) requires that the settlement be procedurally and substantively fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e).  Courts examine the "negotiating process leading up to the settlement as well as the settlement's substantive terms," in light of "the judicial policy favor[ing] the settlement of class actions." *Gilliam v. Addicts Rehab. Ctr. Fund,* No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *9 (S.D.N.Y. Mar. 24, 2008.)  In the Second Circuit, courts examine both procedural and substantive fairness with the understanding that the law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context.") (internal quotation marks omitted); *see also Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 238 (E.D.N.Y. 2010).  Here, both procedural and substantive considerations support approving the Rule 23 component of the Settlement.

 **1)** **Procedural Fairness Considerations Support Approving this Class Action Settlement**

 "A presumption of fairness will arise, where a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Wilson v. DirectBuy, Inc.*, No. 3:09-CV-590 (JCH), 2011 U.S. Dist. LEXIS 51874, at *15 (D. Conn. May 16, 2011) (J. Hall) (internal quotations omitted) (alteration in original); *see also D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001); *Greenfield Online*, 2008 U.S. Dist. LEXIS 84175, at *13 (D. Conn. Oct. 20, 2008); *In re Priceline.com, Inc.*, 60 Fed. R. Serv. 3d 273, 2007 U.S. Dist. LEXIS 52538, at *8 (D. Conn. July 19, 2007).  If the settlement was achieved through experienced counsels' arm's-length negotiations, "[a]bsent fraud or collusion," "[courts] should

be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."
*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist.
LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007); *In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ.
13761, 2008 U.S. Dist. LEXIS 58106, at *10-11 (S.D.N.Y. July 31, 2008) (same); *In re
BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the
settlement, the Court should keep in mind the unique ability of class and defense counsel to
assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and
reasonableness may attach to a class settlement reached in arm's-length negotiations between
experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

     Here, the Settlement was reached after more than two years of hard-fought litigation which
included the initiation of cases in two federal courts and contested motions: (i) to transfer, (ii) for
conditional certification pursuant to FLSA § 216(b), (iii) for leave to amend, and (iv) to dismiss
Alli's claims.  Moreover, the Parties engaged in thorough investigations of the claims and
defenses.  Specifically, Class Counsel focused their investigation and legal research on the
underlying merits of Class Members' claims, the damages to which they claim they were
entitled, and the propriety of class certification.  Swartz Decl. at ¶ 8.  Class Counsel conducted
in-depth interviews with Named Plaintiffs and other AGMs to determine the hours they
worked, the wages they were paid, the nature of their daily activities, and other information
relevant to their claims.  *Id.*  Class Counsel obtained and reviewed several thousand pages of
documents from Named Plaintiffs, including job descriptions, pay records, schedules, time
sheets, personnel documents, and corporate documents.  *Id.*  The Parties also engaged in formal
discovery, including the production of over 30,000 pages of documents by Defendant, and
Named Plaintiffs' review of that production.  *Id.* at ¶ 9.  Named Plaintiffs also produced several

thousand pages of documents in response to Defendant's documents requests. *Id.* Alli, Kehou, and Fernandez were deposed and also responded to interrogatories, while Ward and Taylor provided detailed declarations about their employment history and the nature of their duties as AGMs at Boston Market. *Id.* Named Plaintiffs also took a 30(b)(6) deposition of Robert Gerard, Director of Operations for Boston Market. *Id.*

The Parties also exchanged information in connection with two separate mediation sessions presided over by Lynn Cohn of Northwestern University. *Id.* at ¶ 10. In particular, in advance of each of the two mediations, Defendant produced data regarding the number of AGMs, the total number of workweeks worked, and AGMs' average compensation in order to allow Named Plaintiffs to perform damage calculations. *Id.* at ¶ 11. In addition, Defendant produced additional confidential financial information. *Id.* At all times during the settlement negotiation process, negotiations were conducted on an arm's length basis. *Id.* These arm's-length negotiations involving counsel and a mediator well-versed in wage and hour law raise a presumption that the settlement they achieved meets the requirements of due process. *See Mohney v. Shelly's Prime Steak*, No. 06 Civ. 4270, 2009 U.S. Dist. LEXIS 27899, at *13 (S.D.N.Y. Mar. 31, 2009), *Wal-Mart Stores*, 396 F.3d at 116.

**2)      The Second Circuit's Standard for Examining Substantive Fairness of Class Action Settlements Favors Granting Final Approval**

More than three decades ago, the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), set forth the analytical framework for evaluating the substantive fairness of a class action settlement. This framework, known as the *Grinnell* factors, guides district courts by setting out the following factors for determination: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of

establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463; *see also Wilson*, 2011 U.S. Dist. LEXIS 51874, at *16 (D. Conn. May 16, 2011) (J. Hall). All of the *Grinnell* factors weigh in favor of final approval of this Settlement.

### i)    Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1)

By reaching a favorable settlement prior to further factual discovery, expert discovery, further dispositive motions or trial, Named Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the Class. *See Dupler*, 705 F. Supp. 2d at 239 (continuing litigation would require "time and expense of discovery, a likely motion for summary judgment by defendant … and, if necessary, a trial."). Moreover, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000); *Dupler*, 705 F. Supp. 2d at 239 (recognizing that further litigation of class claims would require resolution of several complex issues). Particularly, in complex wage and hour litigation involving both federal and state statutory rights such as the case at bar, protracted litigation is costly and burdensome, including motion practice and potential appeals over class certification. *See Gilliam,* 2008 U.S. Dist. LEXIS 23016, at *4.

With 1,593 FLSA Class Members and 331 State Law Class Members, and multiple wage and hour claims under both state and federal statutes, this case is no exception to these general rules. Although there has already been substantial discovery, more discovery would be

required on liability and damages issues.  A complicated trial could well be necessary,

involving extensive testimony by Defendant, Named Plaintiffs, and numerous Class Members.

Preparing and putting on evidence regarding the complex factual and legal issues at such a trial

would consume tremendous amounts of time and resources for both sides, and it would require

substantial judicial resources to adjudicate the Parties' disputes.  A trial of the damages issues,

even on a representative basis (and Defendant would oppose proceeding on a representative

basis), would be costly and would further defer resolution.  Any judgment would likely be

appealed, thereby extending the duration of the Litigation.  The Settlement, on the other hand,

makes monetary relief available to Class Members in a prompt and efficient manner.

Therefore, the first *Grinnell* factor weighs in favor of judicial approval of the Settlement.

### ii)       The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)

"It is well-settled that the reaction of the class to the settlement is perhaps the most

significant factor to be weighed in considering its adequacy." *Maley v. Dale Global Techs.*

*Corp.,* 186 F. Supp. 2d 358, 362-63 (S.D.N.Y. 2002).  "The Second Circuit has generally been of

the view that a low objection rate by absent class members is supportive of a settlement

agreement." *Wilson*, 2011 U.S. Dist. LEXIS 51874, at *31 (D. Conn. May 16, 2011) (J. Hall); *see*

*also In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 57918, at *6

(lack of objection to a settlement strongly favors judicial approval).  Here, there have been no

objections to the Settlement, and only two Opt-Out Forms have been received.  *See* Zuena Aff.

at ¶¶ 7-8.[8]  This overwhelmingly positive response demonstrates that the Class Members

approve of the results achieved on their behalf and supports judicial approval. *See Dupler*, 705

F. Supp. 2d at 239-240 (with 127 opt outs and 24 objections in class of over 11 million, the

---

[8] By way of comparison, FLSA Class Members submitted 620 Opt-In Statements (618 timely
and two late).  Id. at ¶ 9.

court stated, "[g]iven the relatively small number of class members who opted out or objected to the Settlement, the Court finds that the reaction of the class has been overwhelmingly positive, which strongly weighs in favor of Settlement approval."); *RMED Int'l, Inc. v. Sloan's Supermkts, Inc.,* No. 94 Civ. 5587, 2003 U.S. Dist. LEXIS 8239, at *4 (S.D.N.Y. May 15, 2003) ("The lack of class member objections . . . may itself be taken as evidencing the fairness of a settlement") (quoting *Ross v. A.H. Robbins, Inc.,* 700 F. Supp. 682, 684 (S.D.N.Y. 1988)); *Wright v. Stern,* 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) (only 13 objections out of class of 3,500 is a "strong indication" of fairness); *Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223, at *17-18 (S.D.N.Y. June 22, 2007) (absence of any class member objections weighs in favor approving the settlement).

### iii)   Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3)

Although preparing this case through trial would require many more hours of discovery for both sides, the Parties have completed enough discovery to recommend the Settlement.  The proper question is "whether the plaintiffs had sufficient information on the merits of the case to enter into a settlement." *Dupler*, 705 F. Supp. 2d at 240 (quoting *Parker v. Time Warner Entm't Co.*, 631 F. Supp. 2d 242, 259 (E.D.N.Y. 2009).  "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotations omitted).

The Parties' discovery here meets this standard, because they have engaged in substantial discovery before agreeing to resolve this case.  *See* pages 4-5, *supra* (discussing same); *see also* Swartz Decl. at ¶¶ 8-9.  Moreover, the Parties engaged in two mediation sessions during which they advocated their positions and engaged in a vigorous back and forth

regarding their respective claims and defenses.  *See* pages 5-6, *supra* (discussing same); *see also* Swartz Decl. at ¶¶ 10-11.

Based on the above, the Parties were well-equipped to evaluate the strengths and weaknesses of their respective cases.  Indeed, courts have approved of settlements in earlier stages of litigation and in the absence of formal discovery.  *See Mohney*, 2007 U.S. Dist. LEXIS 46223, at *12-13; *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 185 (W.D.N.Y. 2005) (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information pertaining to the identities of Class Members and to Defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive"); *cf Wilson*, 2011 U.S. Dist. LEXIS 51874, at *36 (D. Conn. May 16, 2011) (J. Hall) (finding that, given the relatively early stage of the proceedings and the lack of any formal discovery, the parties and the court were not in a good position to evaluate the strength of the claims released or the value of the settlement to the class).  Thus, this factor weighs in favor of settlement approval.

> **iv)     Plaintiffs Would Face Real Risks of Establishing Liability and Damages if the Case Proceeded (*Grinnell*  Factors 4 and 5)**

"The court must consider the risks concomitant with pursuing this case, including the risk of plaintiffs' being unable to prove liability, to prove damages, and to maintain their class action through trial." *Wilson*, 2011 U.S. Dist. LEXIS 51874, at *36-37 (D. Conn. May 16, 2011) (J. Hall).  "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997).  Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez,* 2007 U.S. Dist. LEXIS 46223, at *21-22.  In weighing the risks of establishing liability and damages, the court "must only weigh the

likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotations omitted).

Although Named Plaintiffs believe their case is strong, Defendant likewise believes that its case is strong, noting particularly the recent defense verdict in *Perkins, et al. v. Southern New England Telephone Co.*, No. 07 Civ. 967 (D. Conn. Oct. 21, 2011) (Hall, J).  Moreover, a trial on the merits would involve significant risks to Named Plaintiffs because of the fact-intensive nature of proving liability under the NYLL and the CMWA (and the FLSA), and the defenses available to Defendant.  Specifically, to prove both liability and damages, Named Plaintiffs would have to overcome Defendant's defense that Named Plaintiffs and Class Members were subject to the Executive, Administrative, and/or Professional exemptions.  Furthermore, Named Plaintiffs would have to establish their hours worked and overcome Defendant's arguments that a "half-time" method of calculating overtime should apply.[9]

Although Named Plaintiffs believe that they could ultimately establish Defendant's liability, Defendant disputes this, and the matter would require significant additional factual development before a trial could proceed. Class Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed Settlement alleviates these uncertainties.  Thus, this factor weighs heavily in favor of final approval of the Settlement.

---

[9] The dispute in wage-and-hour cases as to damages is whether damages are calculated pursuant to a method under which the additional overtime premium is based upon half time for each hour worked over 40 hours.  This is an issue that is matter of significant debate between employers and employees in wage and hour cases, and an area in which the Department of Labor has sided with the employers' viewpoint.  *See* DOL Wage & Hour Opinion Letter, FLSA2009/3 (Jan. 14, 2009); *but see Russell v. Wells Fargo and Co.,* 2009 U.S. Dist. LEXIS 107044 (N.D. Cal. Nov. 17, 2009) (according DOL letter little deference and finding for employees).

**v)    Obtaining and Maintaining a Class Through Trial Would Be Difficult (*Grinnell* Factor 6)**

Although the Court has conditionally certified an FLSA collective, the Court had not yet certified New York and Connecticut Classes under Rule 23, and such a determination would likely have been reached only after another round of extensive briefing.  Moreover, Defendant would have argued, both on a Rule 23 motion and a motion to decertify the FLSA collective, that individual questions preclude class certification, including whether the duties of the AGMs varied, whether exemptions applied, and whether the relevant policies were uniform throughout the relevant class periods.  If a Rule 23 class were certified, Defendant would have likely sought permission to file an interlocutory appeal under Fed. R. Civ. P. 23(f).  Risk, expense, and delay permeate such a process.  Settlement eliminates this risk, expense, and delay.  Thus, this factor favors final approval of the Settlement.

**vi)    The Settlement Agreement Reduces Any Risk of Collection (*Grinnell* Factor 7)**

It is well-settled that a defendant's ability to withstand a greater judgment is a *Grinnell* factor that should be assigned "relatively little weight."  *Davis v. J.P. Morgan Chase & Co.*, No. 01 Civ. 6492, 2011 U.S. Dist. LEXIS 117082, at *10 (W.D.N.Y. Oct. 11, 2011).  "[A] defendant is not required to 'empty its coffers' before a settlement can be found adequate."  *Giant Interactive Grp., Inc. Sec. Litig.*, No. 07 Civ. 10588, 2011 WL 5244707, at *7 (S.D.N.Y. Nov. 2, 2011).  Where, as here, all other *Grinnell* factors weigh in favor of approval, "this factor alone does not suggest the settlement is unfair."  *Id.; see also Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. at 178 n.9).

In all events, whatever weight this factor does carry, it too favors settlement.  The country is experiencing difficult economic times, and the restaurant industry as a whole is facing particularly serious economic challenges which have led to bankruptcy filings by some

companies.  In this context, the Agreement significantly reduces any risk of collection by requiring Defendant to begin paying into a fund shortly after Preliminary Approval, and to continue paying into the Fund in four payments over a 15-month period.  *See* Agreement at ¶ 4.5.  Indeed, pursuant to the Agreement, Defendant has already paid $1,018,750 into the fund.  Swartz Decl. at ¶ 15.  Even assuming Named Plaintiffs would have prevailed at trial (and Defendant disputes this), this 15-month period is likely shorter than the time it would take to collect a judgment and exhaust all appeals.  Moreover, according to the Agreement, if Defendant fails to make any payment by the scheduled date and fails to cure, Defendant's payment of the Total Settlement Amount accelerates and becomes due 45 calendar days later.  *See* Agreement at ¶ 4.6.  Accordingly, this factor also favors final approval of the Settlement.  *See Gallagher v. T-Bone Rest. LLC.,* 2011 U.S. Dist. LEXIS 143773, *15-16 (S.D.N.Y. Dec. 13, 2011) (factor favors approval where settlement "substantially reduces the risk of collection); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *11 (S.D.N.Y. Sept. 16, 2011) (factor favors approval where settlement "eliminates risk of collection.")

> ### vii) The Total Settlement Amount is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8  and 9)

Defendant has agreed to settle this case for a substantial amount, $3,000,000.  The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

"[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2.  "It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 U.S. Dist. LEXIS 11450, at *34-35 (E.D.N.Y. May 17, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million"); *Brooks v. Am. Export Indus., Inc.*, No. 71 Civ. 5128, 1977 U.S. Dist. LEXIS 17313, at *16-18 (S.D.N.Y. Feb. 17, 1977) (approving settlement of less than 1% of the best possible recovery).  When settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing 'speculative payment of hypothetically larger amount years down the road,'" such settlements should be found reasonable under this factor. *See Gilliam,* 2008 U.S. Dist. LEXIS 23016, at *5 (quoting *Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*, No. 01 Civ. 11814, 2004 U.S. Dist. LEXIS 8608, at *16 (S.D.N.Y. May 14, 2004)).  This is especially true in the context of the current economic downturn and the resultant potential for Defendant to face financial challenges as a result.  *See, e.g., In re Canadian Superior Secs. Litig.,* 2011 U.S. Dist. LEXIS 132708, at *6 (S.D.N.Y. Nov. 16, 2011) (approving settlement representing 8.5% of potential recovery where defendant was in receivership); *In re China Sunergy Sec. Litig*, 2011 U.S. Dist. LEXIS 53007, at *14-15 (S.D.N.Y. May 13, 2011) (approving settlement representing 18.4% of potential recovery where company was under financial pressure).

Here, the amount potentially at issue is subject to multiple variables, both legal and factual, and on which the Parties never had a meeting of the minds.  The primary merits risk is

that a fact finder could determine that Defendant's AGMs were properly classified as exempt. In a misclassification wage and hour case like this one, however, forecasting an outcome is not simply a matter of estimating the risk of prevailing on the merits and adding some measure of litigation risk.  Rather, the estimated potential recovery by Plaintiffs must account for a large number of legal and factual contingencies, including: how many hours the average employee worked; how many weeks per year the average employee worked those hours; whether overtime should be calculated on a time-and-a-half basis (Plaintiffs' view) or a half-time basis (Defendant's view)[10]; whether the employees could obtain a third year of damages under the FLSA (a question of willfulness); and whether the employees could obtain liquidated damages under the FLSA (a question of good faith) and/or equivalent statutory penalties under the analogous state wage and hour laws.  These are fact intensive questions that also depend on favorable legal determinations.  When misclassification cases reach juries, the results can be unpredictable, as demonstrated by the last three cases of which Class Counsel are aware. *Compare, e.g., Stillman v. Staples, Inc.*, No. 07-849 (KSH), 2009 U.S. Dist. LEXIS 42247 (D.N.J. May 15, 2009) (collective action plaintiffs' verdict) *with Perkins v. Southern New England Telephone Co Inc.* No. 3:07-00967, Docket No. 578 (D. Conn. Oct. 24, 2011) (collective action defendant's verdict); *Henry v. Quicken Loans, Inc.,* Case No. 2:04-cv-40346-SJM-MJH (E.D. Mich. 17, 2011) (collective action defendant's verdict).

---

[10]  The five Circuit Courts that have addressed this issue have all held that the appropriate measure of damages is a half-time basis.  *See Desmond v. PNGI Charles Town Gaming, L.L.C.,* 630 F.3d 351 (4th Cir. 2011); *Urnikis-Negro v. Am. Family Prop. Servs.,* 616 F.3d 665 (7th Cir. 2010); *Clements v. Serco, Inc.,* 530 F.3d 1224 (10th Cir. 2008); *Valerio v. Putnam Assocs., Inc.,* 173 F.3d 35 (1st Cir. 1999); *Blackmon v. Brookshire Grocery Co.,* 835 F.2d 1135 (5th Cir. 1988); *but see Perkins v. Southern New Eng. Tel. Co.,* 2011 U.S. Dist. LEXIS 109882, *13-15 (D. Conn. Sept. 27, 2011) (J. Hall) (rejecting use of fluctuating workweek method in misclassification case).  Notably, here, Defendant obtained favorable testimony from Alli on the fluctuating workweek method.

Here, Plaintiffs contend that, assuming the most favorable trial verdict for Plaintiffs (that is, that class members worked, on average, 52 hours per week, and worked those hours for 45 weeks per year – a fairly high average figure which accounts for weeks in which they took vacation days, sick days, personal days, or were off for holidays), the value of their unpaid overtime claims being settled here, before liquidated damages and interest, would be approximately $22 million on a time-and-a-half basis and $7 million on a half-time workweek basis.[11]  However, "while it is proper to assess the settlement amount by comparing it with the 'best possible' recovery, that does not mean that the Court should rigidly measure the settlement amount against some purely theoretical, best-case-scenario sum, which plaintiffs may have had little realistic chance of actually recovering."  *Davis*, 2011 U.S. Dist. LEXIS 117082, *13-14 (W.D.N.Y. Oct. 11, 2011).  Thus, by way of comparison, assuming a trial verdict that class members worked, on average, 48 hours per week (a no less likely result), Plaintiffs contend that the value of their unpaid overtime claims being settled here, before liquated damages and interest, would be approximately $15 million on a time-and-a-half basis and $5 million on a half-time basis.  Moreover, Defendant disputes all of these numbers, which assume that all members of the FLSA collective would have opted in, that collective action certification would have been maintained, and that both the New York and Connecticut class claims would have been certified as class actions before trial.

---

[11]   Obviously, the numbers increase or decrease depending on how the Court would rule on dispositive and certification motions, and, if the case were to proceed to trial, how a fact-finder would rule on the various factual issues and how the Court would rule on the various legal issues.  In *Stillman v. Staples, Inc.*, for instance, the jury found that Staples' assistant store managers worked, on average, 50 hours per week.  Plaintiffs (who were represented by the Klafter Olsen & Lesser firm, as here) believed the testimony at trial supported a jury finding of a higher number of hours per week, but 50 hours was the jury's verdict.

Thus, assuming Plaintiffs' asserted best case damages scenario, the $3 million Total

Settlement Amount represents 13.6% of the total potential recovery of $22 million.  On the

other hand, assuming even the second scenario presented above, the $3 million Total

Settlement Amount represents 60% of the total potential recovery of $5 million.  Of course,

Defendants strongly contend that they were entitled to a verdict on liability in this matter, and

they disputed Plaintiffs' various damages calculations in all events.  As such, the $3 million

recovery here is substantial and weighs in favor of settlement approval.  *See, e.g., In re Initial*

*Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 483 (S.D.N.Y. 2009) (approving settlement

representing 2% of aggregate expected recovery); *Hall v. Children's Place Retail Stores, Inc.*,

669 F. Supp. 2d 399, 402 n.30 (S.D.N.Y. 2009) (approving a settlement that amounted to 5-12

percent of provable damages); *In re Prudential Inc. Secs. Ltd. Partnerships Litig.*, MDL No.

1005, M-21-67, 1995 U.S. Dist. LEXIS 22103 (S.D.N.Y. Nov. 20, 1995) (approving settlement

of between 1.6 percent and 5 percent of claimed damages); *In re Crazy Eddie Sec. Litig.*, 824 F.

Supp. 320, 324 (E.D.N.Y. 1993) (approving settlement that awarded class members between six

cents and ten cents for every $1.00 lost); *Behrens v. Wometco Enters.*, 118 F.R.D. 534, 542

(S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ("The mere fact that the proposed

settlement of $.20 cents a share is a small fraction of $3.50 a share is not indicative of an

inadequate compromise"); *cf Wilson*, 2011 U.S. Dist. LEXIS 51874, at *47 (D. Conn. May 16,

2011) (J. Hall) (denying motion for settlement approval where settlement represented, at most, one

hundredth of the claims' value).

As discussed at Section IV(A)(2)(iv), *supra*, Plaintiffs faced significant risks of establishing

liability and damages.  The Total Settlement Amount represents a good value given these

attendant risks of litigation – the recovery could be greater if Plaintiffs were to succeed on all

claims at trial and survive an appeal, but could be nothing if Defendant were to prevail.  *See*

*Dupler*, 705 F. Supp. 2d at 241-242 (finding the settlement "especially reasonable" where "the

class would face the risk of recovering substantially less than the Settlement provides or nothing

at all" if a jury were to find in favor of defendant).

In sum, weighing the benefits of the Settlement against both the risks associated with

proceeding in the litigation and the potential recovery, the Total Settlement Amount is

reasonable.

*       *       *

The *Grinnell* factors all weigh in favor of granting final approval of the Settlement.

Because the Settlement is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*,

228 F.R.D. at 184 (quoting *Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000)), the

Court should grant final approval.

### B.    Approval of the FLSA Settlement is Appropriate under Federal Law

Named Plaintiffs also request that the Court finally approve the settlement of their

FLSA wage and hour claims.  The Agreement settles all wage and hour claims brought by the

Named Plaintiffs, both under the state laws and the FLSA.  FLSA claims are brought as a

"collective action," in which employees must affirmatively "opt-in" to the litigation. 29 U.S.C.

§ 216(b).  As noted, the New York and Connecticut Law claims, on the other hand, are brought

as standard opt-out class actions under the general class action provisions of Rule 23.

*Ansoumana v. Gristedes Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001).

When determining final approval of "hybrid" collective actions of state wage and hour

class claims under state law and federal FLSA collective action claims, some courts in this

Circuit have looked at the fairness, adequacy, and reasonableness of the class settlement for

both statutory frameworks by examining the *Grinnell* factors.  *See, e.g., Frank*, 228 F.R.D.

174; *Gilliam*, 2008 U.S. Dist. LEXIS 23016, at *8.  Although district courts are under an

obligation to evaluate the appropriateness of class certification for the state class claims under

Rule 23, that certification standard is not appropriate for the FLSA's § 216(b) opt-in procedure.

The standard for approval of a FLSA settlement is lower than for a Rule 23 settlement because

an FLSA settlement does not implicate the same due process concerns as does a Rule 23

settlement. *See McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984).

Courts approve FLSA settlements when they are reached as a result of contested

litigation to resolve *bona fide* disputes.  *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d

1350, 1353 n.8 (11th Cir. 1982).  Typically, courts regard the adversarial nature of a litigated

FLSA case to be an adequate indicator of the fairness of the settlement.  *Id.* at 1353-54.  If the

proposed settlement reflects a reasonable compromise over contested issues, the court should

approve the settlement.  *Id.* at 1354; *see Mohney*, 2009 U.S. Dist. LEXIS 27899, at *13.

In this case, the Settlement was the result of contested litigation and arm's length

negotiation. Swartz Decl. at ¶¶ 2-12.  Recognizing the uncertain legal and factual issues

involved, the Parties engaged in two mediation sessions with an experienced mediator and, after

extensive negotiation, ultimately reached the Settlement pending before the Court.  *Id.* at ¶ 12.

During the litigation and at the mediations, Named Plaintiffs and Defendant were both

represented by experienced counsel.  *Id.*  Accordingly, the Settlement resolves a contentious

dispute under circumstances supporting findings of fairness and reasonableness, and is

therefore appropriate for final court approval.

V.     **Conclusion**

For the foregoing reasons, Named Plaintiffs and Boston Market respectfully request that

this Court grant, in its entirety, the Motion For Order Confirming Certification Of

Class/Collective Action And Granting Final Approval To Settlement.

Respectfully submitted,

/s/  Seth R. Lesser
Seth R. Lesser (ct27068)
Fran L. Rudich (ct09487)
Klafter Olsen & Lesser LLP
Two International Drive, Suite 350
Rye Brook, NY 10573
Telephone:     914.934.9200
Facsimile:     914.934.9220

Justin M. Swartz (phv03853)
Jennifer L. Liu (phv04305)
Outten & Golden LLP
3 Part Avenue, 29th floor
New York, NY 10016
Telephone: (212) 245-1000

Richard E. Hayber (ct11629)
Hayber Law Firm, LLC
21 Main Street, Suite 502
Hartford, CT 06106
Telephone: (860) 522-8888

Attorneys for Plaintiffs and the Class

Michael J. Gray (phv04066)
JONES DAY
77 West Wacker
Chicago, Illinois  60601-1692
Tel: 312.782.3939
Fax: 312.782.8585
mjgray@jonesday.com

E. Michael Rossman (phv04064)
JONES DAY
325 John H. McConnell Boulevard, Suite 600
Columbus, Ohio 43215-2673
Tel: 614.469.3939
Fax: 614.461.4198
emrossman@jonesday.com

Craig S. Friedman (phv04065)
JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309-3053
Tel: 404.581-8412
Fax: 404.581.8330
csfriedman@jonesday.com

Deborah DeHart Cannavino (ct08144)
LITTLER MENDELSON P.C.
265 Church Street, Suite 300
New Haven, Connecticut 06510
Tel: (203) 974-8700
Fax: (203) 974-8799
dcannavino@littler.com

Attorneys for Defendant Boston Market
Corporation